**Exhibit B**

**Blacklined Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) | Case No. 25-12105 (JKS) |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | **Related to Docket No. 14** |

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364, 503, 506, 507, AND 552, AND BANKRUPTCY RULES 2002, 4001, 6003, 6004, AND 9014 (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING (A) LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND (B) ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, (III) MODIFYING AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of American Signature, Inc. and certain of its affiliates, each of which is a debtor and debtor in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), seeking entry of this interim order (this "***Interim Order***"), among other things:

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined therein, the DIP Loan Documents (as defined herein).

    i. approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral (each as defined herein) as set forth herein;

j. waiving any applicable stay and provisions for immediate effectiveness of this Interim Order;

k. vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

l. granting related relief; and

m. scheduling a final hearing (the "***Final Hearing***") to consider entry of a final order (the "***Final Order***") authorizing and approving, among other things, the relief requested in the Motion on a final basis, which order shall be in form substantially similar to this Interim Order and otherwise reasonably acceptable to the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition ABL Agent, and approving the form of notice with respect to the Final Hearing.

This Court having considered the interim relief requested in the Motion, the exhibits attached thereto, the *Declaration of Rudolph Morando in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "***First Day Declaration***") and the *Declaration of ~~Craig D. Warznak~~J. Scott Victor in Support of the Debtors' Motion Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection To Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "***DIP Declaration***"), each filed concurrently with the Motion, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on November 25, 2025 (the "***Interim Hearing***"); and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested

in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. *Petition Date*. On November 22, 2025 (the "***Petition Date***"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code (the "***Petitions***") in the United States Bankruptcy Court for the District of Delaware (the "***Court***") commencing the Chapter 11 Cases. ~~On November [___], 2025~~At the Interim Hearing, this Court ~~entered an order directing~~approved the joint administration of the Chapter 11 Cases.

B. *Debtors in Possession*. The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.
with respect to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, disgorgement, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, and the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition Secured Obligations. The Debtors have waived, discharged, and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.

(vii) *Cash Collateral*. Except as otherwise provided in the Prepetition Credit Documents, all of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and, excluding the Segregated Cash Collateral, is Prepetition Collateral of the Prepetition ABL Secured Parties.

(viii) *No Control*. None of the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition Term Loan Agent or the other Prepetition Secured Creditors, solely in their respective capacities as such, controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken through the date of this Interim Order with respect

to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Loan Documents, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(ix) *Release*. Effective as of the date of entry of this Interim Order and subject to the rights of all parties-in-interest hereunder (including with respect to the Challenge Period), other than the Debtors, as set forth in paragraph 44 herein, each of the Debtors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, and solely to the extent permitted under applicable law, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the DIP Agent, the DIP Credit Parties, the Prepetition ABL Agent, the other Prepetition ABL Secured Parties, the Lender Service Parties (as defined in the DIP Credit Agreement), the Prepetition Term Loan Agent, the other Prepetition Term Loan Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors, and assigns, in each case solely in their capacity as such (collectively, the "***Released Parties***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the DIP Obligations or DIP Loan Documents, the Prepetition Secured Obligations or the Prepetition

to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Credit Parties and the Prepetition ABL Secured Parties all applicable rights, powers, and remedies thereunder in each case as modified by this Interim Order; (b) the provision and scope of adequate protection, as set forth herein, of the Prepetition ABL Secured Parties' interests in the Prepetition ABL Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; and (c) the DIP Credit Parties being granted, as security for the prompt payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject to the Carve Out and the relative priorities set forth on the Lien Priority Annex, senior, first priority perfected security interests in and liens upon the DIP Collateral to the extent set forth herein.

H. *Prepetition ABL Lenders' Adequate Protection*. Until such time as the Prepetition ABL Obligations are Paid in Full,[4] the Prepetition ABL Secured Parties are entitled to receive

