**Exhibit B**

**Blacklined Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | Case No. 25-12105 (JKS) |
| Debtors. | ~~(Joint Administration Requested~~ |
| | (Jointly Administered) |
| | **Re: Docket No. —18** |

**INTERIM ORDER ~~AUTHORIZING THE~~GRANTING IN PART AND CONTINUING IN PART DEBTORS' MOTION TO (A) ASSUME THE CONSULTING AGREEMENT, (B) CONDUCT STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (C) SCHEDULING A HEARING, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of an interim order (this "Interim Order"), pursuant to Bankruptcy Code sections 105, 363, 365, and 544, Bankruptcy Rules 2002, 6003 6004, 6006, and 6007, and Local 2002-1, 6004-1, and 9013-1, (a) authorizing, but not directing, the Debtors to assume and perform under that certain Consulting Agreement, (b) authorizing and approving the Closing Sales, with such Sales to be in accordance with the terms of the Sales Guidelines, and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

DE: ~~4896-3739-8394.8 03721.00001~~4896-3739-8394.12 03721.00001

*Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:

1. The Debtors have advanced sound business reasons for ~~assuming~~continuing performance under the Consulting Agreement and ~~adopting~~ the Sale Guidelines, on an interim basis, subject to the Final Hearing, as set forth in the Motion and at the Hearing~~, and assuming the Consulting Agreement is a reasonable exercise of the Debtors' business judgement and in the best interest of the Debtors and their estates~~.

2. The Consulting Agreement, a copy of which is attached to this Interim Order as **Exhibit 1** and **Exhibit 2**, collectively, was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

3. ~~The assumption of the Consulting Agreement on an interim basis is a sound exercise of the Debtors' business judgment.~~

3.    4. The Sale Guidelines, which are attached hereto as **Exhibit 3**, are reasonable and appropriate, and the conduct of the Sales on an interim basis in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets and are in the best interest of the Debtors' estates.

4.    5. The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

5.    6. The Store Closings and Sales are in the best interest of the Debtors' estates.

6.    7. The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

7.    8. The Debtors have represented that they intend to neither sell, lease, nor abandon personally identifiable information pursuant to the relief requested in the Motion, although the Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information. The Debtors have represented that they will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information from any Store Closing Asset prior to its Sale or abandonment.

The entry of this Interim Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby ORDERED THAT:

1.    The Motion is GRANTED on an interim basisgranted in part and continued in part as set forth herein below.

2.    Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.    The final hearing (the "Final Hearing") on the Motion shall be held on ~~_____~~ December 15, 2025, at ~~__:__ _.m.~~ 10:30 am, prevailing Eastern Time. Any party in interest who wishes to file a supplemental statement or declaration in support of, or to supplement the record on, the relief requested in the Motion, shall do so on or before 12:00 Noon, prevailing Eastern Time, on December 3, 2025. Any objections or responses to entry of a final order ~~on~~approving the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on ~~_____~~ December 10, 2025. Any party in interest who wishes to file a reply to any objection to final approval of the relief requested in the Motion shall do so no later than 11:00 a.m., prevailing Eastern Time, on December 12, 2025. Any pleading filed in connection with the relief requested in the Motion and the Final Hearing shall be served on: (a) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (b) proposed counsel to the Conflicts Committee, (i) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018, Attn: Kizzy L. Jarashow, Esq. (kjarashow@goodwinlaw.com) and Stacy Dasaro, Esq. (sdasaro@goodwinlaw.com) and (ii) Potter Anderson & Corroon LLP 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801, Attn: L. Katherine Good, Esq. (kgood@potteranderson.com); (c) counsel to the DIP Agent and Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Lucas B. Barrett, Esq. (lbarrett@choate.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801,

