## EXHIBIT A

**Bid Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) Case No. 25-12105(JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. __** |

### ORDER (I) APPROVING BID PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH MOTION TO APPROVE (A) STALKING HORSE ASSET PURCHASE AGREEMENT AND (B) STALKING HORSE AGENCY AGREEMENT; (II) SCHEDULING BID DEADLINES AND THE AUCTION, (III) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) approving bidding procedures, substantially in the form attached hereto as Exhibit 1 (the "Bid Procedures"), to be used in connection with approval of a stalking horse bid (the "Stalking Horse Bid"), the terms of which are set forth in (I) that certain *Asset Purchase Agreement*, dated as of November 25, 2025 (the "Stalking Horse APA") by and between the Debtors and ASI Purchaser LLC (and together with any applicable designee, the "Stalking Horse Buyer") and SEI, Inc. as Guarantor and (II) the accompanying *Agency Agreement*, dated as of November 25, 2025 (the "Stalking Horse Agency Agreement"), by and between the Debtors and ASI Purchaser LLC (and/or its designee(s)) (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162).  The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] Capitalized terms used but not defined herein have the meanings given to them in Motion, the Bid Procedures attached hereto as **Exhibit 1** or the Stalking Horse Agreements (defined below), as applicable.

"Stalking Horse Agent") and SEI, Inc. as Guarantor[3], or alternatively, to such bidder that submits the highest and best bid for the Aggregate Assets[4] at auction; (b) authorizing the Debtors to provide the Stalking Horse Bidder with the Expense Reimbursement and the Augment Purchase pursuant to the terms of the Stalking Horse Agreements; (c) scheduling an auction of the Aggregate Assets and scheduling the hearing to approve the sale of the Aggregate Assets; (d) approving the form and manner of notice of the proposed sale hearing, substantially in the form attached to hereto as Exhibit 2; (e) authorizing procedures governing the potential assumption and assignment of the Debtors' certain executory contracts and unexpired leases in connection with the sale of the Aggregate Assets (each a "Potential Assigned Agreement" and, together, the "Potential Assigned Agreements"); and (f) approving the form and manner of notice to each relevant nondebtor counterparty to a Potential Assigned Agreement of (A) the Debtors' calculation of the amount necessary to cure any defaults required to be cured under section 365 of the Bankruptcy Code under an applicable Potential Assigned Agreement and (B) certain other information regarding the potential assumption and assignment of Potential Assigned Agreements in connection with the sale of the Aggregate Assets, substantially in the form attached hereto as Exhibit 3; and (ii) an order (a) authorizing the sale of the Aggregate Assets free and clear of all liens, claims, interests, and encumbrances provided with such liens, claims, interests, and encumbrances to attach to the

---

[3]  The Stalking Horse Agent and the Stalking Horse Buyer are collectively referred to as the "Stalking Horse Bidder." The Stalking Horse APA and the Stalking Horse Agency Agreement are collectively referred to as the "Stalking Horse Agreements."

[4]  The Debtors' assets subject to the transactions contemplated under the Stalking Horse Agency Agreement, pursuant to which the Stalking Horse Bidder will act as the Debtors' agent for the purposes of liquidating their inventory, furniture, fixtures, and equipment at certain stores and distribution centers plus the assets to be sold to the Stalking Horse Bidder under the Stalking Horse APA, which include, *inter alia*, granting the Stalking Horse Bidder designation rights on substantially all of the Debtors' leases and selling to the Stalking Horse Bidder certain of the Debtors' assets, including the Debtors' owned real estate assets, the Debtors' intellectual property, and certain of the Debtors' claims and causes of action and the other assets identified in the Stalking Horse APA, are collectively referred to as the "Aggregate Assets."

proceeds of such sale; (b) authorizing the assumption and assignment of Potential Assigned Agreements; and (c) granting related relief, all as more fully set forth in the Motion and upon the First Day Declaration; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Bid Procedures Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Bid Procedures Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction to consider the Motion, the relief requested therein, and the transaction contemplated by the Stalking Horse Agreements in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding

under 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are sections 105, 363, 365, 503, 507, and 1146(a) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, 9006-1, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedures of the United States District Court for the District of Delaware (the "Local Rules").

D.      The Debtors' proposed notice of the Motion and the hearing thereon, including, without limitation, the Bid Procedures and the proposed entry of this Bid Procedures Order, is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice; (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, such that no other or further notice is required.

E.      The Debtors and their advisors are engaged in an extensive sale process to solicit and develop the highest or best offers for the Aggregate Assets.

F.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bid Procedures and payment of the Expense Reimbursement and the Augment Purchase for the Aggregate Assets) has been afforded to parties in interest.

G.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bid Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

H.      Each of the Bid Procedures comply with the requirements of Local Rule 6004-(1)(c).

I.      The Sale Notice attached hereto as <u>Exhibit 2</u> is fair, appropriate, and reasonably calculated to provide proper and sufficient notice to creditors, the Debtors' economic stakeholders, and other parties in interest of the Sale Hearing and the relief requested under the Motion, including, without limitation, the procedures and deadlines by which parties may object to the Motion.  The Potential Assumption and Assignment Notice attached hereto as <u>Exhibit 3</u> is fair, appropriate, and reasonably calculated to provide each Counterparty to the Potential Assigned Agreements with proper and sufficient notice of the potential assumption and assignment of such Potential Assigned Agreements by the Successful Bidder(s) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each Counterparty assert any objection to the proposed Cure Amounts prior to the Assumption and Assignment Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Potential Assigned Agreements.  The Assumption and Assignment Procedures comply with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

J.      The process for selecting the Stalking Horse bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.  The Debtors have articulated

good and sufficient reasons for the Court to: (i) approve the Bid Procedures, (ii) schedule the Auction and approve the manner of notice of the Auction, (iii) approve the procedures for the assumption and assignment of the Potential Assigned Agreements, including notice of proposed Cure Amounts, and (iv) grant the Expense Reimbursement and the Augment Purchase, to the extent and as provided in the Stalking Horse Agreements and in this Bid Procedures Order.

K.      The Bid Procedures and the Stalking Horse Agreements were negotiated among the Debtors, the Stalking Horse Bidder and Guarantor at arms' length and in good faith.  The Stalking Horse Agreements represent the highest and otherwise best offer that the Debtors have received to date for the Aggregate Assets.  Without the Stalking Horse Bid, the Debtors would likely realize a lower price for the Aggregate Assets.  As such, the contributions of the Stalking Horse Bidder to the process have indisputably provided a substantial benefit to the Debtors, their estates, and creditors in these chapter 11 cases.  The Stalking Horse Bid will enable the Debtors to secure a fair and adequate baseline price for the Aggregate Assets at the Auction (if any), and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

L.      The Bid Procedures in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate, are designed to maximize creditor recoveries from a sale of the Aggregate Assets and permit the Debtors to comply with their obligations and the Sale Milestones provided under the *Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and*

*Providing Superpriority Administrative Expense Status, and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and Scheduling Final Hearing, and (V) Granting Related Relief* [Docket No.____] (the "Interim DIP Order") and are consistent with the Debtors' exercise of their fiduciary duties under applicable law.

M.      To the extent payable under the terms of the Stalking Horse Agreements, and this Bid Procedures Order, the Expense Reimbursement and the Augment Purchase for the Aggregate Assets (together, the "Bid Protections"): (i)(a) shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (b) shall constitute allowed superpriority expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code with priority over all other administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code, provided that such superpriority claim shall be subject and subordinate to the Carve Out (as defined in the Interim DIP Order); (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonably tailored to encourage, rather than hamper, bidding for the Aggregate Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Aggregate Assets; (iv) provide a substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein; (v) are reasonable and appropriate; (vi) are a material inducement for and condition necessary to ensure that the Stalking Horse Bidder will

continue to pursue the Stalking Horse Agreements to purchase the Aggregate Assets; and (vii) are reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the sale of the Aggregate Assets and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction. Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Stalking Horse Agreements or otherwise be bound under the Stalking Horse Agreements, including, without limitation, the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bid Procedures.

N.      The Stalking Horse Bidder shall act as the "stalking horse bidder" for the Aggregate Assets in accordance with the Stalking Horse Agreements.

O.      The Bid Protections, as approved by this Bid Procedures Order, (i) are fair and reasonable, (ii) have been negotiated by the Stalking Horse Bidder and the Debtors at arm's length and in good faith, (iii) provide a benefit to the Debtors' estates and stakeholders, and (iv) are necessary to ensure that the Stalking Horse Bidder will continue to pursue the Stalking Horse Agreements and transactions contemplated thereby.

P.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bid Procedures Order and thereby: (i) approve of the Bid Procedures as contemplated by the Stalking Horse Agreements and the Motion; (ii) authorize the Bid Protections, under the terms and conditions set forth in the Stalking Horse Agreements; (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Bid Procedures; (iv) approve the proposed noticing procedures (the "Noticing Procedures") and the

forms of notice; and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Bid Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

**IT IS HEREBY ORDERED THAT:**

1. For the reasons stated on the record at the Bid Procedures Hearing, the Motion is granted as set forth herein.

2. All objections to the relief requested in the Motion, the filing and service of the proposed bidding procedures order approving the relief in the Motion, and the attachments to such order, that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are hereby overruled in all respects on the merits; except as otherwise stated on the record at the Bid Procedures Hearing.

3. The Bid Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Aggregate Assets and the Auction. The failure to specifically include or reference any particular provision of the Bid Procedures in the Motion or this Bid Procedures Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bid Procedures are approved in their entirety, as if fully set forth in this Bid Procedures Order. The Debtors are authorized to take all actions necessary or appropriate to implement the Bid Procedures.

