# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>AMERICAN SIGNATURE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-12105 (JKS)<br><br>(Jointly Administered) |

**DECLARATION OF SB360 CAPITAL PARTNERS, LLC IN SUPPORT
OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE DEBTORS TO (A) ASSUME THE CONSULTING AGREEMENT,
(B) CONDUCT STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND
CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND
<u>(C) GRANTING RELATED RELIEF</u>**

Robert A. Raskin, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury as follows:

1. I am over the age of twenty-one (21) years and am competent to make this Declaration.

2. I am Executive Managing Director and General Counsel of SB360 Capital Partners, LLC ("SB360"), with principal places of business located at 75 Second Avenue, Suite 570, Needham MA 02494. I have been employed by SB360 and its predecessor entities since 2002. Prior to that I was a partner at the law firm Stroock & Stroock & Lavan LLP.

3. I submit this declaration (the "Declaration") in support of the motion of American Signature, Inc. ("ASI") and its affiliated debtors and debtors-in-possession the above captioned chapter 11 cases (collectively, the "Debtors") for entry of Interim and Final Orders Authorizing the Debtors to (A) Assume The Consulting Agreement, (B) Conduct Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (iii) granting related relief [Docket No.0018] (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

"Motion") and in accordance with the Interim Order Granting in Part and Continuing in Part Debtors' Motion to (A) Assume the Consulting Agreement, (B) Conduct Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (C) Scheduling a Hearing, and (D) Granting Related Relief [Docket No.0104] (the "Interim Order").

4. The facts set forth in this Declaration are based upon my personal knowledge, information, and belief, and upon records kept in the ordinary course of business that were reviewed by me or other employees of SB360, under my supervision and direction. If called as a witness, I would testify to the facts set forth in this Declaration.

**Evolution of SB360's Business Relationship with the Debtors**

5. SB360 was formed in 2018 as a merger of 360 Merchant Solutions, LLC and SB Capital Group, LLC. In 2024, the ownership of SB360 changed and the Schottenstein's became 60% owners of SB360 and entities controlled by the Miller family became 40% owners. Although SB360 and the Debtors share some common ownership, it is my understanding that different Schottenstein family interests own SB360 than own ASI and the other Debtors. SB360 operates as an independent standalone business with its own management team and board distinct from those at ASI.

6. ASI and SB360 Holdings, LLC ("Holdings"), the parent of SB360, also have separate managers and boards. Aaron Miller, Stephen Miller, Joseph Schottenstein and Brian Strayton are the Managers of Holdings. The American Signature, Inc. petition lists Eric Jackson, Jeffry Swanson, Tod Friedman, Adam Zalev as members of the Board of Directors of ASI.

7. Although separate entities, SB360 and ASI have built a strong business relationship. For example, in September 2018, in the chapter 11 case of Heritage Home Group, LLC ("HHG") that was pending in this Court (Chapter 11 Case No. 18-11736 before the Honorable Kevin Gross (the "HHG Case"), SB360 was retained by the Chief Restructuring Officer as consultant to liquidate certain assets of the applicable debtors. As part of that engagement, SB360 negotiated the wholesale sale of certain

2

furniture inventory to ASI[2]. Following the HHG experience, ASI in 2020, with the assistance of SB360, negotiated a unique consignment arrangement with the Trustee overseeing the Chapter 7 Art Van Furniture, LLC ("Art Van"), that was also pending in this Court before the Honorable Christopher S. Sontchi (Case No 20-10553) (the "Art Van Case") whereby ASI entered into an agreement, negotiated in part by SB360, with the debtors in the Art Van Case, pursuant to which ASI sold the Art Van debtor's inventory in the ASI stores on a consignment basis, saving the estate significant operating costs. In February 2025, with the assistance of SB360, ASI entered into a private transaction to purchase, on a wholesale basis, quality furniture inventory, at a discount. Each of these acquisitions were negotiated by ASI's independent management team with the aid of SB360 and facilitated ASI's ability to inventory their stores with quality merchandise at very favorable cost. Other examples of SB360 providing support for ASI's business are listed in paragraph 19 below.

