**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| AMERICAN SIGNATURE, INC., et al.,[1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 18, 104, 116, 170** |

**SB360 CAPITAL PARTNERS, LLC'S RESPONSE IN SUPPORT OF
THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE DEBTORS TO (A) ASSUME THE CONSULTING
AGREEMENT, (B) CONDUCT STORE CLOSING SALES, WITH SUCH
SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND
ENCUMBRANCES, AND (C) GRANTING RELATED RELIEF, AND REPLY
TO UNITED STATES TRUSTEE'S OBJECTION THERETO**

SB360 CAPITAL PARTNERS, LLC ("SB360" or "Consultant") files this response (this

"Response") (a) in support of the motion of American Signature, Inc. ("ASI") and its affiliated

debtors and debtors-in-possession the above captioned chapter 11 cases (collectively, the

"Debtors") for entry of *Interim and Final Orders Authorizing the Debtors to (A) Assume The*

*Consulting Agreement, (B) Conduct Store Closing Sales, With Such Sales to be Free and Clear of*

*All Liens, Claims, and Encumbrances, and (C) Granting Related Relief* [Docket No.18] (the

"Motion");[2] and (b) in reply to the objection of the United States Trustee for Regions Three and

Nine (the "U.S. Trustee") to the relief requested in the Motion [Docket No. 170] (the "Objection"),

and respectfully states and represents as follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the Motion.

## PRELIMINARY STATEMENT

Pursuant to the Motion, the Debtors seek approval - on a final basis - to continue their conduct of store closing sales (the "Store Closing Sales") at the thirty-three (33) of the Debtors' retail store locations that had been commenced prior to the Petition Date (the "On-Going Closing Stores"), together with any additional retail store locations designated by the Debtors (the "Additional Closing Locations", and together with the On-Going Closing Stores, the "Closing Stores"), pursuant to (i) that certain *Consulting Agreement* dated as of September 19, 2025, attached to the Motion as [Exhibit 1 to the Interim Order] (the "Original Agreement"), made by and between ASI and SB360 ;and (ii) that certain *Amendment No. 1 to Consulting Agreement* dated as of November 5, 2025 by and between ASI and the Consultant, (the "First Amendment"[3] and, together with the Original Agreement, as same may be amended from time to time, the "Consulting Agreement").

The Objection, which raises challenges that have been universally rejected by the judges of this district and across the circuit, should similarly be overruled here.  The applicable case law, coupled with the evidence and testimony submitted and to be adduced at the hearing on the Motion, supports a finding that (i)  SB360 is not professional requiring a retention of section 327 of the Bankruptcy Code; the Debtors' assumption of the Consulting Agreement does not require a retention of the Consultant as a professional under section 327 of the Bankruptcy Code; (ii) the relief requested in the Motion is a proper exercise of the Debtors' business judgment; (iii) the Debtors have satisfied the business judgment standard and the standard of Entire Fairness does not apply; and (iv) even if the standard of Entire Fairness does apply, the Debtors have met their burden

---

[3]  The U.S. Trustee noted that the version of the First Amendment attached to the Motion was unsigned, which SB360 submits was an understandable clerical error that can happen in the frenzy of preparing cases of this size for Chapter 11.  Just so that the record is complete, attached as **Exhibit A** is a copy of the fully executed First Amendment.

and the Consulting Agreement and the relief requested in the Motion have satisfied such standard.[4]

**Consultant is Not a Professional to be Retained Pursuant to Section 327**

1.      In the Objection, U.S. Trustee asserts that the Court should deny final approval of the Motion because SB360 is an estate professional subject to the disinterestedness requirements of section 327(a) of the Bankruptcy Code, which it claims SB360 does not and cannot satisfy.  In support of its argument, the U.S. Trustee merely asserts that, Courts in this district have applied a six-factor test articulated in *In re First Merchants Acceptance Corp.*, 1997 Bankr. LEXIS 2245, 1997 WL 873551 at *3 (D. Del. Dec. 15, 1997) to determine whether an entity is an "other professional person" within the meaning of section 327(a).

