## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 108, 130, 171, 174** |

## DEBTORS' OMNIBUS REPLY IN SUPPORT
## OF COMBINED SALE/BID PROCEDURES MOTION

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

submit this omnibus reply (the "<u>Omnibus Reply</u>") in support of the *Motion of the Debtors for Entry*

*of Orders (I)(A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets,*

*(B) Authorizing the Debtors to Enter Into (I) Stalking Horse Asset Purchase Agreement and*

*(II) Stalking Horse Agency Agreement and to Provide Bid Protections Thereunder, (C) Scheduling*

*an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption*

*and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and*

*Manner of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims,*

*Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory*

*Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 108] (the

"<u>Combined Sale/Bid Procedures Motion</u>")[2] and in response to the objections filed by (a) the

Official Committee of Unsecured Creditors (the "<u>Committee</u>") [Docket No. 174] (the "<u>Committee</u>

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Combined Sale/Bid Procedures Motion.

Objection") and (b) the Office of the United States Trustee (the "UST") [Docket No. 171] (the "UST Objection"), as well as a limited objection of Utica Park Place Owner, LLC and Canton Corners Shopping Center, L.L.C. and informal objections from other landlords (the "Landlord Comments") [Docket No. 130] (collectively, the "Objections"). In response to the Objections and in further support of the Combined Sale/Bid Procedures Motion, the Debtors respectfully state as follows:

<b><u>Preliminary Statement</u></b>

1.      The Debtors entered these chapter 11 cases with the Stalking Horse Agreements in hand, which will maximize the value of the Aggregate Assets. The proposed Bidding Procedures, including the timeline for the sale and the Bid Protections for the Stalking Horse Bidder encompassed therein, provide a reasonable, and appropriate mechanism for ensuring that maximum value is realized for the Debtors' assets under the circumstances of these cases.

2.      Both the UST Objection and Committee Objection argue that the Bid Protections should not be provided to the Stalking Horse Bidder based on its status as an affiliate of the Debtors.[3] Neither Objection cites any legal authority or precedent for this proposition. Moreover, typical "bid protections" as the term is commonly understood are not proposed: there is no breakup fee. Rather, there is only an Expense Reimbursement of up to $1.5 million and an Augment Purchase (*i.e.*, the requirement to purchase goods *at cost* that have been acquired by the Stalking Horse Bidder to include in GOB sales), capped at $5 million, each of which will only be paid out of the proceeds of a Subsequent Transaction (as defined in the Stalking Horse APA). The Debtors

---

[3]    The Committee and UST also both raised an objection to the DIP Agent or Prepetition ABL Agent being a consultation party, which issue has been resolved with the provision that neither the DIP Agent nor the Prepetition ABL Agent shall be a Consultation Party if either (i) the Stalking Horse Bidder has not been withdrawn its Stalking Horse Bid, or (ii) the DIP Agent or the Prepetition ABL Agent submits a credit bid for any of the Aggregate Assets.

submit that each of these limited Bid Protections is consistent with market standards in this District, is only payable from a Subsequent Transaction, and is reasonable under the circumstances in light of the substantial benefits to be realized by the Debtors' estates from setting a floor.  In addition, the Augment Purchase will allow the Debtors' estates (or an alternative overbidder) to acquire the Additional Agent Goods at cost, which will provide additional value to the estates. The UST's objection to the Bid Protections receiving superpriority expense status ignores the critical condition that the Bid Protections are only payable from the proceeds of a Subsequent Transaction, out of which the Bid Protections will be paid.  Moreover, superpriority expense status for Bid Protections is a standard provision in many bid procedures orders in this District.

3.     The Committee also objects that the sale timeline is too short, especially in light of the Stalking Horse Bidder being an insider.  However, the timing of the Sale Milestones is necessitated by the Debtors' circumstances, and appropriately takes into account the realities of the Debtors' liquidity needs.  Specifically, the Debtors' estates only have sufficient funds to accommodate a Closing Date in early January 2026.  As the Debtors are incurring ongoing operating losses, any delay in the sale process will be extremely costly, requiring the Debtors to incur additional administrative expenses.  Moreover, the value of the Debtors' assets is expected to decline with the lapse of time.  Accordingly, for each week that the timeline is pushed back and the Debtors' value is thereby eroded, it is anticipated that any purchaser will reduce its bid concomitantly and, together with the increased expenses of a longer process, less value will be available to the Debtors' creditors.  Accordingly, a balance must be struck between the length of the sale process and the Debtors' funding needs.  As the evidence will demonstrate at the hearing, the proposed timeline provides adequate time for all legitimate bidders to evaluate the Debtors' assets and make a viable bid.

