**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>American Signature, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-12105 (JKS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 216**<br><br>**Hearing Date: Jan. 7, 2026 at 11:00 a.m. (ET)**<br><br>**Obj. Deadline: Dec. 31, 2025 at 4:00 p.m. (ET)[2]** |

**UNITED STATES TRUSTEE'S OBJECTION TO
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
DEBTORS TO EMPLOY AND RETAIN A&G REALTY PARTNERS, LLC AS REAL
ESTATE CONSULTANT AND ADVISOR FOR THE DEBTORS EFFECTIVE AS OF
THE PETITION DATE AND (B) WAIVING CERTAIN REPORTING REQUIREMENTS**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, hereby objects (this "Objection") to the *Debtors' Application for Entry of an Order (A) Authorizing the Debtors to Employ and Retain A&G Realty Partners, LLC as Real Estate Consultant and Advisor for the Debtors Effective as of the Petition Date and (B) Waiving Certain Reporting Requirements* [D.I. 216] (the "Application"),[3] and in support of this Objection respectfully states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] Extended for the U.S. Trustee by consent of the Debtors to January 5, 2026 at 4:00 p.m.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

**PRELIMINARY STATEMENT**

1. The Court should deny the Application because A&G Realty Partners, LLC ("A&G," or the "Firm") cannot satisfy the standards for retention under section 327(a) of the Bankruptcy Code. That is because the Firm has actual conflicts of interest requiring disqualification and/or lacks disinterestedness.

2. Specifically, affiliates of the Firm's owners are landlords who lease to the Debtors thirty-six of the properties subject to A&G's proposed Services Agreement. A&G's interests in both sides of the proposed transactions with these landlords create an unavoidable conflict of interest and prevent A&G from holding an undivided loyalty to the Debtors' estates. Under applicable Third Circuit precedent, the Court must disqualify the Firm because it holds an actual conflict of interest.

3. Accordingly, and for the reasons set forth in more detail herein, the U.S. Trustee respectfully requests that the Court deny the Application.[4]

**JURISDICTION AND STANDING**

4. This Court has jurisdiction to hear and determine the Application and this Objection pursuant to: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and

---

[4] The U.S. Trustee provided other informal comments and objections to the Debtors, which the parties resolved via agreed changes to the proposed order approving A&G's retention. However, the parties did not resolve the issues regarding A&G's conflicts, necessitating the filing of this Objection. If the Court grants the Application (which the Court should not do for all the reasons articulated herein), the U.S. Trustee reserves all rights with respect to the form of order approving the Firm's retention.

interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. The U.S. Trustee has standing to be heard on the Application pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

**A.    The Chapter 11 Cases**

7. On November 22, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code," or "Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court"), thereby commencing their respective above-captioned chapter 11 cases (the "Chapter 11 Cases").

8. The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9. On December 4, 2025, pursuant to section 1102(a)(1) of the Bankruptcy Code, the U.S. Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"). D.I. 119.

10. As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **A&G's Affiliations with the Debtors' Landlords**

11.    A&G is a New York limited liability company. *Declaration of Emilio Amendola in Support of the Debtors' Application for Entry of an Order (A) Authorizing the Debtors to Employ and Retain A&G Realty Partners, LLC as Real Estate Consultant and Advisor for the Debtors Effective as of the Petition Date and (B) Waiving Certain Reporting Requirements* [D.I. 216-4] (the "Amendola Declaration," or "Amendola Decl."), ¶ 18(a).

12.    In the Amendola Declaration, Mr. Amendola states that A&G is a private entity "whose majority members are me and Emilio Amendola." *Id.* In response to inquiries from the U.S. Trustee, the Debtors clarified that Mr. Amendola and Andy Graiser (i.e., A&G's Co-Presidents) each hold a 50% membership interest in A&G Realty Management, LLC ("Management"). Management, in turn, holds a 65% membership interest in A&G.

13.    The Debtors further clarified that LI Realty Investments, LLC ("LI Realty") holds the remaining 35% membership interest in A&G. *Id.* (disclosing that LI Realty is a "minority member" in A&G).

14.    The Amendola Declaration discloses that Kimco Realty Services II, Inc. ("KRS") is a minority member of LI Realty. *Id.* In response to the U.S. Trustee's inquiries, the Debtors clarified that KRS holds a 33.3% membership interest in LI Realty. KRS is affiliated with Kimco Realty Corp. ("Kimco"). Kimco is one of the Debtors' landlords. *Id.* The Debtors disclosed that Kimco leases four properties to the Debtors.