[4] "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, accrued and unpaid interest and fees, reimbursable expenses and indemnities, other than contingent indemnification obligations for which no claim has been asserted and threatened, and all other amounts due and owing by the Debtors) under the applicable credit facility and this Interim Order, the cash collateralization or repayment in full in cash of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable facility ~~and that each of the Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition Term Loan Agent, Prepetition Term Loan Secured Parties, DIP Agent and DIP Lenders, as the case may be, shall have received a release from each Debtor and any Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities (including, without limitation any obligations or liabilities of any kind related to the Carve-Out upon payment in full of the Prepetition ABL Obligations, the Prepetition PNC Obligations or DIP Obligations) in form and substance acceptable to the Prepetition ABL Agent, the Prepetition Term Loan Agent the Prepetition Term Loan Secured Parties, or the DIP Agent, as applicable or in the case of the Committee, instead of such release, (A) if the Challenge Deadline (as defined in this Final Order) has not elapsed, a written notice or other confirmation that no Challenge or any other claims of any kind (including with respect to the Carve-Out upon payment in full of the Prepetition ABL Obligations, Prepetition PNC Obligations or DIP Obligations) will be asserted or (B) if the Challenge Deadline has elapsed, then no Challenge or any other claim has been asserted or any Challenge or other claim asserted has been dismissed pursuant to a final, non-appealable order of a court of competent jurisdiction and a written notice or other confirmation that no claim of any kind with respect to the Carve Out will be asserted against the Prepetition ABL Agent, any Prepetition ABL Lender, the Prepetition Term Loan Agent, any Prepetition Term Loan Secured Party, the DIP Agent or any DIP Lender~~.

Prepetition Liens, respectively, to the Carve Out; and (c) the consensual use of Cash Collateral consistent with the Approved Budget (subject to Permitted Variances), the terms of the DIP Loan Documents, and the terms of this Interim Order, subject to and upon entry of the Final Order, each of the DIP Credit Parties and Prepetition Secured Creditors shall receive: (x) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code~~ and a waiver of unjust enrichment and similar equitable relief as set forth below~~; and (y) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K. *Good Faith of the DIP Credit Parties*.

(i) *Willingness to Provide Financing*. Each of the DIP Lenders has indicated a willingness to provide financing to the Debtors subject to: (a) on an interim basis, the entry by this Court of this Interim Order, and on a final basis, the entry by this Court of a Final Order; (b) approval by this Court of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that each of the DIP Credit Parties is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that each of the DIP Credit Parties' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code.

(ii) *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of this Interim Order, the DIP Loan Documents, the extension of credit and the fees paid and to be paid thereunder: (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent and sound business judgment; and (c) are supported by reasonably equivalent value and consideration. The DIP

notwithstanding the foregoing, the out-of-pocket expenses (including, without limitation, all attorneys' and other professionals' fees and expenses) incurred by the DIP Agent prior to and unpaid as of the Closing Date shall be paid indefeasibly upon the occurrence of the Closing Date without the DIP Agent being required to deliver an invoice in summary form as set forth herein. If no written objection is received by ten (10) calendar days after receipt of such invoice by the Review Parties, the Debtors shall promptly pay such fees and expenses in full. If an objection to a professional's invoice is timely received, the Debtors shall promptly pay the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. The DIP Agent's professionals shall not be required to comply with the U.S. Trustee guidelines or to file applications or motions with, or obtain approval of, this Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).

26. Indemnification. Subject to entry of the Final Order granting such relief, without prejudice to the rights of the Prepetition Secured Creditors, the DIP Credit Parties, or any Indemnitee (as defined in the DIP Credit Agreement) to seek indemnification prior to that date, Tthe Debtors shall indemnify and hold harmless the DIP Agent, each other DIP Credit Party, and each Indemnitee (as respectively defined in eachthe DIP Credit Agreement), subject to and in accordance with eachthe DIP Credit Agreement, including, without limitation, Section 10.04(b) of the DIP Credit Agreement.

27. Prepetition ABL Indemnity Account. Subject to entry of the Final Order granting such relief, Uupon the closing of the Sale (as defined in Exhibit 4 hereof), the Debtors shall pay to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, the sum of $250,000 into a non-interest bearing account maintained with the Prepetition

any other parties in interest and without further order of this Court. Until the Prepetition ABL Obligations have been Paid in Full, the Prepetition ABL Agent (for itself and on behalf of the other Prepetition ABL Secured Parties) shall retain and maintain the liens granted to the Prepetition ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Account; provided, that the retention of the liens granted to the Prepetition ABL Agent shall in all respects remain subject to the priorities and terms of this Interim Order, and the Lien Priority Annex; provided, however, that upon the Payment in Full of the Prepetition ABL Obligations, the balance of the Prepetition ABL Indemnity Account, if any, shall be returned to the Debtors on or prior to the effective date of any chapter 11 plan.