Attn: Daniel J. DeFranceschi, Esq. (defranceschi@RLF.com), John H. Knight, Esq. (Knight@RLF.com), Matthew P. Milana, Esq. (Milana@RLF.com); (d) counsel to the Prepetition Term Agent, (i) Goldberg Kohn, 55 East Monroe Street, Chicago, IL 60603-5792, Attn: Randall L. Klein, Esq. (randall.klein@goldbergkohn.com) and Zachary J. Garrett, Esq. (zachary.garrett@goldbergkohn.com) and (ii) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); (e) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Malcolm M. Bates, Esq.; (f) counsel to the Consultant, Leichtman Law, PLLC, 185 Madison Avenue, 15th Floor, New York, NY 10016. Attn.: Maura I. Russell, Esq. (mrussell@leichtmanlaw.com) and Morris Nickols Arsht & Tunnel LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19899-1347, Attn.: Derek C. Abbott, Esq. (dabbott@morrisnichols.com) and (g) counsel to the Committee any statutory committee appointed in these chapter 11 cases.

4.    ~~To~~Subject to paragraph 21 of this Interim Order, to the extent of any conflict between this Interim Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Interim Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreement.

**I.    Authority to ~~Assume~~Continue to Perform Under the Consulting Agreement.**

5.    The Debtors and the Consultant are authorized to ~~assume and~~continue to perform under the Consulting Agreement on an interim basis until the Final Hearing, pursuant to sections 363 ~~and 365 of the Bankruptcy Code~~, including (a) making payments required by the Consulting Agreement to the ~~Consulting~~Consultant without the need for any application of the Consultant or

a further order of the Court, (b) allowing the sale of Additional Merchandise, all as permitted under the Consulting Agreement.

6. The Debtors' ~~assumption of and~~ performance under the Consulting Agreement is approved in all respects on an interim basis. The Debtors are authorized ~~to assume and~~ perform under the Consulting Agreement pursuant to sections 363 ~~and 365 of the Bankruptcy Code~~, including by~~,~~. subject to compliance with the Budget (as defined in the Consulting Agreement), making the payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant, or a further order of the Court. The (a) payment of all obligations to the Consultant under the Consulting Agreement, including but not limited to ~~all past due~~, current or future fees, expenses, the proceeds from the sale of the Additional Merchandise (net of the Additional Merchandise Fee) (collectively, the "Consultant Payment Obligations") is approved without further order of the Court and (b) all such payments of the Consultant Payment Obligations shall be made in accordance with the Consulting Agreement, the Budget, and the provisions of this Interim Order.

7. The Debtors shall timely fund and remit payment of the Consultant Payment Obligations (without offset) from the gross proceeds from the sale of the Debtor's inventory and owned FF&E (the "Closing Location Assets"), in each case in accordance with the terms of the Consulting Agreement and any Budget approved in connection therewith, without the need for any application of the Consultant, or a further order of the Court, and without adherence to any weekly, monthly, or aggregate limitation in any interim or final order approving the DIP Credit Agreement (the "DIP Orders"), other order, or any budget approved in connection with a DIP Order (each a "DIP Budget"), cash collateral or other budget entered in connection with the Debtors chapter 11 case (collectively, as the case may be an "Approved Budget"); provided

however, payment of the Consultant Payment Obligations shall be (a) deemed to be in compliance with any Approved Budget and the applicable provisions of the DIP Orders; and (b) included in each such Approved Budget. To the extent there is any conflict or inconsistency between this Interim Order and the DIP Orders, the Consultant's rights under this Interim Order regarding the payment of Consultant Payment Obligations shall be governed by this Order.

8.      The Debtors' are authorized to accept delivery of Additional Merchandise at the Closing Stores, offer the Additional Merchandise for sale at the Closing Stores on a consignment basis, and to remit the proceeds from sales of Additional Merchandise, in each case, as provided in the Consulting Agreement.  The Consultant Payment Obligations shall be paid in accordance with the provisions of the Consulting Agreement.

9.      Subject to the restrictions set forth in this Interim Order, the Sale Guidelines, and any Side Letters (as defined below), the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sales, and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Sales prior to the date of this Interim Order, are hereby approved and ratified.