### Bid Procedures

**A.**     <u>**Approval of Dates and Deadlines Requested in the Motion.**</u>

        4.     <u>**Bid Deadline**</u>.  **_____, 2025, at 4:00 p.m. (prevailing Eastern Time)**, is the deadline by which bids for the Aggregate Assets (as well as the deposit and all other documentation required under the Bid Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bid Procedures.

        5.     <u>**Auction**</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted on **_____, ___:00 _.m. (prevailing Eastern Time)** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (or by video conference to the live proceedings at this location) (the "<u>Auction</u>").  The Debtors shall provide notice of the date, time, and place of the Auction to the Qualified Bidders no later than one day before such Auction, and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on the website of Verita Global, the Debtors' notice and claims agent, Verita Global, at [https://cases._____](https://cases._____) (the "<u>Case Information Website</u>").  The Debtors are authorized to conduct the Auction in accordance with the Bid Procedures.

        6.     As soon as is reasonably practicable following the conclusion of the Auction, if held, the Debtors shall file with the Court a notice of the Auction results and serve such notice by electronic mail (if known), or otherwise by overnight mail, on Counterparties and any other parties that have requested service pursuant to Bankruptcy Rule 2002.  Objections to the

conduct of the Auction, the Successful Bidder, or, if applicable, the sale of the Aggregate Assets to the Successful Bidder or the sale to the Stalking Horse Bidder must be made at the Sale Hearing.

7.    **Sale Hearing**.  The Sale Hearing for the Aggregate Assets shall be held in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, _____ Floor, Courtroom No. _____, Wilmington, Delaware 19801, on _____, **at __:00 _.m. (prevailing Eastern Time)** or such other date and time that the Court may later direct or as agreed upon by the Debtors and the Successful Bidder(s); *provided*, *however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket or by announcement of any continued hearing in open Court or on the Court's docket.

**B.    Sale Objections.**

8.    Objections to the sale of the Aggregate Assets, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than _____, **at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"), and (d) be served on: (1) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (2) proposed counsel to the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee"), (a) [●], and (b) [●]; (3) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Malcolm M. Bates, Esq. (malcolm.m.bates@usdoj.gov) (the "U.S. Trustee"); (4) counsel to the counsel to the DIP Agent and Prepetition ABL Agent,

(a) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com) and Lucas B. Barrett, Esq. (lbarrett@choate.com) and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@RLF.com), John H. Knight, Esq. (Knight@RLF.com) and Matthew P. Milana, Esq. (Milana@RLF.com); (5) counsel to the Stalking Horse Bidder, (a) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn:  Scott Charles, Esq. (SKCharles@wlrk.com) and Neil M. Snyder, Esq. (NMSnyder@wlrk.com) and (b) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington DE 19899-1347, Attn:  Derek C. Abbott (dabbott@morrisnichols.com) (6) counsel to the Prepetition Term Agent, (a) Goldberg Kohn, 55 East Monroe Street, Chicago, Ill 60603-5792, Attn:  Randall Klein, Esq. (randall.klein@goldbergkohn.com) and Zachary Garrett, Esq. (zachary.garrett@goldbergkohn.com) and (b) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); (7) proposed counsel to the Conflicts Committee, (i) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018, Attn: Kizzy L. Jarashow, Esq. (kjarashow@goodwinlaw.com) and Stacy Dasaro, Esq. (sdasaro@goodwinlaw.com) and (ii) Potter Anderson & Corroon LLP 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801, Attn: L. Katherine Good, Esq. (kgood@potteranderson.com);  and (8) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").  The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to

the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the sale of the Aggregate Assets to the Successful Bidder, including the sale of the Aggregate Assets free and clear of all liens, claims, interests, and other encumbrances (with the same to attach to the cash proceeds of the sale of the Aggregate Assets to the same extent and with the same order of priority, validity, force and effect which they previously had against the Aggregate Assets, subject to the rights and defenses of the Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment of the Potential Assigned Agreements to the Successful Bidder.

**C.    Auction, Bid Procedures, and Related Relief.**

9.    The Bid Procedures, substantially in the form attached hereto as **Exhibit 1** are incorporated herein and are hereby approved in their entirety, and the Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the sale of the Aggregate Assets. Any party desiring to submit a Bid for the Aggregate Assets shall comply with the Bid Procedures and this Bid Procedures Order.  The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

10.    **Noticing Procedures**.  The Noticing Procedures as set forth in this Bid Procedures Order and the Motion, including the form of Sale Notice attached hereto as **Exhibit 2**, are hereby approved.  Within three (3) business days after entry of this Bid Procedures Order, the Debtors shall serve the Sale Notice by email (where known) and by first-class mail upon: (a) counsel to the Committee; (b) the U.S. Trustee; (c) counsel to DIP Agent and Prepetition ABL Agent; (d) counsel to the Stalking Horse Bidder; (e) counsel to the Prepetition Term Agent; (f) all

known creditors of the Debtors (for whom identifying information and addresses are available to the Debtors); (g) the Internal Revenue Service; (h) all applicable federal, state, and local taxing authorities; (i) all persons and entities known by the Debtors to have expressed an interest to the Debtors in the Aggregate Assets; (j) all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Aggregate Assets (for whom identifying information and addresses are available to the Debtors); (k) Counterparties to Potential Assigned Agreements; (l) any governmental authority known to have a claim against the Debtors in the Chapter 11 Cases; (m) the United States Securities and Exchange Commission; (n) the United States Attorney's Office for the District of Delaware; (o) United States Attorney General's Office for the District of Delaware; (p) the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate; (q) counsel to the Conflicts Committee; (r) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and (s) all other parties as directed by the Court (collectively, the "Sale Notice Parties").  On or about the same date or as soon as reasonably practicable, the Debtors shall post the Sale Notice on the Case Information Website and may, in their discretion, publish a notice substantially similar to the Sale Notice in *USA Today*, *The New York Times National Edition* or similar publication with national circulation.  Service of the Sale Notice on the Sale Notice Parties and publication thereof in the manner described in this Bid Procedures Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

11. **Cancellation or Adjournment of Auction**.  If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors shall cancel the Auction

and will not hold the Auction, (b) the Stalking Horse Bidder will be deemed the Successful Bidder

for the Aggregate Assets, and (c) the Debtors shall be authorized to seek approval of the Stalking

Horse Agreements for the Aggregate Assets at the Sale Hearing; *provided, however*, that the

Debtors may, in their discretion, open the Auction solely for the purpose of reflecting on the record

that no other Qualified Bids were received other than the Stalking Horse Bid for the Aggregate

Assets.

12.     The Debtors reserve the right, in their business judgment, to adjourn the

Auction one or more times, to, among other things, (i) facilitate discussions between the Debtors

and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and

(iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional

evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has

sufficient internal resources or has received sufficient noncontingent debt and/or equity funding

commitments to consummate the proposed sale of the Aggregate Assets at the prevailing Overbid

amount.

13.     **Stalking Horse Bid Protections**.  The Stalking Horse Agent and the

Stalking Horse Buyer are hereby approved as the Stalking Horse Bidder for the Aggregate Assets

pursuant to the terms of the Stalking Horse Agreements.

14.     The Stalking Horse Bid for the Aggregate Assets shall be subject to higher

or otherwise better Qualified Bids, in accordance with the terms of the Bid Procedures, provided

that approval of the Stalking Horse Agreements is subject to entry of the Approval Order.

15.     The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid as set forth in the Stalking Horse Agreements is a Qualified Bid.

16.     No person or entity other than the Stalking Horse Bidder shall, with respect to any bid for the Aggregate Assets, be entitled to any expense reimbursement, break-up fees, "topping" fee, termination fee, or other similar fee or payment; by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for expense reimbursement, break-up fees, "topping" fee, termination fee, or other similar fee or payment of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

17.     The Bid Protections are each approved on the terms set forth in the Stalking Horse Agreements.  Pursuant to sections 105, 363, 364, 503 and 507 of the Bankruptcy Code, the Debtors are authorized to pay, or cause to be paid, the Bid Protections to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Agreements without further order of the Court. The Bid Protections shall only be payable if the conditions to payment of such amounts set forth in the Stalking Horse Agreements have been satisfied and shall, to the extent payable, be paid solely from the proceeds of a Subsequent Transaction (as defined in the Stalking Horse APA).  The Bid Protections: (i) shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) shall constitute allowed superpriority expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code with priority over all other administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code, provided that such superpriority claim shall be subject and subordinate to the Carve Out (as defined in the Interim DIP Order); and

(iii) shall survive the termination of the Stalking Horse Agreements and dismissal or conversion of the Chapter 11 Cases.

18.     The Bid Protections shall be payable by the Debtors as set forth in section 8.2 of the Stalking Horse APA and in accordance with terms thereof and this Bid Procedures Order without further order from the Court.

**D.     Credit Bidding**

19.     Unless otherwise ordered by the Court, any Qualified Bidder who has a valid, perfected, and enforceable lien on any assets of the Debtors' estates (a "Secured Creditor") and the right, power, and authorization to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of, and subject to, section 363(k) of the Bankruptcy Code, including the rights of the Debtors, the Creditors' Committee and other parties in interest in the Chapter 11 Cases to object to such credit bid.