8. The cooperative and supportive business relationship that SB360 and ASI have developed is consistent with the business relationship that SB360 strives to have with all of its clients. In mid-2025, Eric Jackson, the Chief Financial Officer of the Debtors reached out to SB360 to initially request that SB360 provide assistance in modeling various store closing scenarios for 5 to 7 retail store locations in markets that the Debtors were considering exiting, with such models using various sale timelines and certain assumptions of selling through excess aged inventory that the Debtors had on hand. Ultimately, in September 2025, when ASI's management made the decision to close five (5) underperforming locations, they requested SB360 submit a proposal to serve as their consultant in connection with those locations.[3] As has become our practice, the agreement allowed for stores to be

---

[2] The retention in that case was objected to by the US trustee as SB360 was not being retained as a professional and resulted in a decision by Judge Gross approving the retention. See In re: Heritages Home Group, 2018 WL 468802. SB360 was also part of a biding group that purchased the Intellectual Property from the Debtors.

[3] In 2024, the Debtors entered into an asset based loan facility with SB360's affiliate, SACP (the "SACP Loan"). Included among the standard provisions in the underlying loan documents (the "SACP Loan Documents"), as has become industry standard, is a provision that provides that if the Debtors, as borrowers, sought to close more than 5 stores at a time, the borrowers agreed to retain the services of SB360 as consultant in connection therewith.

added or removed from the sale at the direction of the clients.  I negotiated the legal terms of the Consulting Agreement with the General Counsel of ASI.

9. Shortly after the sale commenced at the original 5 closing locations, the Debtors engaged the services of Berkeley Research Group, LLC ("BRG").  BRG analyzed the Debtors' retail store operations, which led to the designation of significantly more stores for closure.  As part of its role as Consultant, SB360 worked with BRG to run various models around differing store closing scenarios.

10. Following BRG's review, an additional 28 retail store locations were earmarked for closure by the Debtors, and on November 5, 2025, the Debtors, with the guidance and leadership of BRG, negotiated and entered into the First Amendment to the Consulting Agreement (the "First Amendment" and, together with the Original Consulting Agreement, the "Consulting Agreement").  Pursuant to the First Amendment, (i) the Debtors and SB360 agreed to close the additional 28 stores pursuant to the Consulting Agreement, (ii) a deposit to cover expenses was added as is the normal course, (iii) a provision where SB360 would help fulfill orders that were the subject of deposits from the Debtors' customers was added, and (iv) based upon changed circumstances regarding the provision of Additional Merchandise, a fee to the Debtors of seven percent (7%) of the gross sale proceeds (net of sales taxes) from the sale of the Additional Merchandise was added in lieu of a sharing of net profits.

**Issues Raised at November 25th Hearing**

11. At the hearing before Your Honor on November 25, 2025 (the "November 25th Hearing"), counsel for the Office of the United States Trustee (the "U.S. Trustee") raised what I understand to be the following objections regarding the Consulting Agreement: (i) that the Consulting Agreement should not be assumed on an interim basis, (ii)  that the Consulting Agreement should not be assumed on an interim or final basis because of SB360's affiliation with the Debtors and SACP; and (iii) that the Consulting Agreement should not be assumed on an interim or final basis because, given SB360's affiliation with the Debtors, the fee being charged by SB360 for the services it was providing to the Debtors under the under the Consulting Agreement was inappropriate.  The first concern was addressed by your honor's ruling in the Interim Order.

4

**Bankruptcy Courts' Approval of Consulting Agreements with Affiliates**

12. The second objection raised by the U.S. Trustee was that the Court should not approve the Debtors' assumption of the Consulting Agreement on an interim or final basis because of SB360's affiliation with the Debtors and other parties involved in, or connected to, these cases. In recent years it has become more and more common for debtors and secured lenders to put in place a consultant who they trust and believe will deliver the best outcome from the liquidation sale. This case is no different. SB360 negotiated the Consulting Agreement and is operating the sale no differently than it would in any other circumstances regardless of its affiliation with the Debtors and/or SACP and it has performed at the same high level as it does for all of its clients. The daily sales results from the sale at the 33 stores that are the subject of the Consulting Agreement, which I have reviewed, show that the sales are approximately $2.2 million (or approximately 18%) ahead of projections. The Court's decision at the November 25th Hearing and entry of the Interim Order allowed SB360 to remain in place on an interim basis so that the sale at the subject stores could take advantage of the marketing and sales strategy that was being implemented for the Thanksgiving/Black Friday holiday shopping and was a contributing factor to these successful results. Leaving SB360 in place through the end of the sale at these locations will enable the Debtors to leverage SB360's existing marketing and sales strategy with the goal of continuing on this successful trajectory.