2.      Nowhere in the thirty-four (34) page Objection, does the U.S. Trustee acknowledge, let alone discuss, the prevailing jurisprudence in Delaware (which is a product of extensive, briefing, testimony and argument before many courts in this District, and in which the U.S. Trustee was an active litigant) that a store closing consultant is not a "professional" and does not have be retained under section 327 of the Bankruptcy Code.  SB360 submits that such failure was not a mere oversight, but rather an effort to, yet again, have the Court impose a standard that the U.S. Trustee knows full well has been repeatedly rejected by many Courts in Delaware and across the county.[5]

3.      In 2018, two separate judges in this Court, specifically, Judge Brendan L. Shannon in *In re Brookstone Holdings Corp.*, 592 B.R. 27 (Bankr. D. Del. 2018) (the "Brookstone Decision") and Judge Kevin Gross *In re Heritage Home Group, LLC, et al.,* 2018 WL 44684802 (Bankr. D. Del. 2028) (the "HHG Decision") after hearing extensive briefing, evidence and oral

---

[4]   It is SB360's understanding that the Debtors will be addressing, among other things,  the Entire Fairness standard in a response to the US Trustee's objection to be filed by the Debtors.

[5]   Although the Objection does make a passing reference to "Brookstone", there is no citation or context provided.

argument, both found that the mandate of a store closing consultant is "not sufficiently central to the development and implementation" of the debtor's reorganization to support a finding that a store closing consultant is a professional within the meaning of section 327(a). *Brookstone Decision,* 592 B.R. at 29.  See also, the *HHG Decision,* where Judge Gross reached a similar result holding that SB360, the consultant in that case as well, was not a "professional person" under § 327(a).

4.      Both Judges Shannon and Gross analyzed the First Merchants factors, in the context of whether a store closing consultants (such as SB360 in these cases) as follows: (a) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization; (b) whether the employee is involved in negotiating the terms of a plan of reorganization; (c) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (d) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate (i.e., the qualitative approach); (e) the extent of the employee's involvement in the administration of the debtor's estate (i.e., the quantitative approach); and (f) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term. *Brookstone Decision*, 592 B.R. at 35 and *HHG Decision* at ¶16.  Both Judges found, in separate written opinions, that a store closing consultant is not a professional to be retained under Section 327 of the Bankruptcy Code.

5.      In the numerous retail bankruptcy cases that have been filed in this District since the Brookstone Decision and the HHG Decision, these decisions have not been challenged, and on occasion, have been affirmatively endorsed by the Courts. See, e.g., *In re Big Lots, Inc.,* No.

24-11967 (JKS) (Bankr. D. Del. Oct. 21, 2024) (approving the assumption of a store closing agreement, over the U.S. Trustee's objection, and based upon the facts before it, concluding that the store closing consultant was not a 327(a) professional); See also, *In re SL Beverage, LLC (f/k/a Salt Lift Beverages, LLC)*, No. 24-11468 (LSS) (Bankr. D. Del. May 23, 2024); *In re New Rue HoldCo, Inc.*, No. 24-10939 (BLS) (Bankr. D. Del. May 23, 2024); *In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. May 9, 2024); *In re Sears Authorized Hometown Stores, LLC*, No. 23-11303 (BLS) (Bankr. D. Del. Jan. 11, 2023); *In re FHC Holdings Corp. (f/k/a Francesca's Holdings Corp.), et al.*, No. 20-13076 (BLS) (Bankr. D. Del. Jan. 4, 2021); *In re Lucky's Market Parent Company, LLC*, No. 20-10166 (LJH) (Bankr. D. Del. Mar. 3, 2020); *In re Fred's Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Sept. 27, 2019); *In re: Charming Charlie Holdings, Inc. et. al.*, No. 19-11534 (MFW) (Bankr. D. Del. Aug. 14, 2019) and *In re: National Stores, LLC et al.*, No. 18-11801 (LSS) (Bankr. D. Del. Nov. 2, 2018).