4.      The Committee, the UST, and the Landlord Limited Objection raise additional technical objections that the Debtors have attempted to resolve, as discussed in greater detail herein.

5.      Accordingly, for the reasons set forth in further detail below, the Debtors submit that the Bidding Procedures represent a sound exercise of the Debtors' business judgment and should be approved.

## Omnibus Reply

### A.      Bid Protections (Committee Objection and UST Objection)

6.      The Objections filed by the Committee and the UST request that the Bid Protections be denied or rationalized in light of the insider nature of the Stalking Horse Bidder.  Here, the proposed Bid Protections consist of (i) the Expense Reimbursement capped at $1.5 million, and (ii) the Augment Purchase, capped at $5 million.

#### 1.      Expense Reimbursement

7.      The Expense Reimbursement proposed is capped at $1.5 million and represents an actual and necessary cost and expense incurred by the Stalking Horse Bidder that has the effect of preserving and maximizing the value of the Debtors' estates by setting a floor in the sale process. The Third Circuit Court of Appeals has made clear that an expense reimbursement may be approved so long as it provides some postpetition benefit to the debtor's estate. *See In re O'Brien Envtl. Energy, Inc*., 181 F.3d 527, 536 (3d Cir. 1999). This is assured by the condition that the Expense Reimbursement is only payable out of the proceeds of a Subsequent Transaction.

8.      The UST asserts that "the burden on the Stalking Horse Bidder to conduct due diligence was significantly lower than it would have been on a true third-party purchaser."  UST Objection at 10-11.  The Committee similarly asserts that the Expense Reimbursement is not needed to conduct diligence on a company an affiliate controlled since 1948. Committee Objection

at 18.  Their laser focus on due diligence is irrelevant, because the Stalking Horse Bidder is incurring significant legal and other expenses in formulating its bid and negotiating such bid with the Debtors and would not agree act as a floor in the sale process absent the Expense Reimbursement.

9.    Further, the Debtors' decision with respect to the Bid Protections were reviewed and approved by the Co-CROs and the Conflicts Committee and is not subject to any sort of heightened scrutiny. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("the business judgment rule governs unless the opposing party can show one of four elements: (1) the directors did not in fact make a decision; (2) the directors' decision was uniformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent") (emphasis added).

10.   Through negotiating and drafting the Stalking Horse APA, the Stalking Horse Bidder placed the estates' property in sales mode to attract other potential bidders. *See In re O'Brien Envtl. Energy, Inc*., 181 F.3d at 536 (noting that placing the Debtors into a sales configuration mode supports the provision of an expense reimbursement).

11.   Further, the Debtors needed to provide an incentive to the Stalking Horse Bidder in the form of the proposed Expense Reimbursement in order to reach agreement on the proposed sale.  The Debtors are getting the tangible benefit of a floor-setting bid.  *See*, *e.g*., *In re Reagan*, 403 B.R. 614, 619 (B.A.P. 8th Cir. 2009), *aff'd*, 374 F. App'x 683 (8th Cir. 2010) ("Stalking horse bids may generate interest in the assts and create a sense of confidence in the value of the assets among prospective buyers who might assume that a willing buyer has conducted due diligence."); *In re Alpha Nat. Res., Inc*., 552 B.R. 314, 322 (Bankr. E.D. Va. 2016) (same).

12.     The Stalking Horse APA sets a floor for a competitive, value-maximizing bidding process. Without the Expense Reimbursement, the Debtors might lose the opportunity to obtain the highest or otherwise best offer for the Debtors' assets and would certainly lose the downside protection that will be afforded by the existence of the Stalking Horse Bidder. The Stalking Horse Bidder also provides potential bidders with guidance as to a potential transaction structure and the Stalking Horse Agreement serves an important function in that it lays out a "roadmap" for potential bidders by proposing a structure to acquire the Debtors' assets.