15.    "Another minority member in LI Realty is SB Capital Group LLC." *Id.* at ¶ 18(b). In response to the U.S. Trustee's inquiries, the Debtors disclosed that "a Schottenstein entity" holds a 33.3% interest in LI Realty. Upon information and belief, that entity is SB Capital Group

4

LLC ("SB Capital").[5] SB Capital is affiliated with Schottenstein Property Group ("SPG") and Schottenstein Realty LLC ("Schottenstein Realty"). *Id.* Schottenstein Realty and other Schottenstein-owned "subsidiaries and affiliates," including SPG (all of the foregoing entities, collectively, the "Schottenstein Landlords"), "are the landlords for 32 of the Debtors' retail store locations."[6] *Id.*

16. The Amendola Declaration further provides that SB360 "holds a minority membership interest in a limited liability company that owns a minority stake in A&G." *Id.* at ¶ 18(c). This disclosure is consistent with the declaration of Robert A. Raskin that SB360 filed in support of the Debtors' motion to assume their prepetition consulting agreement with SB360. D.I. 116, ¶ 19(j) ("SB360 holds a minority membership interest in a limited liability company that owns a minority stake in A&G Realty Partners, LLC, which appears on the list of professionals."). In response to the U.S. Trustee's inquiries, the Debtors asserted that SB360 has no relationship to A&G other than the fact that SB360 is affiliated with SB Capital. Neither A&G nor SB360 has filed a supplemental declaration confirming the Debtors' contention.

**C.    The Application**

17. Through the Application, the Debtors seek to retain A&G as real estate consultant and advisor pursuant to the terms of the Services Agreement attached to the Application as Exhibit B. The Services Agreement is dated as of "November __, 2025." D.I. 216-3, ECF p. 3 of 19. It is unclear when exactly the Debtors and A&G executed the Services Agreement.

---

[5] The Debtors disclosed that the remaining 33.3% membership interest in LI Realty belongs to "a Tiger Capital entity."

[6] The Application is yet another example of the pervasive influence that the Schottenstein family seeks to wield over these Chapter 11 Cases.

18. The Services Agreement provides that the Debtors "desire[] to: (i) reduce or amend [their] obligations under the Leases by modifying the terms and conditions thereof or reduce risk and provide optionality under certain Leases; [and] (ii) obtain the right to terminate certain Leases prior to their expiration date." *Id.*

19. The Services Agreement further provides that "in the event of a Chapter 11 bankruptcy proceeding," the Debtors desire to "sell certain of the Leases (including designation rights)" and "obtain landlord consents for extensions of time to assume or reject certain Leases." *Id.*

20. Section 1 of the Services Agreement lists the services A&G will provide for the Debtors thereunder (collectively, the "Services"). *Id.* at § 1. These Services include, among other things, "negotiating with the Landlords of the Leases" on behalf of the Debtors to obtain "Lease Terminations,"[7] "Lease Modifications,"[8] and "Early Termination Rights,"[9] in each case on terms "acceptable to the [Debtors]." *Id.* at § 1(d)-(f). The Services also include, if requested by the Debtors, negotiating with the landlords "and other third parties" on behalf of the Debtors to obtain "Lease Sales"[10] and "Landlord Consents."[11] *Id.* at § 1(g)-(h). The Services are also described in paragraph 12 of the Application.

---

[7] "Lease Termination" means "the disposition, whether all or part, of a Lease through assignment, sublease, termination, or otherwise." D.I. 216-3, ECF p. 15 of 19.

[8] "Lease Modification" means "any alteration, amendment or modification to the terms and conditions of a Lease agreement as in effect as of the Agreement Date." D.I. 216-3, ECF pp. 14-15.

[9] "Early Termination Right" means "the tenant's exclusive right to terminate the Lease prior to the expiration date of the Lease." D.I. 216-3, ECF p. 14 of 19.

[10] "Lease Sale" means "the sale or assignment, whether all or part, of a Lease and includes the sale of designation rights." D.I. 216-3, ECF p. 15 of 19.

[11] "Landlord Consents" means "each consent obtained by A&G to extend the [Debtors'] time to assume or reject a lease as part of any applicable Chapter 11 case." D.I. 216-3, ECF p. 18 of 19.