28. DIP Indemnity Account. Subject to entry of the Final Order granting such relief, ~~U~~upon the closing of the Sale, the Debtors shall pay to the DIP Agent a sum in the amount of $250,000 from proceeds of the DIP Collateral into a non-interest bearing indemnity account maintained with the DIP Agent (the "***DIP Indemnity Account***") subject to the liens of the DIP Agent, for the benefit of itself and the other DIP Lenders, to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the DIP Loan Documents (the "***DIP Indemnity Obligations***"); provided that the liens securing the DIP Indemnity Obligations shall be subject to the priorities and terms of this Interim Order, and the Lien Priority Annex. Subject to the terms of this Interim Order, the DIP Agent, on behalf of itself and the other DIP Secured Parties, may apply amounts in the DIP Indemnity Account against the DIP Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, any Committee, or any other parties in interest and without further order of this Court. The DIP Indemnity Account shall be released and the funds applied in accordance with this Final

44. Binding Effect of Interim Order. Immediately upon entry by this Court of this Interim Order, the stipulations (including the Debtors' Stipulations), terms and provisions of this Interim Order (including, without limitation, the Adequate Protection Liens, Adequate Protection Payments, and the Adequate Protection Superpriority Claims) shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Credit Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee, if any, and all other parties-in-interest and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case, unless, and solely to the extent that: (A) any person or any party-in-interest (including the Committee, if any) has sought and obtained standing and the requisite authority to commence a Challenge[8] (other than the Debtors, as to which any Challenge is hereby irrevocably waived and relinquished) and has timely commenced a Challenge until the date that is ~~the earlier of (i) subject to entry of the Final Order granting such relief, concurrent with the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization and (ii)~~ seventy five (75) calendar days after the entry of this Interim Order (the "***Challenge Deadline***" and the time period prior to the Challenge Deadline,

[8] "Challenge" as used herein shall mean an adversary proceeding or contested matter (subject to the limitations contained herein) (a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (b) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses against any Prepetition Secured Creditors or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof in connection with or related to the Prepetition Credit Documents, the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Collateral.

the "***Challenge Period***"),[9] as such applicable date may be extended in writing from time to time by the applicable Prepetition Secured Creditor in its sole discretion, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided* that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Deadline, any such estate representative or trustee shall receive the full benefit of any remaining time before expiration of the Challenge Deadline, which, solely if not yet expired, shall be extended for a period of sixty (60) days; and (B) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. The Challenge Deadline set forth herein shall be tolled if a party-in-interest (including the Committee, if any) files a motion seeking standing to bring a Challenge ("***Standing Motion***"), which attaches one or more draft complaints that detail the alleged challenge(s) that the applicable party in interest seeks to file, until such time as the Court decides the Standing Motion and solely with respect to (i) the party-in-interest that files the Standing Motion and (ii) the contents of the complaint attached to the Standing Motion. Notwithstanding any other provision in this Interim Order, the Court retains the right to enter any appropriate remedy in connection with a successful Challenge.

45. Credit Bidding. Subject to paragraph 44 of this Interim Order and the rights of parties-in-interest under section 363(k) of the Bankruptcy Code, in connection with any sale process authorized by the Court, upon entry of the ~~Interim~~Final ~~o~~Order, the Prepetition Agents may seek to credit bid some or all of their claims for their respective collateral (each a "***Credit***

[9] The Debtors will be seeking to shorten the Challenge Period, subject to entry of the Final Order granting such relief, by setting the Challenge Deadline to occur concurrently with the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization.

Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases. Upon entry of the Final Order, the terms and provisions of this Interim Order, including, without limitation, the claims, liens, security interests, and other protections granted to the DIP Credit Parties and Prepetition Secured Creditors pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (x) all DIP Obligations have been Paid in Full and all commitments to extend credit under the DIP Facility are terminated and (y) all Prepetition Secured Obligations have been Paid in Full.

51. Final Hearing. A final hearing to consider the relief requested in the Motion shall be held on [__________]January 5, 20256, at [ ] [a.m./1:00 p.m.], prevailing Eastern Time before this Court.

52. Notice of Entry of Interim Order. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any party that has filed a request for notices with this Courtentitled to notice under applicable Bankruptcy Rules and Local Rules.