10.      If Consultant Payment Obligations are not timely paid as contemplated by the Consulting Agreement and this Interim Order (for any reason), including court order (the "Unpaid Consultant Payment Obligations"), the Consultant can, at  their election, suspend the provision of services until the Debtors have paid all outstanding Unpaid Consultant Payment Obligations (and replenished any portion of the Prepayment (described above) that has been exhausted by the Consultant, or terminate the Consulting Agreement and in either case have no

further obligation to perform services under the Consulting Agreement during such suspension period or after such termination, as applicable, and the Consultant shall have no liability for any claims arising from such suspension or termination of services are hereby released and the Consultant shall be indemnified for any damages caused by the suspension or termination of services; provided that the Consultant may not recover the amount of any such claim (other than Unpaid Consultant Payment Obligations) from any advances or any other amounts on deposit in the advance funding account, whether by setoff, lien, attachment or otherwise without the prior written consent of the DIP Agent.  In addition, the Consultant will have the right to file a motion on expedited one day notice) with an expedited hearing (subject to court availability) to compel payment of any Unpaid Consultant Payment Obligations.

11.    The Debtors and the Consultant may modify the Consulting Agreement in accordance with the terms thereof without further order of the Court; *provided* that (a) the Debtors shall provide five (5) calendar days' advance notice of any contemplated material modification(s) of the Consulting Agreement (including any modification of the Consulting Agreement's economic terms) to the U.S. Trustee, counsel to the DIP Agent, counsel to the Official Committee of Unsecured Creditors (the "Committee"), any landlord directly affected by such modification (and, if known, such landlord's counsel), and counsel to any party that has requested such notice (collectively, the "Amendment Notice Parties"); (b) the Debtors' modification of the Consulting Agreement shall be subject to the applicable provisions of the DIP Orders and related documentation; and (c) notwithstanding anything contained herein or in the Consulting Agreement, the Budget and any amendments, modifications, or supplements thereto shall be subject to the consent of the DIP Agent; and (d) such modifications shall not impact or modify any Side Letter.  If an Amendment Notice Party timely objects to a proposed

material modification to the Consulting Agreement and the Debtors, the Consultant, and such objecting Amendment Notice Party cannot consensually resolve such objection, the Debtors and the Consultant shall not proceed with such modification absent a further order of the Court approving such modification.

12.    Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising out of the Consultant's fraud, willful misconduct, or gross negligence.

13.    The failure to include any provisions of the Consulting Agreement in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that such provisions of the Consulting Agreement be, and hereby are, authorized and approved.

## II.    Authority to Engage in Sales and Conduct Store Closings.

14.    The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Sales at the Closing Stores in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement, as may be modified by any Side Letters (as defined below) between the Debtors or the Consultant and the landlords at the Closing Stores. Notwithstanding anything in this Interim Order to the contrary, the Debtors may elect to discontinue the Sales at any Closing Stores and revert to normal operations without further notice or authorization from the Court; provided that the Debtors shall be required to provide written notice to the applicable landlord (and its counsel, if known) within five (5) days of the decision to discontinue the Sales.

15.    The Sale Guidelines are approved in their entirety on an interim basis.

16.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Sale Guidelines.

17.     All entities that are presently in possession of some or all of the Store Closure Assets in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Store Closure Assets to the Debtors or the Consultant.

18.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sales and Store Closings and to take the related actions authorized herein.

**III.    Conduct of Sales.**

19.     All newspapers and other advertising media in which the Sales and Store Closings may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales and Store Closings pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, any applicable Side Letter, and the Consulting Agreement.

20.     The Debtors and the Consultant are hereby authorized, without necessity of further order of this Court, to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Sales and Store Closings as provided in the Consulting Agreement and the Sale Guidelines (subject to any Side Letters, as defined below), including, but not limited to, advertising the sale as a "store closing sale," "sale on

everything," "everything must go," or similar-themed sales as contemplated in the Sale Guidelines through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of sign-walkers, A-frames, and other street signage, as contemplated in the Sale Guidelines.