**APPROVAL OF THE ASSUMPTION AND
ASSIGNMENT PROCEDURES FOR BID PROCEDURES**

20.     The Assumption and Assignment Procedures set forth in the Motion and herein are hereby approved.  The Potential Assumption and Assignment Notice substantially in the form attached to this Bid Procedures Order as **Exhibit 3** is approved for the Aggregate Assets. No other or further notice is required.[5]

---

[5] To extent the identity of the assignee designated by the Stalking Horse Bidder to any Potential Assigned Agreement is not provided in any Potential Assumption and Assignment Notice or Supplemental Potential Assumption and Assignment Notice, the Counterparty to any Potential Assigned Agreement shall not be required to file an Assumption and Assignment Objection solely on the grounds of (i) the identity of the proposed assignee to the Potential Assigned Agreement, or (ii) the ability of the proposed assignee to provide adequate assurances of future performance under any Potential Assumed Agreement.

21.     No later than three (3) business days after entry of this Bid Procedures Order, the Debtors shall file with the Court and post on the Case Information Website, the Potential Assumption and Assignment Notice and serve such notice (a) by overnight delivery service upon the Counterparties at the address set forth in the notice provision of the applicable Potential Assigned Agreement (and their counsel, if known) and (b) by first class mail, email, or fax upon the Objection Notice Parties. The Potential Assumption and Assignment Notice shall notify the Counterparties that the applicable Potential Assigned Agreements are subject to potential assumption and assignment and of the Debtors' proposed Cure Amounts relating to such Potential Assigned Agreements.

22.     Any Counterparty may object to the proposed assumption or assignment of its Potential Assigned Agreement, the Debtors' proposed Cure Amounts with respect to its Potential Assigned Agreement, if any, or the ability of the Stalking Horse Bidder or any other potential bidder to provide adequate assurance of future performance (collectively, an "Assumption and Assignment Objection").[6]  All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount the Counterparty believes is required to cure defaults (as that concept is contemplated by

---

[6]  Except with respect to the Leases and Potential Assigned Agreements Primarily Related to such Lease (as those terms are defined in the Stalking Horse APA) that the Stalking Horse Bidder (in the event that it is the Successful Bidder) may designate for assumption and assignment to its designee pursuant to the Lease Assignment Notice substantially in the form attached as Exhibit D to the Approval Order to the affected counterparties, which notice will disclose the designated Lease and Potential Assigned Agreements Primarily Related to such Lease.

Section 3.6 of the Stalking Horse APA permits the Stalking Horse Bidder to add certain Contracts  to the Assigned Agreements for assumption and assignment (including to its delegee) following the Closing until the Designation Deadline and for the assumption and assignment of such Contracts (including to its delegee) in accordance with the terms and conditions of that agreement.

section 365 of the Bankruptcy Code) under the relevant Potential Assigned Agreement; (d) be filed by no later than **4:00 p.m. (prevailing Eastern Time) on** _____; and (e) be served on the Objection Notice Parties.

23.     If a Counterparty files a timely Assumption and Assignment Objection, the Court will hear and determine such objection at the Sale Hearing or such other date that the Debtors and the Successful Bidder shall determine (subject to the Court's calendar).

24.     If a Counterparty fails to file with the Court and serve a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Potential Assigned Agreement, and, notwithstanding anything to the contrary in the Potential Assigned Agreement or any other document, the Cure Amounts set forth in the Potential Assumption and Assignment Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Potential Assigned Agreement under section 365(b) of the Bankruptcy Code arising out of or related to the Potential Assigned Agreement following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise; and the Counterparty shall be forever barred from asserting any cure or other pre-assignment amounts in excess of the Cure Amount set forth in the applicable Potential Assumption and Assignment Notice with respect to such Potential Assigned Agreement against the Debtors, the Successful Bidder or the property of any of them.

25.     In the event that any additional Potential Assigned Agreements are noticed for assumption or assignment or any previously stated Cure Amounts are modified in accordance

with the Stalking Horse Agreements, the Successful Bidder's asset purchase agreement or the Assumption and Assignment Procedures, the Debtors will promptly serve a supplemental assumption and assignment notice, by overnight mail and, if known, e-mail, on the applicable Counterparties (collectively, a "Supplemental Assumption and Assignment Notice"). Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Potential Assigned Agreement as is required to be included in the Potential Assumption and Assignment Notice.

26. Any Counterparty listed on a Supplemental Assumption and Assignment Notice whose Potential Assigned Agreement is proposed to be assumed and assigned and was not included in the Potential Assumption and Assignment Notice may object to the proposed assumption or assignment of its Potential Assigned Agreement, the Debtors' proposed Cure Amounts with respect to its Potential Assigned Agreement, if any, or the ability of the Successful Bidder to provide adequate assurance of future performance (collectively, a "Supplemental Assumption and Assignment Objection"). All Supplemental Assumption and Assignment Objections must (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules; (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amounts the Counterparty believes is required to cure defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the relevant Potential Assigned Agreement; (d) be filed by no later than ten (10) calendar days after the date of service of such Supplemental Assumption and Assignment Notice; and (e) be served on the Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the

same manner as an Assumption and Assignment Objection. For the avoidance of doubt, if a Potential Assigned Agreement was listed in the Potential Assumption and Assignment Notice and the previously stated Cure Amount is modified in the Supplemental Assumption and Assignment Notice, the Counterparties to such Potential Assigned Agreement may file a Supplemental Assumption and Assignment Objection only if such objection is to the modified Cure Amount.

27.     If a Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Supplemental Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Potential Assigned Agreement and, notwithstanding anything to the contrary in the Potential Assigned Agreement or any other document, the Cure Amounts set forth in the Supplemental Assumption and Assignment Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Potential Assigned Agreement under section 365(b) of the Bankruptcy Code arising out of or related to the Potential Assigned Agreement following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise; and the Counterparty shall be forever barred from asserting any cure or other pre-assignment amounts in excess of the Cure Amount set forth in the applicable Supplemental Assumption and Assignment Notice with respect to such Potential Assigned Agreement against the Debtors, the Successful Bidder or the property of any of them.

## <u>MISCELLANEOUS PROVISIONS FOR BID PROCEDURES</u>

28.     The failure to include or reference a particular provision of the Bid Procedures specifically in this Bid Procedures Order shall not diminish or impair the effectiveness or enforceability of such a provision.

29.     In the event of any inconsistencies between this Bid Procedures Order and the Motion and/or the Bid Procedures, this Bid Procedures Order shall govern in all respects.

30.     This Bid Procedures Order, and the claims granted hereunder in favor of the Stalking Horse Bidder on account of the Bid Protections, shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

31.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

32.     All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     To the extent the dates and deadlines herein are modified pursuant to the Bid Procedures and such modification is inconsistent with the requirements of Local Rule 9006-1(b), such requirements shall be deemed satisfied.

34.     Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Rule that might otherwise delay the effectiveness of this Bid Procedures Order), the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry.

35.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Bid Procedures Order in accordance with the Motion.

36.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process, including submitting a bid for any of the Aggregate Assets during the sale process and/or Auction, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of the Aggregate Assets, the Auction, and any related transaction(s), (b) consented to the entry of a final order by this Court in connection with the Motion or this Bid Procedures Order (including any disputes related to the bidding process, the Auction, and/or any related transaction(s)) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

37.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bid Procedures Order.  The Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Bid Procedures Order or the Bid Procedures.

## EXHIBIT 1 (to Bid Procedures Order)

### Bid Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) | Case No. 25-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## BID PROCEDURES

On November 22, 2025 (the "Petition Date"), the above captioned debtors and debtors in possession (together, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). On November __, 2025, the Debtors filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into (i) Stalking Horse Asset Purchase Agreement and (ii) Stalking Horse Agency Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving The Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*, Docket No. __ (the "Motion").

On December __, 2025, the Court entered the *Order (I) Approving Bid Procedures and Bid Protections in Connection with Motion to Approve (A) Stalking Horse Asset Purchase Agreement; and (B) Stalking Horse Agency Agreement; (II) Scheduling Bid Deadlines and the Auction; (III) Approving Form and Manner of Notice thereof; and (IV) Granting Related Relief*, Docket No. [●] (the "Bid Procedures Order"), with respect to the procedures contemplated herein (the "Bid Procedures"). The Bid Procedures set forth the process by which the Debtors are authorized to solicit bids and conduct an auction (the "Auction") to determine the Successful Bidder for the Aggregate Assets (as each term is defined below).

To effectuate the sale of the Aggregate Assets, the Debtors have submitted for approval that certain *Asset Purchase Agreement*, dated as of November 25, 2025 (the "Stalking Horse APA") by and between the Debtors and ASI Purchaser LLC (and together with any applicable designee, the "Stalking Horse Buyer") and SEI, Inc. as Guarantor, and the accompanying *Agency Agreement*, dated as of November 25, 2025 (the "Stalking Horse Agency Agreement"), by and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

between the Debtors and ASI Purchaser LLC (and/or its designee(s)) (the "Stalking Horse Agent") and SEI, Inc. as Guarantor.[2]  The Debtors' assets subject to the transactions contemplated under the Stalking Horse Agency Agreement, pursuant to which the Stalking Horse Bidder will act as the Debtors' agent for the purposes of liquidating their inventory, furniture, fixtures, and equipment at certain stores and distribution centers plus the assets to be sold to the Stalking Horse Bidder under the Stalking Horse APA, which include, *inter alia*, granting the Stalking Horse Bidder designation rights on substantially all of the Debtors' leases and selling to the Stalking Horse Bidder certain of the Debtors' assets, including the Debtors' owned real estate assets, the Debtors' intellectual property, and certain of the Debtors' claims and causes of action and the other assets identified in the Stalking Horse APA, are collectively referred to as the "Aggregate Assets."