**Fees Charged Under the Consulting Agreement Are Reasonable and Market**

13. The third objection raised by the U.S. Trustee was the assertion that the Court should not approve the Consulting Agreement on an interim or final basis because SB360 receipt of a fee under the Consulting Agreement was somehow something improper.

14. As set forth above, forty percent (40%) of the ownership of SB360, to whom SB360's management team (which is independent of the Debtors) are accountable, is unrelated to the Debtors and the Schottenstein family. Working for free is not in line with SB360's business model (nor is it common in this, or typically any, industry). Being the best at what you do and providing fair pricing and great

results is very much in line with SB360's business model, and that, as set forth above, is what we have done in these cases. As with any retention of SB360, SB360's motivation and obligation is to maximize the value of the client's assets - its affiliation with the Debtors does not affect that goal.

15. To supplement the testimony at the November 25th Hearing regarding the reasonableness of the fees being charged by SB360 under the Consulting Agreement, attached hereto as Exhibit A is a listing of various other furniture-specific court-approved liquidation retentions. As indicated therein, 2% is well within the customary range. As supported by the testimony at the November 25th Hearing, the fees being charged by SB360 in these cases falls squarely in line with the fees and expenses being charged in other cases. This fact, coupled with SB360's extensive experience in the furniture industry support a finding that the fees being charged are reasonable and market rates.

16. The Original Consulting Agreement was negotiated at arm's length between the Debtors and SB360, and subsequently, the First Amendment was negotiated, at arm's length, by BRG on behalf of the Debtors. My recollection is that a short time after the First Amendment was executed, Adam Zalev was appointed as an independent director on the Debtors' Board of Directors, and I learned that Mr. Zalev was going to review the Consulting Agreement (both the Original Consulting Agreement and the First Amendment) for purposes of determining whether or not he would recommend that the Debtors file the Motion seeking to assume the Consulting Agreement and continue with the already ongoing store closing sales. Ultimately, SB360 was advised that the Debtors had received the necessary approvals to proceed with the filing of the Motion (to assume the Consulting Agreement) as planned. The facts support that any concerns relating to the Debtors' retention of SB360 were addressed by this process.

**SB360's Connection to Other Parties in Interest In These Cases**

17. As a part of a large and diverse business operation, SB360 and its affiliates and shareholders have previously, currently, and may in the future appear or participate (as client, agent, consultant, appraiser, professional, advisor, investor, principal, lender or otherwise) in numerous cases, proceedings, transactions and engagements, with, among other market participants, professionals, advisors, banks and other lenders, landlords, restructuring firms, liquidation firms, vendors, insurance

carriers and brokers, operating companies, and equity and/or debt holders, each of whom may be involved in these proceedings, may represent SB360 and/or its affiliates and shareholders or other parties-in-interest in this case, and/or may be parties-in-interest in this case including, but not limited to the Debtor's professionals, A&G Realty Partners, LLC, Berkeley Research Group, LLC, C Street Advisory Group, LLC, Pachulski Stang Ziehl & Jones LLP, Reflect Advisors, LLC, and SSG Advisors, LLC ("Ordinary Course Interactions").

18. Except as disclosed herein, none of the Ordinary Course Interactions are matters directly connected or relating to the Debtors or these chapter 11 cases, nor does SB360 believe that any of the Ordinary Course Interactions will interfere with or impair SB360's activities, actions, responsibilities or objectives in this case.