6.      Weighing the First Merchants factors in these cases, if relevant, it is clear that the analysis is consistent with Brookstone, HHG, and all other subsequent precedents that have considered this question: SB360 is not a professional within the contemplation of section 327(a). SB360 (a) does not control, manage, administer, invest, purchase or sell assets that are significant to the Debtors' reorganization (namely the Store Closing Sales); (b) SB360 is not involved in negotiating the terms of a plan of reorganization; (c) the services being provided to the Debtors supplement the work carried out by the Debtors, but the Debtors remain in control of their stores, their employees, their pricing; (d) SB360 does not have discretion or autonomy to exercise his or her own professional judgment in any part of the administration of the Debtors' estate (i.e., the qualitative approach); (e) SB360 has no involvement in the administration of the Debtors' estate (i.e., the quantitative approach); and (f) the skills and service being provided by SB360 to not rise

to the level to be considered a "professional" within the ordinary meaning of the term.

7.      Tellingly, the Objection does not assert that SB360's mandate is atypically broad or impermissible. The responsibilities described in the Consulting Agreement do not give the Consultant the requisite agency, authority or discretion to correctly be characterized as a "professional"[6] Rather, SB360 is asked to recommend commercial and marketing strategies, supervise the conduct of the sales, maintain certain communication with the Debtors' employees, designate certain items not to be sold, and sell merchandise.

8.      The Debtors and SB360 have been completely transparent about the different affiliations that SB360 has with various entities existing under the same organizational umbrella as SB360 have in these estates.  These types of affiliations have become common.  Moreover, contrary to the U.S. Trustee's circular assertions, these types of affiliations do not serve to  convert the Consultant to the status of a "professional" under the section 327(a) retention rules and simultaneously disqualify them for the very same reason. Such assertions ignore almost a decade of decisional law in this and other jurisdictions that have ruled the exact opposite.

9.      In considering this issue, this Court and others throughout this circuit have consistently reached the same result — debtors that exercise their business judgment to engage store closing consultants, even where affiliates of those consultants are present in a given case, are permitted to do so under sections 363 and 365. See, e.g., *In re Sam Ash Music Corp*., No. 24-14727 (SLM) (Bankr. D.N.J. June 5, 2024) (overruling an objection of the U.S. Trustee asserting that the store closing consultant's connection to the DIP Lender was disqualifying); *In re David's Bridal, LLC*, Case 23-13131 (CMG) (Bankr. D.N.J. July 14, 2023) (approving the assumption of a store

---

[6] See Original Agreement, Section 12.7 "Nothing contained herein shall be deemed to create any relationship between the Company and the Consultant other than that of an independent contractor. It is stipulated that the parties are not partners or joint ventures"

closing agreement where the consultant's affiliates occupied the roles of prepetition lender and DIP lender, consignor of inventory and a potential stalking horse bidder); *In re Christmas Tree Shops, LLC*, Case 23-10576 (TMH) (Bankr. D. Del. May 31, 2023) (approving the assumption of a store closing agreement where the consultant's affiliates occupied the roles of prepetition lender, DIP lender, consignor of inventory and a potential stalking horse bidder); *In re Christopher & Banks Corp*., Case 21-10269(ABA) (Bankr. D.N.J. Feb. 8, 2021) (overruling an objection of the U.S. Trustee asserting that the store closing consultant's connections to certain affiliates acting as secured creditors and the stalking horse bidder was disqualifying). (See also; *In re Big Lots, Inc.,* No. 24-11967 (JKS) (Bankr. D. Del. Oct. 21, 2024); *In re: Conn's Inc., et. al*. No. 24-33357 (Bankr. S.D. Tex. Aug. 22, 2024); *In re: Tuesday Morning Corporation, et al.,* No 23-90001 (ELM) (Bankr. N.D. Texas Feb. 23, 2023); *In re: Barneys New York, Inc., et al.,* No 19-36300 (CGM) (Bankr. S.D.N.Y Sept. 10, 2019); *In re: HH Gregg, LLC, et al*., No. 17-01302-RLM-11(Bankr. S.D. Ind. May 8, 2017); *In re Charming Charlie Holdings, Inc., et al.* (Bankr. D. Del. Aug. 14, 2019; and *In re: A'gaci, L.L.C., No. 19-51919 (RBK)* (Bankr.W.D. Tex. Aug. 30, 2019).