13.     Furthermore, an expense reimbursement can provide a benefit to the estate where, among other things, "the bid protection induces a bidder to adhere to its bid through an auction process." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3d Cir. 2018)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 661 (S.D.N.Y. 1992) (bid protections may "ensure that a bidder does not retract its bid.").

14.     Expense reimbursements have been approved previously under similar circumstances by this Court. *See*, *e.g.*, *In re Genapsys, Inc.*, No. 22-10621 (BLS), Hr'g Tr. 33:7-15 (Bankr. D. Del. Aug. 22, 2022) [D.I. 195] (The Court stated: "I'm under no illusions that even a familiar stakeholder is obliged to spend money on professionals to assist in formulating a bid. That would happen even with a management bid as a practical matter. And so I'm not going to fault a stalking horse for engaging or seeking reimbursement of those expenses and I would be prepared to approve them notwithstanding my ruling on the breakup fee").  For the foregoing reasons, the Expense Reimbursement is appropriate and should be approved.

2.      **Augment Purchase**

15.     As for the Augment Purchase, in connection with the contemplated transaction, the Stalking Horse Bidder may elect to purchase "Additional Agent Goods" that it believes will be

profitable to include in the liquidation sales.   The Augment Purchase merely requires any overbidder to acquire those Additional Agent Goods, at cost, from the Stalking Horse Bidder. Accordingly, such overbidder would be paying for and receiving the goods, at cost, that the Stalking Horse Bidder has sourced and which it believes will bring in additional funds beyond the Augment Purchase price.[4]   Like the Expense Reimbursement, the Augment Purchase, in any event, is only payable in the event of a Subsequent Transaction.   The Stalking Horse Bidder and Agent have since agreed to cap the Augment Purchase at $5,000,000 and provide for the ability of a successful overbidder to be refunded should any of the Additional Agent Goods be in a condition that is unsaleable.   The Debtors submit that with such modifications, the Augment Purchase is not a deterrent for any bidder, and in fact represents a potential benefit to such potential bidder.   Courts have previously approved similar provisions.   *See*, *e.g.*, *In re Caché, Inc*., Case No. 15-10172 (MFW) (Bankr. D. Del. Feb. 25, 2015) (approving bidding protections including breakup fee,

---

[4]    As set forth in the Bidding Procedures, as revised, Section 8.2(a)(iii) of the Stalking Horse APA provides that in addition to any payments that may be due pursuant to Section 8.2(a)(i), if the Stalking Horse APA is terminated pursuant to Section 12.1, other than termination pursuant to Section 12.1(c)(i) or Sections 12.1(d), the Sellers shall purchase from Buyer, at cost, all Additional Agent Goods (as defined in the Agency Agreement) acquired by Buyer or any designee in connection with the Stalking Horse APA and the Agency Agreement prior to the date of such termination (the "Augment Purchase"), subject to the cap set forth in the immediately following sentence.   Notwithstanding the foregoing, however, in no event shall the aggregate cost of Additional Agent Goods to be purchased pursuant to the Augment Purchase exceed $5,000,000.   "Additional Agent Goods" refers to the Stalking Horse Agent's right to purchase additional Merchandise in the Sale (as those terms are defined in the Stalking Horse Agency Agreement) procured by the Stalking Horse Agent which are of like kind, and no lesser quality to the Merchandise in the Sale.   The Additional Agent Goods shall be purchased by the Stalking Horse Agent at the Stalking Horse Agent's sole expense, to the extent provided in section 8.9 of the Stalking Horse Agency Agreement.   Section 8.2(a)(iii) of the Stalking Horse APA also provides that Augment Purchase shall be made on the third Business Day following the consummation of a Subsequent Transaction solely out of and to the extent of the proceeds of the purchase price received by the Debtors from such Subsequent Transaction, in the manner provided in the Stalking Horse APA. The purchaser under any Subsequent Transaction shall have the right to assert that any Additional Agent Goods proposed to be included in the Augment Purchase are not of like kind to, or are of lesser quality than, the Merchandise (as defined in the Agency Agreement) and its sole recourse on account thereof shall be to exclude such Additional Agent Goods from the Augment Purchase.   For the avoidance of doubt, resolution of a dispute as to the quality of the Additional Agent Goods cannot be a condition of closing or basis of delay therefor.

expense reimbursement, signage cost obligations and purchase order obligations); *In re Gordmans Stores, Inc*., Case No. 17-80304 (Bankr. D. Neb. March 22, 2017).