21.     During the term of the Services Agreement, A&G "shall have the sole and exclusive authority to perform the Services for the Leases set forth on <u>Schedule A</u> and the Properties set forth on <u>Schedule B</u>" thereto. *Id.* at § 7. The Debtors failed to attach the schedules of leases and properties to the Services Agreement filed with the Application. On January 2, 2026 (after the general deadline to object to the Application and following comments from the U.S. Trustee), the Debtors filed a *Notice of Filing of Corrected Exhibit* [D.I. 291] providing that "the Application inadvertently omitted certain supporting schedules" and disclosing the Leases and Properties for the first time.

22.     In response to the U.S. Trustee's inquiries, the Debtors confirmed that all four of Kimco's leases and all thirty-two of the Schottenstein Landlords' leases are included in and subject to the Services Agreement.

**OBJECTION**

23.     Section 327(a) of the Bankruptcy Code authorizes a debtor to employ estate professionals "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a). Courts have interpreted the language "interest adverse to the estate" to mean:

> (i)     to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (ii)    to possess a predisposition under circumstances that render such a bias against the estate.

*See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (citations omitted); *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

24.     The United States Court of Appeals for the Third Circuit has neatly reduced conflicts analysis for attorneys proposed to be retained under section 327(a) to a basic set of

7

principles: actual conflicts of interest require disqualification; potential conflicts of interest may be disqualifying in the exercise of the Court's discretion; and the mere appearance of conflict, without more, is insufficient to disqualify counsel. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

25. In addition, the term "disinterested person" includes, among others, a person who "*does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders*, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C) (emphasis added). This provision, better known as the "catch-all" provision, "has been held broad enough to include anyone who in the slightest degree might have some interest or relationship that might faintly color the independence and impartial attitude required by the Code and the Bankruptcy Rules." *In re BH & P, Inc.*, 949 F.2d 1300, 1309 (3rd Cir. 1991) (cleaned up) (citation omitted).

26. Here, the Court should deny the Application because A&G holds or represents interests adverse to the Debtors or their estates and/or the Firm lacks disinterestedness.

27. The Debtors seek to retain A&G to negotiate agreements to "reduce or amend" their lease obligations, terminate leases and sell certain leases through a Court-approved sale process. The Application provides that "A&G's services are needed postpetition to continue assisting with negotiations with landlords and other third parties, to assist the Debtors in obtaining Lease modifications and other concessions, and to provide advice regarding Lease-related matters[.]" Appl., ¶ 45. The Debtors have a fiduciary duty to their estates and creditors to maximize the value to their estates in connection with these transactions. That duty fundamentally diverges from the interests of the landlords whose leases are covered by the Services Agreement.

28. Against that backdrop, the Debtors propose that A&G provide the Services in connection with the four Kimco leases and the thirty-two Schottenstein Landlord leases. But A&G is not disinterested with respect to these proposed transactions and does not hold an undivided loyalty to the Debtors' estates. That is because both Kimco and the Schottenstein Landlords are affiliated with one of A&G's owners, and A&G therefore has interests on both sides of the proposed transactions with these landlords. Put simply, A&G is disqualified from providing the Services with respect to these parties and holds an interest adverse to all classes of creditors other than Kimco and Schottenstein affiliates.

## RESERVATION OF RIGHTS

29. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights to, among other things: (i) amend or supplement this Objection; and (ii) conduct discovery.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order: (i) denying the Application; and (ii) granting such other and further relief as the Court deems just and equitable.

Dated: January 5, 2026                                 Respectfully submitted,

                                          **ANDREW R. VARA**
                                          **UNITED STATES TRUSTEE**
                                          **REGIONS 3 AND 9**

By: */s/ Malcolm M. Bates*
     Malcolm M. Bates
     Trial Attorney
     United States Department of Justice
     Office of the United States Trustee
     J. Caleb Boggs Federal Building
     844 N. King Street, Room 2207, Lockbox 35
     Wilmington, DE 19801
     Telephone: (302) 573-6491
     Email:  Malcolm.M.Bates@usdoj.gov

## CERTIFICATE OF SERVICE

    I, Malcolm M. Bates, hereby certify that on January 5, 2026, I caused to be served a copy of the foregoing Objection by electronic service on the registered parties via the Court's CM/ECF system and courtesy copies were served via email on parties in interest.

Dated: January 5, 2026                          */s/ Malcolm M. Bates*
                                                           Malcolm M. Bates