53. Objections. Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection no later than [__________]December 29, 2025, at [ ] [a.m./4:00 p.m.], prevailing Eastern Time and serve such objection or response on the following parties: (a) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (b) proposed counsel to the Conflicts Committee, (i) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018, Attn: Kizzy L.

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

55. Retention of Jurisdiction. This Court has and will retains jurisdiction to enforce this Interim Order.

# Exhibit 4

## Required Milestones

**Each of the following are collectively referred to as the "DIP Milestones":**

- On or before one (1) Business Day after the Petition Date, the Debtors shall file a motion with the Court seeking approval of the DIP Facility.
- On or before one (1) Business Day after the Petition Date, the Debtors shall file a motion with the Court seeking to assume that certain Consulting Agreement, dated as of September 19, 2025, by and among certain of the Debtors and the Specified Liquidation Consultant (the "***Specified Liquidation Agreement***") pursuant to which the Loan Parties shall conduct Specified Store Closing Sales.
- On or before one (1) Business Day after the Petition Date, the Debtors shall file a motion with the Court seeking authority to honor certain customer programs on the Petition Date.
- On or before three (3) Business Days after Petition Date, the Court shall have entered this Interim Order authorizing the DIP Facility on an interim basis.
- On or before three (3) Business Days after Petition Date, the Court shall have entered an order authorizing the Debtors to assume the Specified Liquidation Agreement.
- On or before three (3) Business Days after Petition Date, the Debtors shall have filed a motion requesting, and on or before December 12, 2025, shall have obtained, an order of the Court extending the lease assumption/rejection period such that the lease assumption/rejection period shall be 210 days.
- On or before December 5, 2025, the Debtors shall file a motion with the Court seeking to retain Berkeley Research Group, LLC ("***BRG***") as their chief restructuring officer pursuant to that certain Letter Regarding Interim Management Services, dated as of November 7, 2025, from BRG to certain of the Debtors.
- On or before ~~December 30~~January 5, 202~~5~~6, the Court shall have entered the Final Order authorizing the DIP Facility on a final basis.

**Each of the following are collectively referred to as the "Store Closing and Sale Milestones":**

- On or before ~~two~~three (~~2~~3) Business Days after the Petition Date, the Debtors shall file a motion in form and substance acceptable to the DIP Agent (the "***Sale Procedures Motion***"), requesting an order of the Court approving the procedures for the Permitted Sale (under and as defined in the DIP Credit Agreement, and as used herein, the "***Sale***"), which order shall, among other things, (w) seek approval of the bidding procedures for the Sale (the "***Bid Procedures***"), (x) seek approval of the Stalking Horse Purchase Agreement (as

defined in the DIP Credit Agreement), (y) establish the date of the Auction (to be defined in the Sale Procedures Motion), which shall occur no later than January 5, 2026, and (z) establish a date for a hearing to approve the Sale.

- On or before December ~~12~~9, 2025, the Bankruptcy Court shall have approved the Sale Procedures Motion; it being understood that if the Court does not approve the Sale Procedures Motion on or before December ~~12~~9, 2025, after the Remedies Notice Period expires, the Debtors shall immediately commence a full chain liquidation on terms and conditions satisfactory to the DIP Agent in its sole discretion.

- The Court shall establish no later than December 30, 2025, as the deadline for submission of bids to purchase any portion of, or all or substantially all of, the Debtors' assets in connection with the Sale.

- On or before December 31, 2025, the Debtors shall distribute to the DIP Agent all bids received for the Sale.

- On or before January ~~5~~6, 2026, the Auction (as defined in the Sales Procedure Motion) shall have completed; *provided* that this Required Milestone will not apply if the Borrower does not receive two or more qualified bids for the Sale by the applicable bid deadline.

- On or before January ~~7~~8, 2026, the Court shall have entered an order approving the Sale (the "***Sale Order***").

- On or before January 9, 2026, the initial installment of the guaranteed amount under the Purchase Agreement (as defined in the DIP Credit Agreement and as used herein, the "***Purchase Agreement***") shall have been made in accordance with the Purchase Agreement (the "***Initial Guaranteed Amount Payment Deadline***").

- On or before January 9, 2026, the Sale shall have been consummated.

- On or before January 9, 2026, the Debtors shall have Paid in Full all Prepetition ABL Obligations, and DIP Obligations, and Prepetition PNC Obligations (unless such Prepetition PNC Obligations are assumed by a purchaser on terms satisfactory to PNC in its sole discretion).