21.     Except as expressly provided in this Interim Order in the Consulting Agreement and the Sale Guidelines (as may be modified by Side Letter (as defined below)), the sale of the Merchandise and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Merchandise and FF&E owned by the Debtors), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closings or the Sales. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Interim Order, any Side Letter (as defined below), and the Sale Guidelines. The Debtors, the Consultant, and the landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Consultant, and any such landlords; *provided* that nothing in such Side Letters affects the provisions of this Interim Order. In the event of any conflict between the Sale Guidelines, the Consulting Agreement, any Side Letter, and this Interim Order, the terms of such Side Letter shall control.

22.     Except as expressly provided for herein or, in the Sale Guidelines, or in a Side Letter, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings, the Sales, or the sale of the Store Closure Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, as applicable, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings and the Sales, and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Store Closure Assets or other liquidation sales at the closing locations or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

23.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines (as modified by any Side Letters) and this Interim Order.

24.     All in-store sales of Store Closure Assets and Additional Merchandise shall be "as is" and final as of the Sale Commencement Date. Conspicuous signs stating that "all sales

are final" and "as is" will be posted at the point-of-sale areas at all Closing Stores. As to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

25.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement. This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state, provincial, or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

26.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets and all sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests (as may be modified by any Side Letter), with such liens, claims, encumbrances, and other interests attaching to the proceeds thereof.

27.     The Debtors or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among, and into, the Closing Stores in accordance with the Sale Guidelines, as applicable. The Consultant is authorized to sell the Debtors' FF&E and, notwithstanding any provision in the underlying leases for the Closing Stores, the Original Agreement or the First Amendment, abandon the same, in each case, as provided for and in accordance with the Sale Guidelines.

28.     The Consultant is authorized to supplement the Merchandise in the Sales with Additional Merchandise as provided for in the Consulting Agreement. The Consultant and Debtors shall cooperate to ensure that the Additional Merchandise is marked in such a way that a reasonable consumer could identify the Additional Merchandise as being non-Merchant goods. The Consultant shall provide signage in the Stores notifying customers that the Additional Merchandise has been included in the Sale. Absent the Debtors' written consent, and the Consultant's agreement to reimburse the Debtors for any associated expenses, the Consultant shall not use the Debtors' distribution centers for any Additional Merchandise.

29.     The Consultant shall pay the Debtors an amount equal to 7.0% of the gross proceeds (excluding Sale Taxes) from the Sale of the Additional Merchandise (the "Additional Merchandise Fee"). The Consultant shall retain all remaining amounts from the sale of the Additional Merchandise.

30.     All transactions relating to the Additional Merchandise are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Consultant to the Debtors under Article 9 of the Uniform Commercial Code (the "UCC") and not a consignment for security purposes. Subject solely to Consultant's obligations to pay to the Debtors the Additional Merchandise Fee, at all times and for all purposes the Additional Merchandise and

their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Merchandise or the proceeds thereof. The Additional Merchandise shall at all times remain subject to the exclusive control of the Consultant.

31.     The Debtors shall, at the Consultant's sole cost and expense, insure the Additional Merchandise and, if required, promptly file any proofs of loss with regard thereto. The Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Merchandise.

32.     The Consultant is hereby granted a first-priority security interest in and lien upon (a) the Additional Merchandise and (b) the Additional Merchandise proceeds, and the Consultant is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof.

33.     Notwithstanding anything to the contrary in this Interim Order, the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; *provided* that the Debtors will either (a) provide for the return of such property to the Debtors' headquarters or (b) return such property to the applicable lessor, or other owner of the property.

34.     For purposes of this Order only, neither the Sale Guidelines, Consulting Agreement, nor this Interim Order authorize the Debtors to transfer or sell to Consultant or Consultant to sell to any other party the personally identifiable information (which means information that alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued

identification number, account number, and credit or debit card number) of any customers. The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Sales.