## Marketing Process

**Contact Parties.**

As part of the marketing process, the Debtors have and continue to assemble materials in order to streamline potential purchasers' diligence requests, and develop a list of parties (each, a "Contact Party", and collectively, the "Contact Parties") who may be interested in, and who the Debtors reasonably believe have the financial resources to consummate, a transaction for the sale of the Aggregate Assets (a "Transaction").  Parties interested in becoming Contact Parties should contact:  Teresa C. Kohl (tkohl@ssgca.com), Craig D. Warznak (cwarznak@ssgca.com), and J. Scott Victor (jsvictor@ssgca.com).

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder materials consisting of: (a) a copy of the Bid Procedures, the Bid Procedures Order, and the Motion; (b) a form confidentiality agreement (a "Confidentiality Agreement"); and (c) such other materials as appropriate under the circumstances.

**Participation Requirements.**

To receive due diligence information and to receive additional non-public information regarding the Debtors, a potential bidder must (x) not be in breach of any agreement with any Debtors and (y) deliver to each of: (a) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (b) Chief Restructuring Officer of American Signature Inc., BRG, 225 Franklin Street, Suite 3200, Boston, MA 02110 Attn: Rudy Morando (rmorando@thinkbrg.com), Chris McAvinn (cmcavinn@thinkbrg.com), and Stephen Coulombe (scoulombe@thinkbrg.com); and (c) proposed investment bankers to Debtors, SSG Capital Advisors, LLC, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attn: Teresa C. Kohl (tkohl@ssgca.com), Craig D. Warznak (cwarznak@ssgca.com), and J. Scott Victor (jsvictor@ssgca.com) (collectively, the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents")

---

[2]  The Stalking Horse Agent and the Stalking Horse Buyer are collectively referred to as the "Stalking Horse Bidder." The Stalking Horse APA and the Stalking Horse Agency Agreement are collectively referred to as the "Stalking Horse Agreements."

on or prior to _____ **at 4:00 p.m. (prevailing Eastern time)**, unless otherwise waived by the Debtors in their discretion:

    a.    an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed, which Confidentiality Agreement shall, among other terms, contain customary provisions regarding: (i) the nondisclosure of confidential information, (ii) prohibitions on contacting third parties in connection with a Transaction, (iii) covenant to not solicit employees of the Debtors, (iv) prohibitions on purchasing or otherwise acquiring the Debtors' debt and equity securities, and (v) the survival of certain provisions of the Confidentiality Agreement;

    b.    evidence by the potential bidder of its sufficient financial capacity to close a proposed Transaction, which may include financial statements of, or verified financial commitments obtained by, the potential bidder (or, if the potential bidder is an entity formed for the purpose of acquiring the Aggregate Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors, with the assistance of the Debtors' Advisors;

    c.    written disclosure of any connections or agreements with the Debtors, the Stalking Horse Bidder, any other known potential bidder or Qualified Bidder (defined below), "insiders" of the Debtors (as that term is contemplated by section 101(31) of the Bankruptcy Code), and/or any manager or direct or indirect equity security holder of the Debtors; and

    d.    identification of the potential bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Transaction.

Only those potential bidders that (a) are not in breach of any contract with any Debtor (unless otherwise waived by the Debtors); and (b) have submitted acceptable Preliminary Bid Documents, as determined by the Debtors (an "Acceptable Bidder"), may submit Bids.

Beginning on or as soon as is reasonably practicable after the Debtors determine that a potential bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with reasonable access to due diligence information, to the extent reasonably requested by such Acceptable Bidder. All due diligence requests must be directed to the Debtors' proposed investment bankers, SSG Capital Advisors, LLC, Attn: Teresa C. Kohl (tkohl@ssgca.com), Craig D. Warznak (cwarznak@ssgca.com), and J. Scott Victor (jsvictor@ssgca.com).

To the extent reasonably practicable, the Debtors will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their discretion. The due diligence period will end on the Bid Deadline, as defined below, and, after the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever related to the Aggregate Assets (i) to any person or entity who (a) is not an Acceptable Bidder; (b) does not comply with the participation requirements set forth above; and (ii) to the extent not permitted by law.

The Debtors and the Debtors' Advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction. No potential bidder, Acceptable Bidder, or Qualified Bidder shall communicate with any of the Debtors' employees, landlords, vendors, or other potential bidder, Acceptable Bidder, or Qualified Bidder with respect to any bid or potential Transaction absent the prior written consent of the Debtors; *provided* that, if such consent is given, a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).

For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, redact, code, or delay providing any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or the Debtors' Advisors regarding such Acceptable Bidder and its contemplated Transaction.

### Expense Reimbursement and The Augment Purchase Amounts

To provide the Stalking Horse Bidder with an incentive to participate in a competitive process and to compensate the Stalking Horse Bidder for (i) performing substantial due diligence and incurring the expenses related thereto and (ii) entering into the Stalking Horse Agreements with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed, and the Court has approved in the Bid Procedures Order, that the Stalking Horse Bidder is entitled from the proceeds of a Subsequent Transaction[3] consummated pursuant to a Successful Bid (defined below) with the Successful Bidder (defined below) subject to the terms of the Stalking Horse Agreements and pursuant to the terms thereof, to: (A) the Expense Reimbursement (the "Expense Reimbursement") subject to a cap of $1.5 million and (B) the Augment Purchase[4]. As set forth below, payment of the Expense Reimbursement and the Augment Purchase (to the extent payable under the Stalking Horse Agreements and Bid

---

[3] As defined in the Stalking Horse APA.

[4] Section 8.2(a)(iii) of the Stalking Horse APA provides that in addition to any payments that may be due pursuant to Section 8.2(a)(i), if the Stalking Horse APA is terminated pursuant to Section 12.1, other than termination pursuant to Section 12.1(c)(i) or Sections 12.1(d), the Sellers shall purchase from Buyer, at cost, all Additional Agent Goods (as defined in the Agency Agreement) acquired by Buyer or any designee in connection with the Stalking Horse APA and the Agency Agreement prior to the date of such termination (the "Augment Purchase"). "Additional Agent Goods" refers to the Stalking Horse Agent's right to purchase additional Merchandise in the Sale (as those terms are defined in the Stalking Horse Agency Agreement) procured by the Stalking Horse Agent which are of like kind, and no lesser quality to the Merchandise in the Sale. The Additional Agent Goods shall be purchased by the Stalking Horse Agent at the Stalking Horse Agent's sole expense, to the extent provided in section 8.9 of the Stalking Horse Agency Agreement. Section 8.2(a)(iii) of the Stalking Horse APA also provides that Augment Purchase shall be made on the third Business Day following the consummation of a Subsequent Transaction solely out of and to the extent of the proceeds of the purchase price received by the Debtors from such Subsequent Transaction, in the manner provided in the Stalking Horse APA.

Procedures Order) shall be a component of any Qualified Bid submitted by a Qualified Bidder (other than the Stalking Horse Bidder). The Expense Reimbursement and the Augment Purchase shall be payable as provided for pursuant to the terms of the Bid Procedures Order, the Approval Order (as defined in the Bid Procedures Order), the Stalking Horse Agreements, and the Interim DIP Order.

## Auction Process

### I.      Bid Deadline.

An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) to be **actually received** on or before_____, **by 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") by:

   a.   BRG, 225 Franklin Street, Suite 3200, Boston, MA 02110 Attn: Rudy Morando (rmorando@thinkbrg.com); Chris McAvinn (cmcavinn@thinkbrg.com), and Stephen Coulombe (scoulombe@thinkbrg.com);

   b.   SSG Capital Advisors, LLC, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attn:  Teresa C. Kohl (tkohl@ssgca.com), Craig D. Warznak (cwarznak@ssgca.com), and J. Scott Victor (jsvictor@ssgca.com); and

   c.   Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com).

### II.     Bid Requirements.

Each Bid submitted by an Acceptable Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements," unless otherwise modified by the Debtors, in their discretion:

   a.   Bid Deadline.  A Bid must be received no later than the Bid Deadline, unless otherwise extended by the Debtors in their sole discretion;

   b.   Marked Agreement.  A Bid should include an executed asset purchase agreement, together with all exhibits and schedules (a "Competing APA") and, to the extent applicable to the Bid, a competing agency agreement, together with all exhibits and schedules (the "Competing Agency Agreement" and together with the Competing APA (the "Transaction Documents"), pursuant to which the Acceptable Bidder proposes to effectuate the contemplated transaction, which Competing APA and Competing Agency Agreement (to the extent applicable) should be similar in form and substance to the Stalking Horse APA and the Stalking Horse Agency Agreement, respectively, and be marked to reflect the differences between the Stalking Horse Agreements and the respective Transaction Documents, including, without limitation, specification of the proposed purchase price, any assumed liabilities, and any changes to any exhibits or schedules to any of the Stalking Horse

Agreements. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Transaction Documents. The Transaction Documents must include a commitment to close by no later than the closing date provided in the Stalking Horse Agreements. A Bid should propose a contemplated transaction involving all or substantially all of the Aggregate Assets; *provided, however*, that (i) the Debtors may consider proposals for less than substantially all the Aggregate Assets, and (ii) the Debtors will evaluate all Bids, in their sole discretion, subject to prior consultation with the Consultation Parties, to determine whether such Bid or combination of Bids maximizes the value of the Debtors' estates as a whole in light of any factors regarding such bid which the Debtors determine are appropriate to be considered in evaluating Bids.