19. SB360 is not being retained pursuant to section 327 of the Bankruptcy Code and applicable case law in Delaware and other jurisdictions provides that the disinterestedness standard does not apply.[4]  Nonetheless, as has been established by customary practice and as provided for in the Interim Order, SB360 obtained a list of the Debtors, their creditors, and other parties in interest in the above-captioned cases (a copy of which is annexed hereto as Schedule 1, the "Schedule of Parties in Interest") from the Debtors for purposes determining the connection(s), that SB360 or its affiliates has with such entities.  Without limiting the generality of the foregoing disclosure regarding the Ordinary Course Interactions, and by way of example only for purposes of erring on the side of adequate disclosure, SB360 discloses the following:

   a. The Debtors are, indirectly, wholly-owned by the Schottenstein family, including through various trusts.  SB360 is wholly-owned by Holdings.  Sixty-percent of Holdings is owned by the Schottenstein family and the balance is owned by non-Schottenstein family interests.

---

[4] SB360 and the other national liquidation firms have litigated the issue of whether these firms being retained as consultants are "professionals" requiring retention under section 327 of the Bankruptcy Code, in many cases, in several bankruptcy courts with the Office of the United States Trustee, and in each instance the respective Courts have ruled that they are not.  While stating that they were not arguing the section 327 issues at the hearing on November 25, 2025, the U.S. Trustee reserved the right to assert all objections prior to the final hearing. To the extent that the section 327 retention argument is raised, SB360 fully reserves its rights to respond to any if the arguments raised.

b. Jay Schottenstein is Chairman and CEO of SB360 and was the Chairmen of the Board of Directors of the Debtors prior to the filing of the bankruptcy petition..

c. Upon information and belief, Schottenstein Realty LLC and its subsidiaries and affiliates, owned by the Schottenstein family, are the landlords for thirty-two' of the Debtors' retail store locations.

d. SB360 is also affiliated with other transaction counterparties parties in these chapter 11 cases.  Specifically, Second Avenue Capital Partners LLC ("SACP"), the Debtors' debtor-in-possession agent and lender and the administrative agent, collateral agent and lender under the Debtors' prepetition ABL facility, is also owned by Holdings.

e. SACP SPV, LLC ("SACP SPV") is a special purpose vehicle that has a silent economic participation in loans made by SACP. Eric Jackson (CFO of the Debtors) and Jeffry Swanson (a member of the Board of Directors of the Debtors) and I, among others, are members of SACP SPV. The aforementioned loan participations in SACP loans are no more than 7.5% per loan and no one person holds an interest in SACP SPV greater than 10%.  All lending and operational decisions regarding SACP loans are made by SACP.

f. The Debtors have entered into agreements, subject to higher and better bids, with ASI Purchaser LLC, an affiliate of the Debtors (the "Stalking Horse Bidder"), which (a) grant the Stalking Horse Bidder designation rights on substantially all of the Debtors' leases and sell to the Stalking Horse Bidder, inter alia, certain of the Debtors' assets, and (b) grant the Stalking Horse Bidder the right to act as the Debtors' agent for purposes of liquidating their inventory, furniture, fixtures and equipment at certain locations; the Stalking Horse Bidder has indicated its intention to delegate the right described in clause (b) to SB360.

g. Brian Strayton, listed under the "Current D&O" category, is a member of the Advisory Board for SB360's and SACP's investment committees and is a member of SACP SPV.

h. Joseph Schottenstein, listed under the "Current D&O" category is the Chief Strategy Officer at SB360.[5] He resigned from his position prior to filing of the bankruptcy petition.

i. Steven D. Rabe is listed under the "Current D&O" category.  Mr. Rabe's son, Jordan Rabe works for SB360 in a non-managerial role, as a financial analyst.

j. SB360 holds a minority membership interest in a limited liability company that owns a minority stake in A&G Realty Partners, LLC, which appears on the list of professionals.