10.    In footnote 10 to the Objection, the U.S. Trustee implies that relief sought in the Motion was somehow a novel use of section 363 and 365 of the Bankruptcy Code. However, the relief sought by the Debtors in the Motion is not novel, and the litany of cases cited to the Court in the Motion and this Response supports that fact. Since 2018 more than fifty (50) retail bankruptcy cases have been filed in this Court and in other jurisdictions seeking similar relief to what is sought in the Motion. The U.S. Trustee just doesn't like the outcome in those cases. That does not remotely justify ignoring these precedents. Furthermore, although the U.S. Trustee made absolutely no effort to acknowledge the extensive litigation and Court rulings in this District on the exact issue of whether a consultant is a professional to be retained under Section 327 of the Bankruptcy Code, the Objection does very subtly note that the court's analysis (in

a case involving sections 363, 365 and 503 of the Bankruptcy Code) is not binding on this Court. See *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("There is no such thing as 'the law of the District.'"); see also *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 257 (3d Cir. 2017) ("[A] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011)); *In re U.S. Wireless Corp.*, 384 B.R. 713, 723, n.62 (Bankr. D. Del. 2008) ("In the Third Circuit . . . the decision of a district court is not binding on a bankruptcy court.") (citing Threadgill).  While SB360 is not arguing that the Court is bound by the prior decisions in this District or by the Court in other cases, SB360 does submit that case citation and information on other decisions and court rulings in this district is both helpful and guiding to this Court and should have been laid out in the Objection and SB360 questions the rationale for omitting what is very clearly relevant, if not necessarily binding, case law.

11.    The case law on this issue is clear and unequivocal, and the evidence, testimony, and briefing in this case provides ample support for this Court to find that SB360 is not a professional that is required to be retained under Section 327 of the Bankruptcy Code.

**The Terms of the Consulting Agreement Are Fair and Reasonable and**
**The Fees To Be Paid to SB360 Are Well Within the Market Range**

12.    As set forth in the Declaration of Robert Raskin, Executive Managing Director and General Counsel of SB360 (the "Raskin Declaration")[7], the Consulting Agreement was negotiated at arm's length between the Debtors and SB360, and the 2% of gross proceeds (the "Base Fee") charged thereunder is well within the customary range and falls squarely in line with the fees and expenses being charged in other cases.  This undisputed fact, coupled with SB360's extensive experience in the furniture industry support the finding that the fees being charged are reasonable and market rates. (Raskin Declaration, ¶¶ 15 and 16).

---

[7] The Raskin Declaration and the Exhibit A annexed thereto are incorporated herein by reference.

13.    Furthermore, once engaged, the Debtors, with the assistance of Berkely Research Group, LLC ("BRG"), began to consider closing additional locations, and following BRG's review, an additional 28 retail store locations were earmarked for closure by the Debtors. Accordingly, on November 5, 2025, the Debtors, with the guidance and leadership of BRG, negotiated and entered into the First Amendment.  Pursuant to the First Amendment,  the Debtors and SB360 agreed to (i) close the additional 28 stores pursuant to the Consulting Agreement, (ii) an $125,000 expense advance ("Prepayment") to cover expenses(*First Amendment*, ¶3), which is normal course (*Raskin Declaration,* ¶10); (iii) a provision where SB360 would help fulfill orders that were the subject of deposits from the Debtors' customers(*First Amendment*, ¶5) , which would facilitate the filling of customer orders from the Closing Locations, and (iv) based upon changed circumstances regarding the provision of Additional Merchandise, a fee to the Debtors of seven percent (7%) of the gross sale proceeds (net of sales taxes) from the sale of the Additional Merchandise was added in lieu of a sharing of net profits.  This change was a result of a noticeable impact that shortening the planned sale timeline of six (6) months in the original five (5) stores had on the sale strategy.