16.     The Stalking Horse Bidder was unwilling to enter into the Stalking Horse Bid or to set a floor on a purchase price for the Aggregate Assets without the Expense Reimbursement and the Augment Purchase, which represent reasonable bid protections that were negotiated in good faith and at arms' length between the parties.  There is nothing novel about an affiliate participating in a stalking horse bid and this Court has approved bid protections for stalking horses that had connections to the Debtors in many other cases. *See*, *e.g*., *In re AeroFarms, Inc*., Case No. 23-10737 (MFW) (Bankr. D. Del. July 20, 2023) [D.I. 191] (approving expense reimbursement to insider stalking horse bidder who was owned by a number of the debtor's equity holders and also a board member); *In re Lucky Brand Dungarees, LLC et al*., Case No. 20-11768 (CSS) (Bankr. D. Del July 30, 2020) [D.I. 251] (approving expense reimbursements to stalking horse bidders who were equity holders of the debtor); *In re DirectBuy Holdings, Inc.*, No. 16-12435 (CSS) (Bankr. D. Del. Dec. 1, 2016) [D.I. 126] (approving expense reimbursement for a stalking horse that was established by the holders of the debtors' prepetition secured notes, who were also 100% equity owners of the debtor parent); *In re BPS US Holdings Inc*., No. 16-12373 (KJC) (Bankr. D. Del. Nov. 30, 2016) [D.I. 233] (approving expense reimbursement for stalking horse bidder that was the largest shareholder of the debtor).

17.     Neither the Expense Reimbursement nor Augment Purchase will chill bidding as the Augment Purchase merely increases the inventory for sale, and the Expense Reimbursement represents an extraordinarily small percentage of the overall consideration any alternative bidder would need to pay.  The Expense Reimbursement is solely for the purpose of reimbursing the Stalking Horse Bidder for costs incurred related to the Stalking Horse Bid and is exceedingly

reasonable, as it represents approximately 1% of the Purchase Price. The Expense Reimbursement is well within the range of bid protections approved in other cases before this Court.  And both the Expense Reimbursement and Augment Purchase are only payable in the event of a Subsequent Transaction.

18.    In addition, the UST argues that the Bid Protections should not be granted superpriority expense status.  Inasmuch as the Bid Protections are only payable if there is a Subsequent Transaction, the superpriority of little practical consequence to the Debtors and their creditors.  The only possible circumstance where it could come into play is if the Debtors fail to pay the Bid Protections notwithstanding receiving the proceeds of a Subsequent Transaction.

19.    It is well established in the Third Circuit that bid protections must be approved under section 503(b) of the Bankruptcy Code. *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("We concluded that a bidder must seek a break-up fee under 11 U.S.C. § 503(b), which, so far as germane here, permits payment of post-petition administrative expenses for the 'actual, necessary costs and expenses of preserving the estate.'").

20.    Courts in this District routinely apply this principle to expense reimbursements, finding that expense reimbursements are entitled to superpriority administrative expense status as a result of the value provided to the estate. *See*, *e.g*, *In re Brooks Bros. Grp., Inc*., No. 20-11785 (CSS) Bankr. D. Del. Aug. 3, 2020) [D.I. 285] (finding that the bid protections were actual and necessary costs and expenses within the meaning of section 503 and providing superpriority administrative expense status); *In re Lucky's Market Parent Co., LLC*, No. 20-10166 (JTD) (Bankr. D. Del. Feb. 26, 2020) [D.I. 282] (finding that the bid protections were allowed superpriority administrative expense claims); *In re Celadon Grp., Inc*., Case No. 19-12606 (KBO)

(Bankr. D. Del. Jan. 6, 2020) [D.I. 219] (finding that the bid protections were entitled to administrative expense priority status).