35.     The Debtors shall remove or cause to be removed any confidential and/or personally identifiable information in any of the Debtors hardware, software, computers, or cash registers or similar equipment which are to be sold or abandoned so as to render the personally identifiable information unreadable or undecipherable. At the conclusion of the Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer personally identifiable information and that any records containing personally identifiable information were shredded, erased, or otherwise modified to render the personally identifiable information unreadable or undecipherable.

36.     Nothing herein is intended to affect any rights of any applicable Government Unit (as such term is defined in section 101(47) of the Bankruptcy Code) to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

**IV.     Procedures Relating to Additional Closing Stores.**

37.     To the extent that the Debtors seek to conduct Sales at any Additional Closing Store, the Sale Guidelines and this Interim Order shall apply to the Additional Closing Stores. At the time of designation of Additional ~~Closings~~Closing Stores, the Debtors and the Consultant shall mutually agree upon an increase to the Prepayment attributable to each group of designated Additional Closing Stores to being held by the Consultant in accordance with the Consulting Agreement.

38.     Prior to conducting the Sales at any Additional Closing Store, the Debtors will file a list including such Additional Closing Store with this Court (each, an "Additional Closing Store List"), and serve a notice of their intent to conduct the applicable Store Closing Sales at the Additional Closing Stores on the Dispute Notice Parties, including the applicable landlords (the "Additional Closing Store Landlords") and their counsel (if known) and any other interested parties by email (to the extent available to the Debtors) or ~~first class~~overnight mail within two business days of filing the Additional Closing Store List or as soon as reasonably practicable thereafter. With respect to the Dispute Notice Parties, including the Additional Closing Store Landlords, that do not have an email address on file in the Debtors' books and records, the Debtors will mail such notice to the notice address set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

39.     The Additional Closing Store Landlords and any interested parties shall have five days after service of the applicable Additional Closing Store List to object to the application of this Interim Order. If no timely objections are filed with respect to the application of this Interim Order to an Additional Closing Store, the Debtors are authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to continue with conducting the Sales at the Additional Closing Stores in accordance with this Interim Order, the Sale Guidelines, the Consulting Agreement, and any Side Letter, if applicable. If any objections are filed with respect to the application of this Interim Order or the Final Order to an Additional Closing Store, and such objections are not resolved, the objections and the application of this Interim order or the Final Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary. Any objections as to particular Additional

Closing Stores will not affect the Debtors' and Consultant's rights to begin Sales at non-objected-to Additional Closing Stores.

**VI.    Dispute Resolution Procedures with Governmental Units.**

40.    Nothing in this Interim Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.

41.    Nothing in this Interim Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. The Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws"). Nothing in this Interim Order, the Consulting Agreement, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non bankruptcy forum, subject to the Debtors' rights to

assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

42.    To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, the following provisions of this paragraph 42 shall apply and control over any Side Letters:

(a) Provided that the Sales are conducted in accordance with the Interim Order, any Final Order, and the Sale Guidelines, the Debtors, the Consultant, and the Debtors' landlords shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government and Liquidation Sale Laws establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sales and sales of the Store Closure Assets of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); *provided* that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

(b) Within five business days after entry of the Interim Order, the Debtors will serve by first class mail, copies of the Interim Order, the proposed Final Order, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; (d) the landlords for the Closing Stores and their counsel if known; and (e) the National Association of Attorneys General (collectively, the "Dispute Notice Parties").

(c) With respect to any Additional Closing Stores, within five business days after filing any Additional Closing Store List (as defined below) with the Court, the Debtors will

serve by first-class mail, copies of the Interim Order, or the Final Order, as applicable, the Consulting Agreement, and the Sale Guidelines on the Dispute Notice Parties.