c.   Purpose. Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase some or all of the Aggregate Assets and state which Aggregate Assets with reasonable specificity. Each Acceptable Bid must clearly identify the following: (i) contracts to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; (ii) the liabilities, if any, to be assumed; (iii) leases of equipment or stores to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; and (iv) which employees or groups thereof will be offered employment.

d.   Purchase Price. The consideration proposed by a Bid may include cash and/or other consideration acceptable to the Debtors in an amount of no less than the sum of (i) the Purchase Price (as defined in the Stalking Horse Agreements) plus (ii) the Expense Reimbursement and the Augment Purchase[5] plus (iii) $250,000 *provided that* the Bid must include sufficient cash to pay all DIP Obligations and Prepetition ABL Obligations (as defined in the DIP Order) in full upon closing unless otherwise agreed to by the DIP Agent and the Prepetition ABL Agent, in addition to the Expense Reimbursement and the Augment Purchase.

e.   Forms of Consideration. Each Bid must (a) indicate (x) whether it is an all-cash offer (including confirmation that the cash component of the Bid is based in U.S. Dollars) or consists of certain non-cash components, such as a credit bid and/or the assumption of liabilities; and (y) the liabilities to be assumed, if applicable; and (b) provide sufficient cash consideration specifically designated for the payment of the Expense Reimbursement and the Augment Purchase. The Debtors may request that any Bid include the allocation of the Purchase Price among the Aggregate Assets to be purchased.

f.   Deposit. Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate value of the cash and non-cash consideration (with the deposit

---

[5] On or prior to December 25, 2025, the Stalking Horse Bidder will notify the Debtors of the amount of the Augment Purchase as of such date, and will also notify the Debtors of any additional Augment Purchases incurred after December 25, 2025, through January 2, 2026. The Debtors will notify bidders and the DIP Agent of the amounts of Augment Purchases that has been provided them by the Stalking Horse Bidder.

amount for the non-cash consideration determined by the Debtors in their discretion) of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit"); *provided that* that the Debtors reserve the right to increase the amount of the Deposit in their discretion, including, without limitation, the right to request an additional Deposit in the event an Acceptable Bidder increases the amount of its Bid.

g.  Irrevocable.  All Bids must be irrevocable until the Debtors' selection of the Successful Bid and Backup Bid; *provided however*, that the Bids selected as either the Successful Bid or the Backup Bid (defined below) must be irrevocable and remain open for acceptance by the Debtors until the earlier of (i) such time that the Transaction is consummated and (ii) 30 days from entry of the Approval Order, subject to the terms of such Successful Bidder's or Backup Bidder's Transaction Documents; *provided however*, the Stalking Horse Bidder shall not be selected as the Backup Bidder.

h.  Committed Financing.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's purchase price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

i.  Unconditional Offer / Contingencies.  A statement that the Bid is formal, binding, and unconditional and is not subject to any further due diligence or financing contingency and is irrevocable until the Debtors notify the Acceptable Bidder that such Bid is not a Successful Bid or a Backup Bid.

j.  Non-Reliance.  A Bid must include a written acknowledgement and representation of the Acceptable Bidder that it has had an opportunity to conduct any and all due diligence regarding the Aggregate Assets and Assumed Liabilities (as defined in the Stalking Horse Agreements) prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Aggregate Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Aggregate Assets, the financial performance of the Aggregate Assets or the physical condition of the Aggregate Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction.

k.  Identity.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder, including if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed

Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s), counsel and other advisors whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Acceptable Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

l.      <u>Adequate Assurance</u>.  Each Bid must contain evidence acceptable to the Debtors in their discretion that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) and 365(b)(3) of the Bankruptcy Code.  Such evidence may include audited and unaudited financial statements, tax returns, bank account statements, a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request.

m.      <u>Authorization</u>.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the closing of the Transaction contemplated in such Bid.

n.      <u>No Fees Payable to Qualified Bidder</u>.  Except with respect to the Expense Reimbursement and the Augment Purchase payable to the Stalking Horse Bidder in accordance with the Stalking Horse Agreements, a Bid may not request or entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue any break-up fee, termination fee, expense reimbursement or similar type of payment, or substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bid Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction.  **The submission of a Bid shall constitute a binding and irrevocable offer to purchase the Aggregate Assets as reflected in such Bid.**

**Designation of Qualified Bidders.**

A Bid will be considered a "<u>Qualified Bid</u>," and each Acceptable Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Debtors determine, in their discretion, subject to prior consultation with the Consultation Parties, that such Bid:

a.      satisfies the Bid Requirements set forth above; and

b.      is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a time frame acceptable to the Debtors.

The Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties (defined below) with a copy of each Bid that has been submitted to the Debtors.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three (3) Business Days after the Bid Deadline, or as soon as is reasonably practicable thereafter.  The Debtors reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid and to determine at any time prior to the start of the Auction that such Bid, as modified, is a Qualified Bid.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Acceptable Bidder's purchase price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein; *provided, further*, that the Stalking Horse Bid may be modified and/or amended pursuant to its terms.  Any improved Qualified Bid must continue to comply in all respects with the requirements for Qualified Bids set forth in these Bid Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right, (a) to work with potential bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) to work with Qualified Bidders to aggregate two or more Qualified Bids into a single Qualifying Bid prior to the conclusion of the Auction.  No bidders, Acceptable Bidders, or Qualified Bidders may aggregate any Bids without the Debtors' prior consent.

Notwithstanding anything herein to the contrary, the Stalking Horse Agreements submitted by the Stalking Horse Bidder is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder.

**Auction.**

If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Stalking Horse Bidder shall be deemed the Successful Bidder; *provided however*, the Debtors may, in their discretion, open the Auction solely for the purpose of reflecting on the record that no other Qualified Bids were received other than the Stalking Horse Bid.

If the Debtors receive more than one Qualified Bid for the Aggregate Assets (other than the Stalking Horse Bid), the Debtors will conduct the Auction to determine both the Successful Bidder and the Backup Bidder with respect to such Aggregate Assets.  The Auction shall take place on **_____, at __:00 __.m. (prevailing Eastern Time)**, at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE. 19801 (or by video conference to the live proceeding at this location), or such later date and time as selected by the Debtors (following consultation with the Consultation Parties); *provided that* such modification shall be subject to the Sale Milestones (as defined in the DIP Order).

No later than the day before the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, or, if multiple bids are received in respect of non-overlapping Aggregate Assets, the highest or best Qualified Bid(s) received in relation to each group of Aggregate Assets, in each case as determined in the Debtors' business judgment (each such bid, a "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders and the Consultation Parties.  The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Successful Bid(s) shall take into account any factors the Debtors, in consultation of the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, which may include, among other things: (a) the type and amount of Aggregate Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; and (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted pursuant to the following procedures:

    a.    The Debtors Shall Conduct the Auction

The Debtors and the Debtors' Professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s).  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders and the Consultation Parties.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, the Successful Bid(s), and any Backup Bid(s).

Only (i) Qualified Bidders and each of their respective legal and financial advisors, (ii) the Consultation Parties and each of their respective legal and financial advisors, and (iii) the Committee's counsel and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person (live or on video conference) and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

b.  Terms of Overbids

"Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(i)  Minimum Overbid Increment. Any Overbid to the initial Baseline Bid at the start of the Auction shall be in increments of no less than a value equal to $100,000 unless otherwise determined by the Debtors in an exercise of their business judgment; *provided, however*, that to the extent that the Baseline Bid constitutes the Stalking Horse Bid, the bidding for such Aggregate Assets at the first round of bidding will start at an amount equal to the sum of: (i) the value of the Baseline Bid, (ii) the amount of the Expense Reimbursement and the Augment Purchase, and (iii) $250,000.

(ii)  Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii)  Overbid Alterations. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bid Procedures.

(iv)  No Round-Skipping. Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for the Aggregate Assets.

(v)  Announcing Highest Bid. With respect to the Auction, the Debtors shall, subsequent to each Overbid Round Deadline, announce whether the Debtors in consultation with the Consultation Parties have identified (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid in respect of the Aggregate Assets that are the subject of the Auction or (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of

any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

c.       Consideration of Overbids

For the purpose of evaluating the value of the consideration provided by any Bid subsequent to the Baseline Bid, the Debtors will at each round of bidding, give effect to the Expense Reimbursement and the Augment Purchase payable pursuant to the terms of the Stalking Horse Agreements.

The Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal approvals and resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

d.       Closing the Auction

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in their discretion following consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid for the Aggregate Assets.  Such Qualified Bid shall be declared the "Successful Bid," and such Qualified Bidder, the "Successful Bidder," at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of such Successful Bid is conditioned upon approval by the Court of such Successful Bid.  For the avoidance of doubt, nothing in these Bid Procedures shall prevent the Debtors from exercising their fiduciary duties under applicable law.  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Successful Bid, and, as applicable, cause such definitive documentation to be filed with the Court.

e.       No Collusion; Good Faith *Bona Fide* Offer

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code with respect to any bids submitted or not submitted in connection with the sale of any of the Aggregate Assets, and (ii) its Qualified Bid is a good faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

**Backup Bidder.**

a.       Notwithstanding anything in these Bid Procedures to the contrary, if the Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the conclusion of the Auction for the Aggregate Assets or any sub-group thereof, as determined by the Debtors in the exercise of their business

judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") with respect to the Aggregate Assets until the earlier of (i) such time that the Transaction is consummated and (ii) 30 days from entry of the Approval Order, subject to the terms of such Backup Bidder's Transaction Documents.

b.    The Stalking Horse Bidder shall not serve as the Backup Bidder (whether in respect of the Stalking Horse Bid or any Overbid it may submit at the Auction). Each Qualified Bidder (other than the Stalking Horse Bidder) shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors, subject to the terms of such Backup Bidder's Transaction Documents.

c.    The identity of a Backup Bidder and the amount and material terms of the Qualified Bid of such Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder related thereto. Such Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the earlier of (i) the closing of the Approved Transaction (defined below) and (ii) 30 days from entry of the Approval Order. Each Backup Bidder's Deposit shall be held in escrow (which may be held in escrow by Pachulski Stang Ziehl & Jones LLP) until the earlier of (i) three (3) Business Days after the closing of the Approved Transaction or (ii) 30 days from entry of the Approval Order, subject to the terms of such Backup Bidder's Transaction Documents.

d.    If a Successful Bidder fails to consummate the Approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder with respect to the Aggregate Assets or sub-group of the Debtors' assets or business as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

**Notice and Consultation Parties.**

Information that is provided to the "Notice Parties" under these Bid Procedures must be provided to the following parties: (a) counsel to the DIP Agent and Prepetition ABL Agent, (i) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Lucas B. Barrett, Esq. (lbarrett@choate.com), and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@RLF.com), John H. Knight, Esq. (Knight@RLF.com), Matthew P. Milana, Esq. (Milana@RLF.com); (b) counsel to the Prepetition Term Agent (i) Goldberg Kohn, 55 East Monroe Street, Chicago, Ill 60603-5792, Attn: Randall Klein, Esq. (randall.klein@goldbergkohn.com) and Zachary Garrett, Esq.

([zachary.garrett@goldbergkohn.com](mailto:zachary.garrett@goldbergkohn.com)) and (ii) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. ([stanley.tarr@blankrome.com](mailto:stanley.tarr@blankrome.com)); (c) counsel to the Stalking Horse Bidder, (i) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn:  Scott Charles, Esq. ([SKCharles@wlrk.com](mailto:SKCharles@wlrk.com)) and Neil M. Snyder, Esq. ([NMSnyder@wlrk.com](mailto:NMSnyder@wlrk.com)); and (ii) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington DE 19899-1347, Attn:  Derek C. Abbott ([dabbott@morrisnichols.com](mailto:dabbott@morrisnichols.com)); (c) proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"), _____; and (d) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 Attn: Malcolm M. Bates, Esq. (malcolm.m.bates@usdoj.gov).

The term "Consultation Parties" shall mean: (a) the DIP Agent and the Prepetition ABL Agent; and (b) the Committee, *provided* that if any party that either (i) submits a Bid to purchase the Aggregate Assets, or (ii) submits a credit bid for any of the Aggregate Assets, they shall no longer be a Consultation Party so long as such party's Bid remains open.

**"As Is, Where Is."**

Except as otherwise provided in the Stalking Horse Agreements, consummation of any Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors in the Transaction Documents.  Except as specifically accepted or agreed to by the Debtors, all of the Debtors' right, title, and interest in and to the respective Aggregate Assets will be transferred, free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.

By submitting a Bid, each Acceptable Bidder will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct adequate due diligence regarding the Aggregate Assets prior to making its Bid, (b) has relied solely on its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid, and (c) did not rely on or receive from any party any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Aggregate Assets or the completeness of any information provided in connection with the Transaction or the Auction.

**Reservation of Rights.**

The Debtors reserve their rights, subject to prior consultation with the Consultation Parties, to modify these Bid Procedures in their business judgment in any manner that will best promote the goals of these Bid Procedures or impose at or prior to the Auction, additional customary terms and conditions on a Transaction, including, without limitation:  (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid).

**Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bid Procedures.

**Sale Hearing.**

A hearing to consider approval of the sale of the Aggregate Assets (the "Sale Hearing"), pursuant to which the Debtors and the Successful Bidder will consummate the Transaction (the "Approved Transaction"), will be held on _____ **at __:00 p.m. (prevailing Eastern Time)** before The Honorable J. Kate Stickles, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to the Sale Hearing or making an announcement at the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

**Objection Deadline**

Sale Objection Deadline. Objections to (i) the sale of the Aggregate Assets; or (ii) the assumption and assignment of Potential Assigned Agreements (each such objection, a "Sale Objection") must: (i) be in writing; (ii) state, with specificity, the legal and factual bases thereof; (iii) be filed with the Bankruptcy Court by no later than _____ **at __:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"); and (iv) be served on (a) the Debtors, and (b) the Notice Parties.

**Return of Deposits.**

The Deposit of the Successful Bidder shall be applied to the purchase price of the Approved Transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more escrow accounts (which may be held in escrow by Pachulski Stang Ziehl & Jones LLP) on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder as provided above) on the date that is three (3) business days after the Auction, or as soon as is reasonably practicable thereafter. Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that may have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors shall be free to consummate the proposed transaction with the Backup Bidder without the need for an additional hearing or order of the Court. To the extent the Debtors do not consummate the proposed transaction with the Backup Bidder due to the closing of the transaction with the Successful Bidder, the Backup Bidder's deposit shall be refunded within three days of the closing of the Approved Transaction.

**Fiduciary Duties.**

Nothing in these Bid Procedures requires the Debtors to take any action, or to refrain from taking any action, with respect to these Bid Procedures, to the extent that the Debtors determine that taking such action, or refraining from taking such action, is required to comply with applicable law or their fiduciary duties under applicable law.

*          *          *

# **EXHIBIT 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) | Case No. 25-_____ (   ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

### NOTICE OF SALE, BID PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 22, 2025, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into (i) Stalking Horse Asset Purchase Agreement and (ii) Stalking Horse Agency Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving The Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief,* [Docket No. __] (the "Motion"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

Pursuant to the Motion, the Debtors have submitted for approval of that certain *Asset Purchase Agreement*, dated as of November 25, 2025 (the "Stalking Horse APA") by and between the Debtors and ASI Purchaser LLC (and together with any applicable designee, the "Stalking Horse Buyer") and SEI, Inc. as Guarantor, and the accompanying *Agency Agreement*, dated as of November 25, 2025 (the "Stalking Horse Agency Agreement"), by and between the Debtors and ASI Purchaser LLC (and/or its designee(s)) (the "Stalking Horse Agent") and SEI, Inc. as Guarantor.[2] The Debtors' assets subject to the transactions contemplated under the Stalking Horse Agency Agreement, pursuant to which the Stalking Horse Bidder will act as the Debtors' agent for the purposes of liquidating their inventory, furniture, fixtures, and equipment at certain stores and distribution centers plus the assets to be sold to the Stalking Horse Bidder under the Stalking Horse APA, which include, *inter alia*, granting the Stalking Horse Bidder designation rights on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162).  The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] The Stalking Horse Agent and the Stalking Horse Buyer are collectively referred to as the "Stalking Horse Bidder." The Stalking Horse APA and the Stalking Horse Agency Agreement are collectively referred to as the "Stalking Horse Agreements."

substantially all of the Debtors' leases and selling to the Stalking Horse Bidder certain of the Debtors' assets, including the Debtors' owned real estate assets, the Debtors' intellectual property, and certain of the Debtors' claims and causes of action and the other assets identified in the Stalking Horse APA, are collectively referred to as the "Aggregate Assets."

The Debtors agreed to sell substantially all of the Aggregate Assets, including, without limitation, the transactions contemplated under the terms of the Stalking Horse Agency Agreement to the Stalking Horse Bidder free and clear of all liens, claims, encumbrances, and interests, subject to higher or better bids for the Aggregate Assets to be determined at the Auction.

## I.    Parties Interested in Submitting a Bid

The Bid Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase all or certain of the Aggregate Assets must comply with the Bid Procedures.  Only Qualified Bids will be considered by the Debtors, in accordance with the Bid Procedures.

**Any party interested in bidding on the Aggregate Assets should contact, as soon as possible:**

a.    BRG, 225 Franklin Street, Suite 3200, Boston, MA 02110 Attn: Rudy Morando (rmorando@thinkbrg.com), Chris McAvinn (cmcavinn@thinkbrg.com), and Stephen Coulombe (scoulombe@thinkbrg.com);

b.    SSG Capital Advisors, LLC, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attn:  Teresa C. Kohl (tkohl@ssgca.com), Craig D. Warznak (cwarznak@ssgca.com), and J. Scott Victor (jsvictor@ssgca.com); and

c.    Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com).

To receive copies of the (i) Motion, including any exhibits thereto, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the form asset purchase agreement, agency agreement or the Stalking Horse Agreements, as applicable, kindly submit a request by email to: proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, Attention: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com) or, alternatively, you may download such documents at https://cases._____ by emailing the Debtors' claims agent, Verita Global. at _____.com or by telephoning the claims agent toll free at: _____.

## II.    Bid Procedures and Auction

On December __, 2025, the Court entered the *Order (I) Approving Bid Procedures and Bid Protections in Connection with Motion to Approve (A) Stalking Horse Asset Purchase Agreement and (B) Stalking Horse Agency Agreement; (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granted Related Relief,* [Docket No. ___] (the "Bid Procedures Order"), approving, among other things, the Bid Procedures, which

establish the key dates and times related to the sale of the Aggregate Assets and the Auction. All interested bidders should carefully read the Bid Procedures Order and the Bid Procedures in their entirety.

The Bid Procedures Order also approved payment of the Expense Reimbursement and the Augment Purchase potentially payable to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreements and the Bid Procedures Order.

The Bid Procedures Order also establishes the following deadlines for the Aggregate Assets:

1. **Bid Deadline.** The deadline to submit a Qualified Bid for the Aggregate Assets is **_____ at 4:00 p.m. (prevailing Eastern Time)**.