---

[5] Upon information and belief, Joseph Schottenstein holds many roles within the broader Schottenstein organization, including Chief Operating Officer and Executive Vice President of Acquisitions and Leasing at Schottenstein Property Group (SPG) and Schottenstein Realty LLC, as well as Executive Vice President of Schottenstein Stores Corporation and a member of its board of directors.

k.  Tower Hill Advisory Services, LLC, is owned by Holdings.  Tower Hill Advisory Services LLC was retained in 2024 by SACP to appraise the inventory of the Debtors and provided collateral monitoring services to SACP.

l.  In June of 2025, SB360 and the Debtors entered into a consignment agreement pursuant to which SB360 purchased certain inventory to be sold in the Debtors' stores on a consignment basis which expired in accordance with its terms in August of 2025. SB360 has also purchased and sold other inventory to the Debtors in 2025.

m.  The Debtors entered into Exclusive Supplier Managed USA Onshore Inventory and Sales Agreement, dated November 1, 2025 (the "Man Wah Agreement"), by and among American Signature, Inc., and Man Wah (Hong Kong) Trading Company Limited ("Man Wah"). In the event of a material breach by the Debtors under the Man Wah Agreement, SB360 agreed to purchase from Man Wah inventory on hand ordered by the Debtors under the Man Wah Agreement at a pre-agreed discount. Upon information and belief, there are no confirmed purchase orders pursuant to the Mah Wah Agreement.  The Debtors have filed a motion to reject the Man Wah Agreement. [Docket No. 17].

n.  For a brief period following SB360's formation, but prior to January 2022, a small number of parties (under 10) who worked at SB360 and its predecessor entity, SB Capital Group, LLC were on the payroll of ASI.  The practice had started prior to the formation of SB Capital Group, LLC,  when certain of these employees worked exclusively for the Schottenstein organization.  ASI was reimbursed by SB Capital and subsequently SB360 for their allocable share of all amounts paid under this practice.

o.  Through its affiliations with the Schottenstein family businesses, SB360 and its affiliates, received certain volume cost savings in connection with various business and employee insurance covering a larger group of the affiliated entities.  All insurance costs attributable to SB360 were paid for by SB360, either directly to the insurance carrier or as a reimbursement to the Schottenstein family business.

p.  SB360 and its predecessor entities may from time to time engage in its business on a joint venture basis with other nationally recognized retail disposition consulting firms and their affiliates, including (i) Hilco Merchant Resource; (ii) Gordon Brothers Retail Partners, (iii) Tiger Capital Group, LLC, and (iv) GA Group LLC in matters unrelated to the Debtors.

q.  Wells Fargo is listed under the "Sureties & Letters of Credit" category. SB360 and affiliates have a line of credit with Well Fargo Bank, National Association.  In addition, SB360 has performed services for Wells Fargo Equipment Finance in matters unrelated to the Debtors and these cases.

r.  The Huntington National Bank ("HNB") is listed under the "Banks" and "Utilities" categories.  HNB is Administrative Agent of a loan to SB360's financing affiliate, Second Avenue Capital Partners LLC ("SACP Loan").

s.  The CIT Group is listed under the "Sureties & Letters of Credit" category. Affiliates of SB360 have participated in transactions with CIT Northbridge unrelated to these

        cases.  In addition, CIT's affiliate First-Citizens is a participant in certain lines of credit issued by SACP Loan.

    t.    SB360 and its affiliates perform appraisals for national banks including PNC National Bank, which is listed under the "Banks" and "Lenders & Secured Creditors" categories.  Marc S. Price is Executive Vice President of Corporate Development for SB360 Capital Partners. Before joining SB360, Mr. Price was head of the retail finance unit for PNC Business Credit.  Upon information and belief, parties with an ownership interest in SB360 have ownership in other entities which have banking relationships with PNC.

20.    Neither I, SB360, nor any principal, partner, director, officer, or employee thereof, nor any professional retained by SB360 has agreed to share or will share any portion of the compensation to be received from the Debtors by SB360 in connection with the Consulting Agreement with any other person or entity.

21.    SB360 submits that it does not have an adverse interest to the Debtors in connection with the services being provided under the Consulting Agreement, and that none of the foregoing identified connections would disqualify SB360 from providing the services under the Consulting Agreement and serving as the Debtors' consultant.

22.    The disclosures identified above are based upon my knowledge and belief after reasonable inquiry. SB360 will continue to review its relationships and to the extent necessary, this Declaration will be supplemented as appropriate.

I hereby certify, under penalty of perjury, that the foregoing factual statements made by me are true to the best of my knowledge, information and belief.

Dated: December 3, 2025

_____
Robert A. Raskin