14.    As part of its attack on the fairness and reasonableness of the Consulting Agreement, the U.S. Trustee points to Section 10.8 of the Original Agreement, which provides that in the event of a bankruptcy, the Debtors were required to file a motion seeking entry of one or more orders authorizing the Debtors to assume the Consulting Agreement, which orders would be reasonably acceptable and shall provide for at a minimum certain authorizations and protections to the Consultant as set forth therein.  This provision, or a substantially similar version, is a standard provision in all of SB360's consulting agreements, as well in the form consulting agreement of each of the national liquidation firms, and this, or a substantially similar provision,

likely appears in each consulting agreement that was negotiated and went effective pre-petition where the courts have approved the respective debtors assumption of such pre-petition agreements. That being said, the Consulting Agreement is a pre-petition executory contract and the Debtors, now under the guidance of Co-CROs from BRG and Mr. Zalev (each an experienced and well respected restructuring professional in their own right), had the ability, if they determined in the exercise of the Debtors' business judgment, to reject the entire Consulting Agreement.    In choosing to assume the Consulting Agreement, the Debtors' (with the guidance of their Co-CROs from BRG and Mr. Zalev) determined, in their exercise of the Debtors' business judgment, that the Consulting Agreement and SB360 was in the best interest of the Debtors' estate.

15.    As set forth herein, and as was in the testimony at the November 25th Hearing, BRG reviewed the Consulting Agreement and performed a comparison of the Consulting Agreement, with consulting agreements in other cases, and negotiated the First Amendment with SB360 on behalf of the Debtors.  Mr. Zalev, and the Debtors' independent board member, and sole member of the Conflicts Committee of the Debtors' performed his own review of the Consulting Agreement (Original Agreement and the First Amendment) and following his recommendations, the Debtors elected to proceed with seeking to assume the Consulting Agreement.

16.    In attempting to bolster its argument that Court should disregard the Debtors' business judgment, the U.S. Trustee asserts, without a shred of evidence, that the Debtors (i) did not run a "fair process" and (ii) the fees to be paid to SB360 under the Consulting Agreement are unreasonable.  First, the U.S. Trustee fails to cite a single legal or statutory authority that would require a Company to run a "process" of any kind when selecting a store closing consultant and the associated negotiation of agreements such as the Consulting Agreement months before seeking chapter 11 protection.  To impose such a requirement would impose such ridiculous restrictions

on a business that it would impede their business operations.  Second, despite the numerous cased filed in this District, where the fees paid to the store closing consultants are disclosed, and without acknowledging  Exhibit A attached to the Raskin Declaration (which identified seven (7) retail furniture cases since 2018, and the associated fees paid to the respective consultant), the only case identified by U.S. Trustee to support its argument that the fees to be paid to SB360 under the Consulting Agreement are unreasonable, is *In re HDC Holdings II LLC*, Case No. 24-12307-TMH (Bankr. D. Del.)("HDC Holdings Case"), which the debtors sought to assume a pre-petition consulting agreement with Hilco Merchant Resources LLC ("Hilco") served as a consultant for the debtors, while itself being an affiliate of the debtors' majority equity holder.  In essence, the U.S. Trustee argues in the Objection that because Hilco agreed to forego a 1.5% to 2.5% fee in the HDC Holdings Case, that logically means that the fees to be paid to SB360 in these cases are unreasonable.

17.    We note that the U.S. Trustee filed a similar objection in the HDC Holdings case, as it has in this case (absent the "Entire Fairness" argument), asserting that Hilco was a professional to be retained pursuant to section 327 of the Bankruptcy Code.  The Court overseeing the HDC Holdings case entered an interim order and a final order authorizing the assumption of the consulting agreement <u>without</u> requiring a retention pursuant to section 327 of the Bankruptcy Code.[8]

18.    At the November 25th Hearing, the U.S. Trustee inquired of the Debtors' witness, Mr. Rudolph Morando (an executive at BRG and co-CRO of the Debtors) whether there was a case where an affiliate of the Debtors served as the liquidation consultant and was paid a fee for doing so.  Although Mr. Morando not able to identify a case off the top of his head, SB360 also respectfully refers the Court to

---

[8] Many of the arguments set forth in Hilco's reply to the U.S. Trustee's objection in the HDC Holdings Case have been adopted and incorporated into this Response.