B.    **Additional Objections of Committee**

21.    The Committee argues that the sale timeline is too tight and should be extended. The proposed timeline from entry of the Bid Procedures Order and the Bid Deadline is approximately 21 days, which is well within the range approved in this district in other chapter 11 cases. *See, e.g.*, *In re New Rue21 Holdco, Inc.*, No. 24-10939 (BLS) [Docket No. 194] (Bankr. D. Del. May 23, 2024) (approving bidding procedures with a bid deadline five days after entry of the bidding procedures order and a sale hearing 28 days after the petition date); *In re Casa Sys., Inc.*, No. 24-10695 (KBO) [Docket No. 261] (Bankr. D. Del. May 2, 2024) (approving bidding procedures with a bid deadline 22 days after entry of the bidding procedures order and a sale hearing 62 days after the petition date); *In re SC Healthcare Holding, LLC*, No. 24-10443 (TMH) [Docket No. 341] (Bankr. D. Del. May 21, 2024) (approving bidding procedures with a bid deadline 33 days after entry of the bidding procedures order and a sale hearing 112 days after the petition date); *In re Sientra, Inc.*, No. 24-10245 (JTD) [Docket No. 123] (Bankr. D. Del. Mar. 25, 2024) (approving bidding procedures with a bid deadline 20 days after entry of the bidding procedures order and a sale hearing 42 days after the petition date); *In re Nanostring Techs., Inc.*, No. 24-10160 (CTG) [Docket No. 384] (Bankr. D. Del. Mar. 28, 2024) (approving bidding procedures with a bid deadline 15 days after entry of the bidding procedures order and a sale hearing 75 days after the petition date); *In re Mabvax Therapeutics Holdings, Inc.*, No. 19-10603 (CSS) [Docket No. 78] (Bankr. D. Del. Apr. 8, 2019) (approving bidding procedures with a bid deadline 18 days after entry of the bid procedures order); *In re Things Remembered, Inc.*, No. 19-10248 (CSS) [Docket No. 100] (Bankr. D. Del. Mar. 13, 2019) (approving bidding procedures with a bid deadline seven days after entry of the bid procedures order and an auction scheduled for

26 days after entry of the order); *In re Charlotte Russe Holding, Inc.*, No. 19-10210 (LSS) [Docket

No. 199] (Bankr. D. Del. Feb. 21, 2019) (approving bidding procedures with a bid deadline 10

days after entry of the bid procedures order and an auction scheduled for 29 days after entry of the

order); *In re Maurice Sporting Goods, Inc.*, No. 17-12481 (CSS) [Docket No. 125] (Bankr. D. Del.

Dec. 12, 2017) (entering a bid procedures order 22 days after the petition date and approving a bid

deadline 10 days after entry of the order); *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS)

[Docket No. 196] (Bankr. D. Del. Oct. 6, 2016) (approving bidding procedures with a bid deadline

11 days after entry of the bid procedures order and an auction scheduled for 13 days after entry of

the order).

22.     The Debtors will present evidence at the hearing that the proposed sale timeline is

reasonable and appropriate under the circumstances and will provide adequate opportunity for

potential buyers to make viable bids.

23.     The Committee has raised several other issues, as set forth (with proposed

resolutions) below:

| Issue | Committee Position | Debtor Response/Resolution |
|---|---|---|
| Consultation Rights | The Bid Procedures should be revised to provide the Committee with consultation rights with respect to all aspects of the sale process and auction.<br><br>Given the Debtors' conflict and affiliation with the Schottenstein Buyer, the Schottenstein Lender should not have any consultation rights unless the Schottenstein Buyer's bid is withdrawn | Order and Bidding Procedures have been revised to incorporate additional consultation rights. See Order (¶12, 13, 14), Bidding Procedures (multiple).<br><br>Bidding Procedures have been revised to incorporate. See Bidding Procedures, Definition of "Consultation Parties." |
| Independent Director | The Bid Procedures should confirm that all actions or decisions to be taken by the Debtors shall be taken by the Independent Director. | As set forth in the First Day Declaration, the Board of Directors of ASI constituted the Conflicts Committee comprised of the Independent Director, as sole |