(d) To the extent that there is a dispute arising from or relating to the Sales, the Orders, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within 10 days following entry of the Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice explaining the nature of the dispute to: (a) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (b) proposed counsel to the Conflicts Committee, (i) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018, Attn: Kizzy L. Jarashow, Esq. (kjarashow@goodwinlaw.com) and Stacy Dasaro, Esq. (sdasaro@goodwinlaw.com) and (ii) Potter Anderson & Corroon LLP 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801, Attn: L. Katherine Good, Esq. (kgood@potteranderson.com); (c) counsel to the DIP Agent and Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Lucas B. Barrett, Esq. (lbarrett@choate.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@RLF.com), John H. Knight, Esq. (Knight@RLF.com), Matthew P. Milana, Esq. (Milana@RLF.com); (d) counsel to the Prepetition Term Agent, (i) Goldberg Kohn, 55 East Monroe Street, Chicago, IL 60603-5792, Attn: Randall L. Klein, Esq. (randall.klein@goldbergkohn.com) and Zachary J. Garrett, Esq. (zachary.garrett@goldbergkohn.com) and (ii) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); (e) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Malcolm M. Bates, Esq.; (f) counsel to the Consultant, Leichtman Law, PLLC, 185 Madison Avenue, 15th Floor, New York, NY 10016. Attn.: Maura I. Russell, Esq. (mrussell@leichtmanlaw.com) and Morris Nickols Arsht & Tunnel LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19899-1347, Attn.: Derek C. Abbott, Esq. (dabbott@morrisnichols.com) and; (g) counsel to the Committee any statutory committee appointed in these chapter 11 cases; and (h) the affected landlord and their counsel of record (if known).  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

(e) In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to

continue to conduct the Sales pursuant to the Interim Order or the Final Order, as applicable, absent further order of the Court. Upon the entry of the Interim Order or the Final Order, the Debtors and the Consultant shall be authorized to conduct the Sales pursuant to the terms of the Interim Order or the Final Order, the Consulting Agreement, and the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(f) If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (d) and (e) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

43.    Subject to paragraphs 40 and 41 above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Store Closings or the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

44.    Provided that the Sales are conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Sale Guidelines (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closings and the Sales in accordance with the terms of this Interim Order and the Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

45.     Notwithstanding anything to the contrary herein, in view of the importance of the use of sign-walkers, banners, and other advertising to the Sales and the Store Closings, to the extent that disputes arise during the course of the Sales regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court. Such hearing will, to the extent practicable and subject to the Court's availability, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within three business days of such request. This scheduling procedure shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

**VII.     Other Provisions.**

46.     ~~Neither~~Subject to entry of the Final Order, neither the Consultant nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the Debtors or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores.

47.     ~~Not~~No later than ~~seven days prior to the objection deadline related to entry of an order approving the Motion on a final basis~~12:00 Noon, prevailing Eastern time, on December 3, 2025, the Consultant shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these chapter 11 cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.

48.     The Consultant shall act solely as a consultant to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Consulting

Agreement (including the Consultant's indemnity obligations thereunder) or the Sale Guidelines, with the exception of acts of gross negligence or willful misconduct and, for greater certainty, the Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any legislation governing employment or labor standards or pension benefits or health and Safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

49.     The Debtors are authorized and permitted to transfer to the Consultant personal information in the Debtors' custody and control solely for the purposes of assisting with and conducting the Sales and only to the extent necessary for such purposes; *provided* that the Consultant removes such personal information from the FF&E prior to the abandonment of the same.

50.     To the extent the Debtors are subject to any Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

51.     Notwithstanding anything to the contrary herein or in the Motion, nothing in this Order affects the rights and obligations of the Debtors and their applicable landlords under section 365 of the Bankruptcy Code with respect to nonresidential real property leases and the obligations arising thereunder.

52.    51. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

53.    52. Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume (other than with respect to the Consulting Agreement), adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption (other than with respect to the Consulting Agreement), adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

54.    ~~53.~~ The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

55.    ~~54.~~ The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003.

56.    ~~55.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

57.    ~~56.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

58.    ~~57.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

59.    ~~58.~~ This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted

in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute.

## Exhibit 1

**Original Agreement**

**Exhibit 2**

**First Amendment**

**Exhibit 3**

**Sale Guidelines**

## Sale Guidelines[1]

1. The Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

2. The Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Debtors had been operating such Closing Store on a Sunday prior to the commencement of the Sales.