2. **Auction.** In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of the Stalking Horse Bidder and subject to the satisfaction of any further conditions set forth in the Bid Procedures, the Debtors intend to conduct an Auction for the Aggregate Assets. The Auction, if one is held, will commence on **December _____ at __:00 __.m. (prevailing Eastern Time)** the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (or by video conference to the live proceedings at this location). The Debtors shall provide notice of the date, time, and place of the Auction to the Qualified Bidders no later than one (1) day before such Auction, and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on the website of the Debtors' notice and claims agent, Verita Global, at https://_____. The Auction shall be only open to (i) Qualified Bidders and their respective legal and financial advisors; (ii) the Consultation Parties and their respective legal and financial advisors; and (iii) the Committee's legal and financial advisors, as provided the Bid Procedures Order.

3. **Auction Objection and Sale Objection Deadlines**. The deadline to file an objection with the Court to the Approval Order, the Stalking Horse Bidder, or the sale of the Aggregate Assets with the Stalking Horse Bidder (collectively, the "Sale Objections") is **_____, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"). If the Auction is held, the deadline to file an objection with the Court to the conduct of the Auction, the Successful Bidder, or the sale of the Aggregate Assets to the Successful Bidder (collectively, the "Auction Objections") at the Sale Hearing (the "Auction Objection Deadline").

## III. Sale Hearing and Closing

A hearing (the "Sale Hearing") to approve and authorize the sale of the Aggregate Assets to either the Stalking Horse Bidder, or alternatively, to the Successful Bidder will be held before the Court on **_____ at ___:00 __.m. (prevailing Eastern Time)** or such other date as determined by the Court. The Sale Hearing is being held to approve the highest or otherwise best

offer received for the Aggregate Assets, as applicable.  The Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of the Chapter 11 Cases or without prior notice by an announcement of the adjourned date at the Sale Hearing or on the Court's docket.

## IV.    Filing Objections

Sale Objections and Auction Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **the Sale Objection Deadline or Auction Objection Deadline,** as applicable, and (d) be served on (i) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (ii) proposed counsel to the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee"), (a)  [●] and (b) [●]; (iii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Malcolm M. Bates (malcolm.m.bates@usdoj.gov)  (the "U.S. Trustee"); (iv) counsel to the Stalking Horse Bidder (a) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn:  Scott Charles, Esq. (SKCharles@wlrk.com) and Neil M. Snyder, Esq. (NMSnyder@wlrk.com); and (b) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th  Floor, P.O. Box 1347, Wilmington DE 19899-1347, Attn:    Derek C. Abbott (dabbott@morrisnichols.com); (v)  counsel to the DIP Agent and Prepetition ABL Agent, (a) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Lucas B. Barrett, Esq. (lbarrett@choate.com) and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@RLF.com), John H. Knight, Esq. (Knight@RLF.com) and Matthew P. Milana, Esq. (Milana@RLF.com); (vi) counsel to the Prepetition Term Agent, (a) Goldberg Kohn, 55 East Monroe    Street,    Chicago,    Ill    60603-5792,    Attn:    Randall    Klein,    Esq. (randall.klein@goldbergkohn.com)    and    Zachary    Garrett,    Esq. (zachary.garrett@goldbergkohn.com) and (b) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); (vii) proposed counsel to the Conflicts Committee, (i) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018, Attn: Kizzy L. Jarashow, Esq. (kjarashow@goodwinlaw.com) and Stacy Dasaro, Esq. (sdasaro@goodwinlaw.com) and (ii) Potter Anderson & Corroon LLP 1313 North Market Street, 6th    Floor,    Wilmington,    Delaware    19801,    Attn:    L.    Katherine    Good,    Esq. (kgood@potteranderson.com); and (viii) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").  Auction Objections must also be served on counsel for the Successful Bidder.

## V.    Consequences of Failing to Timely Assert an Objection

*Any party who fails to make a timely Sale Objection on or before the Sale Objection Deadline in accordance with the Bid Procedures Order and this Notice (i) shall be forever barred from asserting any Sale Objection, including, without limitation, with respect to the transfer of the Aggregate Assets free and clear of all liens, claims, encumbrances and interests; and (ii) shall be deemed a consent to the sale of the Aggregate Assets to the Stalking Horse Bidder or Successful Bidder, as applicable, and the other relief requested in the Sale Motion.*

*Any party who fails to make a timely Auction Objection on or before the Auction Objection Deadline in accordance with the Bid Procedures Order and this Notice shall be forever barred from asserting any Auction Objection, including, without limitation with respect to the transfer of the Aggregate Assets free and clear of all liens, claims, encumbrances and interests.*

## VI.    No Successor Liability

*The sale of the Aggregate Assets will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the sale of the Aggregate Assets.  Accordingly, as a result of the sale of the Aggregate Assets, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in the Successful Bidder's asset purchase agreement, for any liens, claims, encumbrances and interests against or in any of the Debtors under any theory of law, including, without limitation, successor liability theories.*

Dated:                                          PACHULSKI STANG ZIEHL & JONES LLP

                                                  */s/*
                                                  _____
                                                  Laura Davis Jones (DE Bar No. 2436)
                                                  David M. Bertenthal (CA Bar No. 167624)
                                                  919 North Market Street, 17th Floor
                                                  P.O. Box 8705
                                                  Wilmington, Delaware  19899 (Courier 19801)
                                                  Telephone:  (302) 652-4100
                                                  Facsimile:   (302) 652-4400
                                                  Email: ljones@pszjlaw.com
                                                              dbertenthal@pszjlaw.com

                                                  *Proposed Counsel for the Debtors and Debtors in Possession*

# **EXHIBIT 3**

**Form of Potential Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) Case No. 25- _____ ( ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. __** |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 22, 2025, the above captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into (i) Stalking Horse Asset Purchase Agreement and (ii) Stalking Horse Agency Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving The Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*, Docket No. __ (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

The Debtors have submitted for approval of that certain *Asset Purchase Agreement*, dated as of November___, 2025 (the "Stalking Horse APA") by and between the Debtors and ASI Purchaser LLC (and together with any applicable designee, the "Stalking Horse Buyer") and SEI, Inc. as Guarantor the accompanying *Agency Agreement*, dated as of November ___, 2025 (the "Stalking Horse Agency Agreement"), by and between the Debtors and ASI Purchaser LLC (and/or its designee(s)) (the "Stalking Horse Agent") and SEI, Inc. as Guarantor.[2] The Debtors' assets subject to the transactions contemplated under the Stalking Horse Agency Agreement, pursuant to which the Stalking Horse Bidder will act as the Debtors' agent for the purposes of liquidating their inventory, furniture, fixtures, and equipment at certain stores and distribution

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162).  The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] The Stalking Horse Agent and the Stalking Horse Buyer are collectively referred to as the "Stalking Horse Bidder." The Stalking Horse APA and the Stalking Horse Agency Agreement are collectively referred to as the "Stalking Horse Agreements."

centers <u>plus</u> the assets to be sold to the Stalking Horse Bidder under the Stalking Horse APA, which include, *inter alia*, granting the Stalking Horse Bidder designation rights on substantially all of the Debtors' leases and selling to the Stalking Horse Bidder certain of the Debtors' assets, including the Debtors' owned real estate assets, the Debtors' intellectual property, and certain of the Debtors' claims and causes of action and the other assets identified in the Stalking Horse APA, are collectively referred to as the "<u>Aggregate Assets</u>."

On December __, 2025, the Court entered the *Order (I) Approving Bid Procedures and Bid Protections in Connection with Motion to Approve (A) Stalking Horse Asset Purchase Agreement and (B) Stalking Horse Agency Agreement; (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granted Related Relief,* [Docket No. ___] (the "<u>Bid Procedures Order</u>"), which, among other things, approved the (a) Bid Procedures pursuant to which the Debtors will solicit and select the highest and otherwise best offer for the sale of the Aggregate Assets, (b) the form and manner of notice related to the sale of the Assets, (c) the procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale of the Assets, including, without limitation, notice of proposed cure amounts (the "<u>Assumption and Assignment Procedures</u>"), and (d) scheduled the hearing (the "<u>Sale Hearing</u>")[3] to enter an order approving the sale of the Aggregate Assets to the Stalking Horse Bidder, or such other Successful Bidder (the "<u>Approval Order</u>") for **January __, 2026_ at ___:00 __.m. (prevailing Eastern Time)** pursuant to which the Debtors agreed to sell the Aggregate Assets to the Stalking Horse Bidder free and clear of all liens, claims, encumbrances, and interests, subject to higher or better bids for the Aggregate Assets to be determined at an Auction.

The Motion also provides for the potential assumption and assignment of certain of the Debtors' executory contracts and unexpired leases (each, a "<u>Potential Assigned Agreement</u>" and collectively, the "<u>Potential Assigned Agreements</u>") either to the Stalking Horse Bidder or to such other party that submits the highest and best bid for the Aggregate Assets at an Auction that is accepted by the Debtors and approved by the Bankruptcy Court (the "<u>Successful Bidder</u>").