*In re: Conn's Inc.*, No. 24-33357 (ARP) (Bankr. S.D. Tex. 2024) (the "Conn's Case"). Not unlike the present case, in the Conn's case, the Debtors sought to assume a pre-petition consulting agreement with B. Riley Retail Solutions, LLC ("BRRS") [Conn's Case Docket No. 10]. As was disclosed in the Declaration and Supplemental Declarations filed by Timothy J. Shilling, President of BRRS [Conn's Case Docket Nos. 11 and 301] (collectively, the "Shilling Declarations"), there were expansive and complex affiliations between the debtors in the Conn's Case and BRRS, including, among other things, the following: (i) BRRS and certain of its employees had indirect ownership in Conn's through their ownership interest in Franchise Group, Inc., which had an ownership interest in the Debtors; (ii) BRRS's affiliate, BRF Finance Co. was the agent under a second lien loan agreement with Conn's; and (iii) BRRS's affiliate, Glass Ratner Advisory & Capital Group, LLC had a contract to provide access to a mobile crisis management application to Risk Solutions International, LLC which, in turn, had a contract to provide such access to debtor Conn Appliances, Inc. The fee payable to BRRS under the applicable consulting agreement in the Conn's Case was as follows: (i) 1.75% where gross recovery was not greater than 105% of cost; (ii) 2.0% where gross recovery was between 105.1% and 109.9% of cost; and (ii) 2.25% where gross recovery was 110% or more of cost. The Bankruptcy Court in the Conn's case entered an Interim Order [Conn's Case Docket No. 69], Amended Interim Order [Conn's Case Docket No. 91], and Final Order [Conn's Case Docket No. 383] approving the assumption of the BRRS consulting agreement. See also *In re: Ashley Stewart, LLC*, Case No. 14-14383 (MBK) (Bankr. D.N.J. 2014) (the "Ashley Stewart Case") (The consultant (GBRP) was an affiliate of the holders of approximately 99% of the stock of Ashley Stewart Holdings, Inc. and was the holder of two tranches of secured subordinated notes issued by the Ashley Stewart debtors. Although we note this occurred prior to the Brookstone Decision and the HHG Decision, the Bankruptcy Court in

the Ashley Stewart case entered an Order authorizing the debtors to enter into the consulting agreement with GBRP) (Ashley Stewart Case Docket Nos. 15(¶5), 21 and 59).

19.     Furthermore, it is far more uncommon for a business such as SB360 to agree to work for no fee.  As set forth in the Raskin Declaration, forty percent (40%) of the ownership of SB360, to whom SB360's management team (which is independent of the Debtors) are accountable, is unrelated to the Debtors and the Schottenstein family.  Working for free is not in line with SB360's business model (nor is it common in this, or typically any, industry).  Being the best at what you do and providing fair pricing and great results is very much in line with SB360's business model, and that, as set forth above, is what we have done in these cases.  As with any retention of SB360, SB360's motivation and obligation is to maximize the value of the client's assets - its affiliation with the Debtors does not affect that goal. [9]

20.     Bankruptcy Courts have routinely authorized the assumption of pre-petition consulting agreements where the designated store closing consultant has an affiliation with other parties in the case, and in each of those cases, the consultant was paid a market rate fee.  See, e.g., *In re Big Lots, Inc.,* No. 24-11967 (JKS) (Bankr. D. Del. 2024); *In re: Christmas Tree Shops, et. al.* No 23-10576 (TMH) (Bankr. D. 2023);  *In re: David's Bridal, Inc. et. al.*, No. 23-13131 (CMG) (Bankr. D. N.J. 2023); *In re: Conn's Inc., et. al.* No. 24-33357 (Bankr. S.D. Tex. 2024); *In re:*