| | | |
|---|---|---|
| | | member, and delegated to the Conflicts Committee, among other things, the full power and authority to negotiate, review, approve, and ratify all related party transactions. The Debtors will follow their governance documents, including with respect to the Conflicts Committee, but does not agree this is appropriate to add to the Bidding Procedures. |
| Sale Objection Deadline | The Bid Procedures currently set an objection deadline of December 30, the same date as the Bid Deadline and six days prior to the Auction. Neither the Committee nor creditors should be required to file objections to the sale until after the Auction has been conducted and the terms of the winning bid are known. Similarly, contract counterparties should be given sufficient time after the selection of the winning bidder to object to adequate assurance concerns. Any adjournment of the sale dates should be filed with the Court to ensure all stakeholders receive proper notice. | Debtors have added the following to the Order: "In the event that an Auction is conducted, the deadline for objections related to the conduct of the Auction shall be at the Sale Hearing. In the event that the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for objections related to (i) the form of Sale Order approving such Successful Bidder's asset purchase agreement, and (ii) the proposed asset purchase agreement between the Debtors and such Successful Bidder shall be at the Sale Hearing." Order at ¶9. |
| Qualified Bids | The Debtors must provide the Committee with copies of all bids within one hour of receipt of the Bids given the truncated sale timeline. | Debtors have added the following to the Bidding Procedures: "The Debtors shall promptly provide the Consultation Parties with copies of all Bids received by the Debtors as soon as reasonably practicable following receipt thereof." Bidding Procedures at p. 6. |
| Bid Protections | If the Court approves the Bid Protections, the Committee should have an opportunity to review the Schottenstein Buyer's invoices and 14 days object to the reasonableness of any fees or expenses. | Debtors do not believe such a requirement is necessary. |
| Credit Bids | Any right to credit bid must be subject to the Committee's challenge rights under section 363(k) of the Bankruptcy Code and the DIP Order. | Paragraph 21 of the Order already provides for this. |

| Adequate Assurance of Future Performance | The Bid Procedures should set (i) a firm deadline for Debtors to provide adequate assurance of future performance; and (ii) a cure and assumption objection deadline allowing counterparties sufficient time to review and object. Any potential Assumption and Assignment Notice shall contain information of adequate assurance of future performance to the applicable lease counterparties pursuant to section 365 of the Bankruptcy Code. | Debtors have added the following to ⁋22 of the Order: "When filing the Potential Assumption and Assignment Notice as to the Stalking Horse Bidder, the Debtors shall also serve information evidencing adequate assurance of future performance on the applicable landlords whose leases are potentially being assumed and assigned at Closing pursuant to section 365 of the Bankruptcy Code. Adequate assurance information for any Qualified Bidder other than the Stalking Horse Bidder shall be disseminated to landlords whose leases are potentially being assumed and assigned at Closing no later than one (1) business day of the Debtors' qualifying such Bidder."<br><br>Debtors have added the following to ⁋24: "*provided, however*, that if the Debtors conduct an Auction, then the deadline for a Counterparty to object to the ability of a Successful Bidder other than the Stalking Horse Bidder to provide adequate assurance of future performance shall be at or before the Sale Hearing." |
| Potential Lease Assignment | If the Debtors seek to approve a sale to the Backup Bidder at the Sale Hearing and a lease counterparty objects to the assignment of its lease, the hearing on that objection shall be held on at least seven days' notice to the applicable lease counterparty and shall not be heard at the Sale Hearing. | Debtors have modified ⁋25: "If a Counterparty files a timely Assumption and Assignment Objection, the Court will hear and determine such objection at the Sale Hearing or such other date that the Debtors, the objecting Counterparty, and the Successful Bidder shall determine (subject to the Court's calendar), or as otherwise ordered by the Court in the event the parties cannot agree on a hearing date." |

**C.**     **Additional Objections of UST**

24.     The UST argues that the Debtors must provide evidence regarding the sale of personally identifiable information and whether the Sale requires the appointment of a consumer privacy ombudsman ("CPO").