3. On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Consultant may solicit customers in the Closing Stores themselves. On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4. The Debtors and the Consultant shall have the right to use and sell the Store Closure Assets and the Additional Merchandise. The Debtors and the Consultant may advertise the sale of the Store Closure Assets and the Additional Merchandise in a manner consistent with these Sale Guidelines. The purchasers of any of the Store Closure Assets and the Additional Merchandise sold during the Sales shall be permitted to remove the Store Closure Assets and the Additional Merchandise either through the back or alternative shipping areas at any time, or through other areas after store business hours; *provided*, *however*, that the foregoing shall not apply to the sale of de minimis Store Closure Assets and Additional Merchandise, whereby the item(s) can be carried out of the store in a shopping bag.

5. At the conclusion of the Sale, the Consultant shall vacate the Closing Stores; *provided* that Consultant may abandon any furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property) ("FF&E") not sold in the Sales at the conclusion of the Sales (the "Termination Date"), without cost or liability of any kind to the Consultant. The Consultant shall notify the Debtors of its intention to abandon any FF&E at least two days prior to the Termination Date. The Debtors will have the option to remove the FF&E at its own cost prior to the Termination Date. Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors. For the avoidance of doubt, as of the Termination Date, the Consultant and the Debtors may abandon any FF&E in place and without further responsibility or liability of any kind.

6. The Consultant may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale" or similar-themed sales. The Consultant may also have a

---

[1] Capitalized terms used in these Sale Guidelines have the meanings given to them in the *[Motion]*

"countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Debtors, prior to purchase, in accordance with these Sale Guidelines.

7. The Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Sales; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Consultant and the Debtors shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Consultant and the Debtors shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; *provided*, *however*, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Closing Store, and shall not be wider than the storefront of the Closing Store. In addition, the Consultant and the Debtors shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Consultant and the Debtors any additional restrictions not contained in the applicable lease agreement.

8. Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

9. Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

10. The Consultant shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Closing Store shall be removed or sold during the Sales. The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

11. The Consultant shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

12. The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court; *provided* that such agreements do not have a material adverse effect on the Debtors or their estates.

13. Subject to the provisions of the Consulting Agreement, the Consultant shall have the right to use and sell all FF&E owned by the Debtors (the "Owned FF&E"). The Consultant may advertise the sale of the Owned FF&E in a manner consistent with these guidelines and the Consulting Agreement. The purchasers of any Owned FF&E sold during the sale shall be permitted to remove the Owned FF&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours; *provided*, *however* that the

foregoing shall not apply to de minimis FF&E sales made whereby the item can be carried out of the Closing Store in a shopping bag. For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility, any FF&E.

14. At the conclusion of the Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Debtors, the Consultant, and their agents and representatives shall continue to have access to the Closing Stores, pending assumption or rejection of applicable leases, as provided for in the Consulting Agreement.

15. The rights of landlords against Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease; *provided* that to the extent certain leases of Closing Stores require written confirmation of receipt of a key to effectuate surrender, this requirement is waived.

16. If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtors or the Consultant are in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Debtors and the Consultant as follows:

If to Consultant:

Robert Raskin (Raskin@sb360.com)

with copies (which shall not constitute notice) to:

Leichtman Law, PLLC
185 Madison Avenue, 15th Floor,
New York, NY 10016
Attn.: Maura I. Russell, Esq. (mrussell@leichtmanlaw.com)

and

Morris Nickols Arsht & Tunnel LLP,
1201 North Market Street, 16th Floor,
Wilmington, DE 19899-1347
Attn.: Derek C. Abbott, Esq. (dabbott@morrisnichols.com)

If to Debtors:

American Signature, Inc.
4300 E 5th Ave
Columbus, OH 43219
Attn.: Eric Jackson (eric.jackson@americansignature.com)

with copies (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor, Wilmington, DE 19899
Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com)
David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com)

17. If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than three business days' written notice to the other party, served by email or overnight delivery.