The Potential Assigned Agreement(s) to which you are a counterparty and which may potentially be assumed and assigned as part of the sale of the Aggregate Assets along with any Cure Amounts, if any, necessary for the assumption and assignment of such Potential Assigned Agreement(s) is attached hereto as <u>Schedule A</u>. ***Each "Cure Amount" listed on Schedule A hereto represents the entire amount payable to cure all defaults pursuant to section 365(b)(1) of the Bankruptcy Code for the for the potential assumption by the Debtors and the assignment to the Successful Bidder of such Potential Assigned Agreement(s) pursuant to section 365 of the Bankruptcy Code***. For any Potential Assigned Agreement listed on Schedule A hereto, the Successful Bidder may decide to (i) assume and assign the Potential Assigned Agreement, (ii) reject the Potential Assigned Agreement, or (iii) designate the Potential Assigned Agreement (to

---

[3] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Bid Procedures and Bid Procedures Order, as applicable.

the extent permitted)[4] for a limited period of time until the Successful Bidder determines whether such Potential Assigned Agreement should be (a) assumed and assigned or (b) rejected.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSIGNED AGREEMENT THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE OF THE AGGREGATE ASSETS**. Under the terms of the Assumption and Assignment Procedures, unless otherwise provided in the Successful Bidder's asset purchase agreement, at any time prior to the date of Closing of the sale of the Aggregate Assets, the Debtors may (a) remove a Potential Assigned Agreement for assumption and assignment, or (b) modify the previously stated Cure Amount associated with any Potential Assigned Agreement. The Successful Bidder (which may be the Stalking Horse Bidder) may also select additional Potential Assigned Agreements for assumption and assignment. ***The presence of a Potential Assigned Agreement listed on <u>Schedule A</u> attached hereto does not constitute an admission that such Potential Assigned Agreement is an executory contract or unexpired lease or that such Potential Assigned Agreement will be assumed and assigned as part of the sale of the Aggregate Assets. The Debtors reserve all of their rights, claims and causes of action with respect to the Potential Assigned Agreements listed on <u>Schedule A</u> attached hereto.***

IF YOU AGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **<u>SCHEDULE A</u>** WITH RESPECT TO YOUR POTENTIAL ASSIGNED AGREEMENT(S) AND OTHERWISE DO NOT OBJECT TO THE ASSUMPTION AND ASSIGNMENT OF YOUR POTENTIAL ASSIGNED AGREEMENT, YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION WITH RESPECT TO THE CURE AMOUNT.

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of a Potential Assigned Agreement (an "<u>Assumption and Assignment Objection</u>"), including, without limitation, any objection relating to the Cure Amount or adequate assurance of the Stalking Horse Bidder's future ability to perform, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount that the Counterparty believes is required to cure defaults under the relevant Potential Assigned

---

[4] The Stalking Horse APA grants the Stalking Horse Bidder with certain designation rights (the "<u>Designation Rights</u>") pursuant to which the Stalking Horse Bidder may request assumption by the applicable Debtor(s) and assignment to the Stalking Horse Bidder's designee of the Debtors' Leases and Potential Assigned Agreements Primarily Related to such Lease (as these terms are defined in the Stalking Horse APA). To the extent that any Potential Assigned Agreement(s) for the Debtors' Leases and Potential Assigned Agreements Primarily Related to such Leases are designated by for assumption and assignment to an assignee designated by the Stalking Horse Bidder (or Successful Bidder), the Debtors will provide separate notice to the holders of Potential Assigned Agreements of any such designation of the Leases and Potential Assigned Agreements Primarily Related to such Leases to be assumed and assigned, the identity of the proposed assignee, and information concerning the proposed assignee's ability to provide adequate assurance of future performance under section 365(b)(1)(3) of the Bankruptcy Code. The Lease Assignment Notice will provide that the counterparty to the Lease will have seven (7) Business Days to file an objection to the proposed assumption and assignment of the Lease and any Potential Related Agreements Relating to such Leases.

Section 3.6 of the Stalking Horse APA also permits the Stalking Horse Bidder to add certain Contracts to the Assigned Agreements for assumption and assignment (including to its delegee) following the Closing until the Designation Deadline.

Agreement, (d) be filed by no later than **4:00 p.m. (prevailing Eastern Time) on [●]**, 2026 and (e) be served on (i) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and David M. Bertenthal, Esq. (dbertenthal@pszjlaw.com); (ii) proposed counsel to the Committee; (a) [●] , and (b) [●]; (iii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Malcolm M. Bates, Esq. (malcolm.m.bates@usdoj.gov) (the "U.S. Trustee"); (iv) counsel to the DIP Agent and Prepetition ABL Agent, (a) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq. (jventola@choate.com), Jonathan D. Marshall, Esq. (jmarshall@choate.com), and Lucas B. Barrett, Esq. (lbarrett@choate.com) and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@RLF.com), John H. Knight, Esq. (Knight@RLF.com) and Matthew P. Milana, Esq. (Milana@RLF.com); (v) counsel to the Stalking Horse Bidder (a) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn: Scott Charles, Esq. (SKCharles@wlrk.com) and Neil M. Snyder, Esq. (NMSnyder@wlrk.com); and (b) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington DE 19899-1347, Attn: Derek C. Abbott (dabbott@morrisnichols.com); (vi) counsel to the Prepetition Term Agent, (a) Goldberg Kohn, 55 East Monroe Street, Chicago, Ill 60603-5792, Attn: Randall Klein, Esq. (randall.klein@goldbergkohn.com) and Zachary Garrett, Esq. (zachary.garrett@goldbergkohn.com) and (b) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com); and (vii) proposed counsel to the Conflicts Committee, (i) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018, Attn: Kizzy L. Jarashow, Esq. (kjarashow@goodwinlaw.com) and Stacy Dasaro, Esq. (sdasaro@goodwinlaw.com) and (ii) Potter Anderson & Corroon LLP 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801, Attn: L. Katherine Good, Esq. (kgood@potteranderson.com) (collectively, the "Assumption and Assignment Objection Notice Parties"). In the event that any previously stated Cure Amount are modified, the Debtors will promptly serve a Supplemental Assumption and Assignment Notice, by overnight mail and, if known, e-mail, on the applicable Counterparty.

If, following the Auction, the Stalking Horse Bidder is not the Successful Bidder, then the Debtors will (a) file the Notice of Auction Results, which will, among other things, include the identity of the Successful Bidder, (b) post such notice on the Case Management Website, and (c) serve such notice on each Counterparty to a Potential Assigned Agreement. Each such Counterparty will then have an opportunity to object *solely with respect* to such Successful Bidder's ability to provide adequate assurance of future performance with respect to the Counterparty's Potential Assigned Agreement (a "Post-Auction Objection"). Any Post-Auction Objection may be raised at the Sale Hearing; *provided*, *however*, that any objection to either (i) the ability of the Stalking Horse Bidder to provide adequate assurance of future performance with respect to any Potential Assigned Agreement or (ii) to any Cure Amounts (including, without limitation, Cure Amounts (i) with respect to any Leases and Potential Assigned Agreement Primarily Related to such Leases that may be later designated by the Stalking Horse Bidder or Successful Bidder for assumption and assignment to its designee and (ii) for any executory contracts that are added to the list of Assigned Agreements for assumption and assignment following the closing of the sale of the Aggregate Assets in accordance with section 3.6 of the Stalking Horse APA), that must be cured by either the Stalking Horse Bidder or any Successful

Bidder that is not the Stalking Horse Bidder with respect to the Potential Assigned Agreement, must be filed by **4:00 p.m. (prevailing Eastern Time)** on **[●], 2026**.

The Court will hear and determine any Assumption and Assignment Objections and Post-Auction Objections at the Sale Hearing or such other date that the Debtors and the Successful Bidder shall determine (subject to the Court's calendar).

Any Assumption and Assignment Objection shall not constitute an objection to any of the other relief requested in the Sale Motion to be approved by the Approval Order (*e.g.*, the sale of the Aggregate Assets by the Debtors to the Stalking Horse Bidder or Successful Bidder(s), as applicable, free and clear of all liens, claims, encumbrances, and interest). Parties wishing to object to the other relief requested in the Motion (excluding the relief provided in the Bid Procedures Order) must timely file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bid Procedures Order.

### <u>CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION</u>

*UNLESS YOU FILE AN OBJECTION TO THE CURE AMOUNT AND/OR THE ASSUMPTION OR ASSIGNMENT OF YOUR POTENTIAL ASSIGNED AGREEMENT IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE (A) BARRED FROM OBJECTING TO THE CURE AMOUNT SET FORTH ON <u>SCHEDULE A</u>, (B) ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT AGAINST THE DEBTORS, THE STALKING HORSE BIDDER OR SUCH OTHER SUCCESSFUL BIDDER THAT IS GREATER THAN THE CURE AMOUNT SET FORTH ON <u>SCHEDULE A</u>, AND (C) DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND/OR ASSIGNMENT OF YOUR POTENTIAL ASSIGNED AGREEMENT.*

Dated:                                PACHULSKI STANG ZIEHL & JONES LLP

                                      /s/
                                      Laura Davis Jones (DE Bar No. 2436)
                                      David M. Bertenthal (CA Bar No. 167624)
                                      919 North Market Street, 17th Floor
                                      P.O. Box 8705
                                      Wilmington, Delaware  19899 (Courier 19801)
                                      Telephone:  (302) 652-4100
                                      Facsimile:   (302) 652-4400
                                      Email:  ljones@pszjlaw.com
                                              dbertenthal@pszjlaw.com


                                      *Proposed Counsel for the Debtors and Debtors in
                                      Possession*

# SCHEDULE A

Potential Assigned Agreements

| No. | Contract/Lease Party | Contract Counterparty | Contract/Lease Title | Date of Entry | Cure Amount |
|-----|---------------------|----------------------|---------------------|---------------|-------------|
| 1. | [X] | [X] | [X] | [X] | $[X] |