---

[9]  Also, at the November 25th Hearing, the U.S. Trustee also made reference to *In re Art Van Furniture, LLC,* et al., No. 20-10553 (CSS) (Bankr. D. Del. 2022) (the "Art Van Case") where the liquidation consultant (a joint venture of Hilco and Gordon Brothers Retail Partners, LLC ("GB")) was prepared to serve as the consultant to the Art Van debtors, with no fee payable to the consultant by the debtors, but there was an agreement (the specifics of which were not initially disclosed) for the consultant to be paid by the secured creditor FS KKR Capital Corp. and FS KKR Capital Corp. II (collectively, "KKR") from the proceeds KKR received from the Art Van debtors' estate.  The U.S. Trustee objected to the assumption of the consulting agreement, on the basis that, among other things, the Court should not approve the assumption of the Consulting Agreement because of then undisclosed fee arrangement with KKR.  Hilco subsequently filed the declaration of Benjamin L. Nortman [Art Van Case Docket No. 156] in which Mr. Nortman stated: "While it is true that Hilco/GB agreed under the Consulting Agreement that it would not be paid a conventional consulting fee (as provided under its original proposal), Hilco/GB was relying on (a) its leading industry expertise and experience in maximizing asset recoveries and minimizing expenses of the sale, and (b) the 50% of [net] augmentation proceeds that it retained under its agreement with KKR, such that it could in turn ultimately realize a recovery, through HGB [HGB AVF Lending, LLC], on account of its term loan interests after the ABL lenders' claims and administrative claims were paid.  Before the Court could rule on a final basis, Covid pandemic hit, shuttering the stores, and the case was converted to Chapter 7 shortly thereafter.

*Tuesday Morning Corporation, et al.,* No 23-90001 (ELM) (Bankr. N.D. Tex. 2023); *In re: Barneys New York, Inc., et al.,* No 19-36300 (CGM) (Bankr. SDNY 2019); *In re: HH Gregg, LLC, et al.,* No. 17-01302-RLM-11(Bankr. S.D. Ind. 2017); and *In re: A'gaci, L.L.C., No. 19-51919 (RBK)* (Bankr. W.D. Tex. 2019).

21.      The Objection also references a provision in the First Amendment that provided that, at the Debtors' election, SB360 would pre-order signs for other locations.  As the Debtors continued to evaluate its available options and various store configurations,  this provision was added as accommodation to the Debtors, so that, if they so elected, the Debtors  would be prepared to commence a full chain liquidation,  if necessary, and be in a position to take advantage of SB360's pricing with its sign and courier vendors.  To the extent that the Debtors made such election, before SB360 would order the signs, the Debtors were required to advance the cost for such signs, which the parties estimated would be $800,000.[10]  The Debtors did make such election and the signs have been ordered by SB360.   As noted in the Motion, to the extent that the successful equity-based bid at the auction contemplates conducting a store closing sale at some or all of the Debtors' remaining locations, the Debtors shall be reimbursed for the costs of the signage. If the Stalking Horse Bid is the successful bid, the sign packages for approximately 89 stores would be purchased from the Debtors by the purchaser.

22.      The U.S. Trustee has failed to provide a single piece of evidence, or point to single act, or failure to act, on the part of SB360 that has been detrimental to the interests of the Debtors' estates.  Unfounded inuendo and broad sweeping allegations about circumstances surrounding the

---

[10]  The provision in the First Amendment reads as follows:

"In anticipation of the possibility of future store closings, the Company would like to order sign packages to be prepared to close additional stores. The Company will notify the Consultant when to order signs and at that time the Company shall fund to Consultant a payment of $800,000 to be earmarked for the purchase of signage for additional stores. The Company shall own the signs purchased to be utilized in connection with the closing of future stores." (*First Amendment*, ¶3)

negotiation of the Original Agreement and the First Amendment are not sufficient.

**Debtors' Assumption of the Consulting Agreement is a Sound Exercise**
**of Business Judgment**

23.     The U.S. Trustee further contends that, regardless of whether the Consultant is a

professional, the Debtors cannot assume the Consulting Agreement because the presence of SB360

and certain of its affiliates in various roles in these cases necessarily means that the Debtors'

exercise of their business judgment (which SB360 submits is the appropriate standard for the relief

requested in the Motion) was not proper.  This argument is plainly contrary to settled law in this

district.