25.     As noted by the UST, the privacy policy on the American Signature Furniture website, dated as of May 27, 2022 (the "ASF Privacy Policy"), provides that "[w]e will not sell or share any of your personal information with any non-affiliated company or agency except as in accordance with this Privacy Policy" but does not include any additional information regarding the sale of PII.[5]  Accordingly, the Debtors will consent to the appointment of a CPO provided that the CPOs' report and/or recommendations would only apply to buyers other than the Stalking Horse Bidder, which is an affiliate and expressly entitled to receive the information under the policy.

26.     Finally, the UST objected to the DIP Agent or Prepetition ABL Agent being a consultation party, which issue has been resolved with the provision that neither the DIP Agent nor the Prepetition ABL Agent shall be a Consultation Party if either (i) the Stalking Horse Bidder has not been withdrawn its Stalking Horse Bid, or (ii) the DIP Agent or the Prepetition ABL Agent submits a credit bid for any of the Aggregate Assets.

**D.**     **Landlord Comments**

27.     The Landlord Limited Objection objects to "approval of the Motion to the extent that it seeks to prematurely limit the Landlords ability to object to assumption or assumption and assignment on any ground, at the appropriate time." Landlord Limited Objection at 3.

---

[5]    As further noted by the UST, the privacy policy on the Value City Furniture website is also dated as of May 27, 2022 and is substantially the same as the ASF Privacy Policy.

28.     The Debtors have proposed to resolve the Landlord Limited Objection by adding the following italicized text to the Order:

- *In the event that an Auction is conducted, the deadline for objections related to the conduct of the Auction shall be at the Sale Hearing. In the event that the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for objections related to (i) the form of Sale Order approving such Successful Bidder's asset purchase agreement, and (ii) the proposed asset purchase agreement between the Debtors and such Successful Bidder shall be at the Sale Hearing.*

- *When filing the Potential Assumption and Assignment Notice as to the Stalking Horse Bidder, the Debtors shall also serve information evidencing adequate assurance of future performance on the applicable landlords whose leases are potentially being assumed and assigned at Closing pursuant to section 365 of the Bankruptcy Code. Adequate assurance information for any Qualified Bidder other than the Stalking Horse Bidder shall be disseminated to landlords whose leases are potentially being assumed and assigned at Closing no later than one (1) business day of the Debtors' qualifying such Bidder.*

- All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount Counterparty believes is required to cure defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the relevant Potential Assigned Agreement; (d) be filed by no later than **4:00 p.m. (prevailing Eastern Time) on [•]**; and (e) be served on the Objection Notice Parties; *provided, however, that if the Debtors conduct an Auction, then the deadline for a Counterparty to object to the ability of a Successful Bidder other than the Stalking Horse Bidder to provide adequate assurance of future performance shall be at or before the Sale Hearing.*

- If a Counterparty files a timely Assumption and Assignment Objection, the Court will hear and determine such objection at the Sale Hearing or such other date that the Debtors, *the objecting Counterparty*, and the Successful Bidder shall determine (subject to the Court's calendar), *or as otherwise ordered by the Court in the event the parties cannot agree on a hearing date.*

29.     Counsel for additional landlords provided additional comments which the Debtors agreed to treat as an informal objection. The Debtors are working with landlords to address their comments, as reflected in a revised form of order. The revised order, subject to further revisions as the Debtors and landlords work through further comments, is attached hereto as **<u>Exhibit A</u>**, and

a redline of changes against the original version is attached hereto as **Exhibit B**.  The Debtors

reserve the right to modify the proposed order in advance of the hearing.

## <u>Conclusion</u>

30.     Based on the foregoing, the Debtors request that the Court overrule the Objections

and enter an order approving the Bidding Procedures.

Dated:  December 13, 2025                          **PACHULSKI STANG ZIEHL & JONES LLP**

                                                   <u>*/s/ Laura Davis Jones*</u>
                                                   Laura Davis Jones (DE Bar No. 2436)
                                                   David M. Bertenthal (CA Bar No. 167624)
                                                   919 North Market Street, 17th Floor
                                                   P.O. Box 8705
                                                   Wilmington, Delaware 19899-8705 (Courier 19801)
                                                   Telephone:  302-652-4100
                                                   Facsimile:  302-652-4400
                                                   Email:  ljones@pszjlaw.com
                                                           dbertenthal@pszjlaw.com

                                                   *Proposed Counsel for the*
                                                   *Debtors and Debtors in Possession*