24.     The U.S. Trustee contends, without any basis in law or fact, that the Debtors' pre-

petition negotiation of the Consulting Agreement (both the Original Agreement and the First

Amendment), and the decision to assume the Consulting Agreement in these cases, are not a proper

exercise of the Debtors' business judgment, soley because of SB360's affiliation with other parties

in these cases. Such argument is  as unavailing  as the 327 retention argument. SB360 submits that

the evidentiary record establishes that it is a sound exercise of the Debtors' business judgment to

assume the Consulting Agreement on a final basis. As the ample record reflects, failure to assume

the Consulting Agreement would bring SB360's services to an end, leaving the Debtors' without

any guidance on discounting and completing the ongoing sales, most of which are entering their

final three (3) weeks, which would significantly impair the Debtors' need to maximize the

proceeds to the estates from the Store Closing Sales, and significantly erode value coming into the

estates. The Debtors' determination in this regard is sound, and in opposing assumption the U.S.

Trustee offers no credible alternative that will achieve a better result.

25.     Notably, while somewhat unusual in certain respects due to the relationship to other

parties in interest in these cases, the U.S. Trustee does not make the case that this store closing

liquidation – as distinguished from other components of the Chapter 11 cases – such as the DIP Financing or the Stalking Horse Bid that is the subject of the Bid Procedure Motion that is pending before the Court, is aberrant in any fashion. As noted above, the various affiliate connections, each of which has been fully disclosed from the outset, by itself does not mandate a determination that SB360 is a professional within the ambit of section 327(a).

26.      As a result of the pre- and post-petition services provided by SB360, the Debtors have been able to successfully execute their decision to exit 33 non-profitable stores.  As recited in the Motion, the Raskin Declaration, and the testimony adduced at the November 25th Hearing, the evident success of these store closings informed the Debtors' decision to assume the Consulting Agreement and continue to engage SB360 on this basis.  Contrary to the U.S. Trustee's unfounded suppositions, we respectfully submit, that nothing raised in the Objection, or otherwise present in these cases should result in the second guessing of a debtor's business judgment simply because the debtor is transacting with the party whose affiliates are also involved in the case.

27.      In recent years it has become more and more common for debtors and secured lenders to put in place a consultant who they trust and believe will deliver the best outcome from the liquidation sale. This case is no different.  SB360 negotiated the Consulting Agreement in good faith and is operating the sale no differently than it would in any other circumstances regardless of its affiliation with the Debtors and/or SACP, and it has performed at the same high level as it does for all of its clients.  The Court's decision at the November 25th Hearing and entry of the Interim Order allowed SB360 to remain in place on an interim basis so that the sale at such stores could take advantage of the marketing and sales strategy that was being implemented for the Thanksgiving/Black Friday holiday shopping and was a contributing factor to these successful results.  Leaving SB360 in place through the end of the sale at these locations will enable the

Debtors' to leverage SB360's existing marketing and sales strategy with the goal of continuing on this successful trajectory.

28.     The Consulting Agreement is not linked to the Stalking Horse Agreement and granting the relief in the Motion does not serve to approve the Debtors' motion for approval of bid procedures and the sale of their assets (other than the assets in the Closing Stores). They are two separate agreements and two separate motions, which, although some parties or their affiliates may overlap, each are to be evaluated by the Court on a stand-alone basis.  The fact that the Debtors have separate and distinct dealings with different affiliates of [SB360] that provide goods, services or capital beneficial to a distressed retailer is not cause for alarm. as these are precisely the circumstance considered by Judge Shannon in the *Brookstone Case*, namely that a liquidation consultant's affiliates "might be called upon or invited to play other roles in the case as circumstances may require," including, for the avoidance of doubt, "buying estate assets or even serving as a lender." Brookstone, 592 B.R. at 31.

29.     Here, the record is entirely bereft of any evidence that SB360's affiliation with other parties in interest in these cases is somehow detrimental to the interests of the estates and their various constituencies. As a result, these connections should not serve to undermine the sound exercise of the Debtors' business judgment in determining to engage SB360 as its liquidation Consultant. In light of the foregoing, the Objection should be overruled.

## CONCLUSION

For the reasons set forth herein, SB360 respectfully submits that the Court should overrule the Objection and grant the Motion on a final basis and grant such other and further relief as the Court may deem just and proper.

17

Dated: December 12, 2025
      Wilmington, Delaware      **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com

*- and –*

**LEICHTMAN LAW PLLC**
Maura Russell
185 Madison Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 419-5210
Email: mrussell@leichtmanlaw.com

*Counsel to SB360 Capital Partners, LLC*