## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 14, 83, 257, 258** |

**DEBTORS' REPLY IN SUPPORT OF MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364, 503, 506, 507, AND 552, AND BANKRUPTCY RULES 2002, 4001, 6003, 6004, AND 9014 (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING (A) LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND (B) ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS, (III) MODIFYING AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (the "Reply") in further support of the *Motion of the Debtors for Entry of Interim and Final Orders Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors To (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 14] (the "Motion")[2] and in response to the objections to the Motion filed by:  (a) Broadstone AVF Michigan, LLC, Federal Realty OP LP, FR Montrose Crossing,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162).  The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

LLC, Lakeview Plaza (Orland), LLC, SCF RC Funding IV LLC, and STORE SPE AVFII 2017-2, LLC (collectively, the "Landlords") [Docket No. 257] (the "Landlords Objection"); and the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 258] (the "Committee Objection" and together with the Landlords Objection, the "Objections"). In support of this Reply, the Debtors respectfully state as follows:

### Preliminary Statement

1.      The Debtors remain willing to work with the Committee and the Landlords to resolve any outstanding issues in connection with the proposed DIP Facility. However, for the reasons set forth herein, the Debtors submit that the Objections should be overruled to the extent that any issues raised therein are not resolved consensually, and that the Court should enter a final order granting the Motion, substantially in the form to be filed prior to the hearing (the "Final DIP Order").

2.      The Debtors believe, in the sound exercise of their business judgment, that there will be sufficient funds to pay allowed administrative expense claims in these cases in full in accordance with the Approved Budget.

3.      In addition, the Debtors expect that the Final DIP Order will contain provisions resolving certain of the issues raised in the Objections, including (a) the Landlord Protections (as defined in the Landlords Objection), (b) a reserve for projected stub rent and section 503(b)(9) claims and corresponding limitations on surcharge waivers pending payment of such claims in full, and (c) language requiring the lenders to marshal away from certain previously unencumbered assets.

4.      Further, heightened scrutiny does not apply to the Debtors' decision regarding the proposed DIP Facility, as that decision was approved by the Debtors' independent Conflicts Committee and Co-CRO without influence from any insiders.

5.      Other provisions of the proposed financing that are discussed in the Objections are appropriate and customary for cases of this type and in this district.  Such provisions include the section 506(c) waiver (subject to payment of stub rent and 503(b)(9) claims), "equities of the case" exception, marshaling provisions, DIP Roll-Up Obligations, releases, and lender fees.[3]

6.      For these reasons and the other reasons set forth in this Reply, the Debtors respectfully request that the Court overrule the Objections and approve the Motion.

## Reply

### A.      The DIP Budget is Sufficient to Pay All Administrative Expenses in Full

7.      The Committee and the Landlords assert that there is a material risk of administrative insolvency in these cases.  *See* Committee Objection ¶¶ 23–27; Landlords Objection ¶ 10.  In addition, the Landlords maintain that the Landlord Protections (as defined in

---

[3]    The Committee Objection asserts that the Committee is currently investigating, among other issues, potential claims arising from the approximately $48.9 million paid to Jay Schottenstein and other Schottenstein affiliates in the one-year period prior to the Petition Date.  The source of the figure cited in the Committee Objection is unclear, but the vast majority of the approximately $55.9 million of payments made to insiders set forth in the Debtors' Statement of Financial Affairs constitute payments in the ordinary course of wages, rent and related expenses and the costs of acquiring merchandise, as well as repayments of short-term loans and payments under the consulting agreement for the store closing sales.  Approximately $5.5 million of such prepetition payments were essentially a pass-through of payroll obligations of non-Debtor affiliates, with funding for such payments provided by such non-Debtor affiliates (subject to charges for the costs of services provided by the applicable employees to the Debtors).  An additional $5.7 million of such payments were simply payroll of Debtor employees.  Approximately $21.2 million of such payments were for ordinary course rent and related expenses under leases of the properties used by the Debtors.  Approximately $5.6 million consists of ordinary course payments in respect of inventory acquisition under various consignment and purchase arrangements, while approximately $1.0 million is for services and expenses under the store closing consulting agreement.  The final approximately $16.9 million of such payments was applied to repay short-term loans to the Debtors made by non-Debtor affiliates, of which approximately $23.5 million in aggregate principal amount of such loans were made to the Debtors in the year immediately preceding the Petition Date.  Approximately $25 million in aggregate principal amount of intercompany loans extended to the Debtors by non-Debtor affiliates remains outstanding.  As such, the payments referenced in the Committee Objection were almost entirely ordinary course expenses of operating the Debtors' business.

the Landlords Objection) should be included in the Final DIP Order.  *See* Landlords Objection ¶¶ 14–17.

8.    The Debtors believe, in the sound exercise of their business judgment, that the Approved Budget is sufficient to pay allowed administrative expense claims in full.  Notably, a guarantee of full satisfaction of administrative expenses is not a statutory requirement for approval of the proposed DIP Facility.  *See, e.g*, *In re NE OpCo, Inc.*, No 13-11483 (CSS) (Bankr. D. Del. July 19, 2013) [Docket No. 184] (Hr'g Tr. at 99:10–13, 103:4–8) (approving a DIP facility on the grounds that "it [was] more likely than not" that administrative expense claims would be paid in full); *In re Cent. Grocers, Inc.*, No. 17-10993 (LSS) (Bankr. D. Del. June 2, 2017) [Docket No. 343] (Hr'g Tr. at 90) (finding that, in approving a DIP facility, the Court did not require that section 503(b)(9) claims be paid as part of the DIP budget, noting that "the evidence is that the [DIP financing] is necessary for this debtor to be able to operate while it . . . seeks approval of a sale on a process that I have just approved . . . and therefore the best way to maximize the possibility that 503(b)(9) claims will, in fact, be paid, whether that is through assumption of certain trade debt, which is contemplated in the sale process, or in another fashion"); *In re AFA Inv. Inc.*, No. 12-11127 (MFW) (Bankr. D. Del. July 12, 2012) [Docket No. 485] (Hr'g Tr. at 46:3–6) ("[N]otwithstanding the 503(b)(9) issue that remains [, i.e., the fact that all administrative claims may not be paid in full,] I think that [the first lien lenders] have paid the freight here, they did lend in an uncertain circumstance, and by lending as the DIP lender they allowed the sale of the Debtors as going concerns . . . .").

9.    The Court and the Debtors have discretion in determining when administrative expense claims are paid.  *See, e.g.*, *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (finding that the timing of payment of an administrative claim is left to the Court's

discretion); *see also In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 617 (Bankr. D. Del. 2008), *aff'd*, 401 B.R. 656 (D. Del. 2009), *aff'd*, 610 F.3d 812 (3d Cir. 2010) ("[A] debtor's decision as to the timing of the payment of claims is generally inside the ordinary course of the debtor's business."); *In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 Bankr. LEXIS 3608, at *9 (Bankr. D. Del. Dec. 21, 2006) ("Section 503 does not specify a time for payment of [administrative] expenses but administrative expenses must be paid in full on the effective date of the plan").

10.     The question is whether the debtor can show some probability that administrative expense claims will be paid.  *See, e.g.*, *In re NEC Holdings Corp.*, No. 10-11890 (CSS) (Bankr. D. Del. July 13, 2010) [Docket No. 224] (Hr'g Tr. at 100:12–101:3).  In *NEC Holdings*, the Court stated at a DIP financing hearing that:

> [T]he lender is not a guarantor of the 503(b)(9) or any other admin claims, and neither is the debtor. . . .  I generally have held in the past that you can run a case for the benefit of a secured creditor.  It's the crime of having collateral that some people seem to say that they can't.  They've got to pay the freight, and the freight is, at least -- the freight is not necessarily a tip to the unsecureds, but the freight is certainly an administratively solvent estate.  And while there's not a guarantee, there has to be something other than a wing and a prayer on the payment of the admin claims.  And counsel very honestly and appropriately answered the question that at least it's unclear, as we stand here, and it's quite unclear whether 503(b)(9) claims would be paid.  It doesn't need to be in the DIP budget, necessarily, but there has to be something -- and again, not a guarantee, but something, some evidence that there's a possibility -- probability that they'll be paid.

11.     Notwithstanding the foregoing precedent, as will be reflected in the Final DIP Order, the Debtors expect to set aside a reserve for projected postpetition stub rent and section 503(b)(9) administrative claims, at least in part, upon the closing of the pending proposed sale. The Debtors also expect that the DIP Lenders will agree to limit any surcharge waiver until allowed stub rent and 503(b)(9) claims against the Debtors have been paid in full.

12.     In addition, the current Landlord Protections, as set forth in the Interim DIP Order, will remain in the Final DIP Order.

**B.    Heightened Scrutiny Does Not Apply**

13.     The Committee asserts that the proposed DIP Facility should be subjected to heightened scrutiny.  *See* Committee Objection ¶ 28.

14.     The Debtors' independent Conflicts Committee and Co-CRO have approved the Debtors' decision with respect to the proposed DIP Facility, and thus the financing is not subject to any sort of heightened scrutiny.  *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (emphasis added) ("[T]he business judgment rule governs unless the opposing party can show one of four elements:  (1) the directors did not in fact make a decision, (2) the directors' decision was uniformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent.").

**C.    The Proposed Provisions of the DIP Facility are Appropriate**

15.     For the reasons set forth below, the provisions of the DIP Facility and related DIP Lender protections, including the section 506(c) waiver, the "equities of the case" exception waiver, the provisions regarding marshaling, the DIP Roll-Up Obligations, the releases, and the lender fees, are appropriate and customary.

16.     The Committee and the Landlords object to the proposed section 506(c) waiver and provisions regarding marshaling and the "equities of the case" waiver.  *See* Landlords Objection ¶¶ 36–40; Committee Objection ¶¶ 28–33, 38.

17.     These provisions are standard provisions in DIP financing orders in this district. For example, waivers of section 506(c) surcharge rights and "equities of the case" waivers are routinely granted in connection with DIP financings in this district.  *See, e.g.*, *In re Allegiance Coal USA Ltd.*, No. 23-10234 (CTG) (Bankr. D. Del. May 16, 2023) (approving waivers of section

506(a) claims, section 552(b) "equities of the case" claims, and the equitable doctrine of marshaling under a DIP facility that included a roll-up of the lenders' prepetition debt); *In re First Guar. Mortg. Corp.*, No. 22-10584 (CTG) (Bankr. D. Del. Aug. 4, 2022) (same); *In re Permian Holdco 1, Inc.*, No. 20-11822 (MFW) (Bankr. D. Del. Sept. 23, 2020) (same); *In re MUJI U.S.A. Ltd.*, No. 20-11805 (MFW) (Bankr. D. Del. Aug. 11, 2020) (same); *In re Ne. Gas Generation, LLC*, No. 20-11597 (MFW) (Bankr. D. Del. July 17, 2020) (same); *In re John Varvatos Enters., Inc.*, No. 20-11043 (MFW) (Bankr. D. Del. June 9, 2020) (same).

18.     Nonetheless, as noted above, the Debtors expect that the Final DIP Order will provide for the Debtors to set aside certain cash for the benefit of holders of administrative expense claims based on stub rent and section 503(b)(9) claims.

19.     The Debtors also expect that the Final DIP Order will contain language with respect to marshaling substantially in the following form:  "None of the DIP Credit Parties or the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral; *provided, however*, that notwithstanding anything herein or in the DIP Documents to the contrary, the DIP Credit Parties and the Prepetition Secured Creditors shall use reasonable efforts to satisfy their applicable DIP Liens, Adequate Protection Liens and Adequate Protection Claims granted by this Final Order, from proceeds of the DIP Collateral other than:  (i) Avoidance Actions; (ii) Avoidance Proceeds; and (iii) commercial tort claims, before satisfying such liens and claims from the assets in the foregoing (i)–(iii)."  *See* Final DIP Order at ¶ 35 (to be filed).

20.     The proposed Roll-Up Obligations are standard for DIP financing facilities in cases of this type, especially for asset-based revolver facilities.  In addition, the Creeping Roll-Up was approved through the *Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364,*

*503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing*

*Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting*

*(A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection*

*to Prepetition Secured Creditors, (III) Modifying Automatic Stay, (IV) Scheduling a Final*

*Hearing, and (V) Granting Related Relief* [Docket No. 83] (the "<u>Interim DIP Order</u>"), with

approval of the Full Roll-Up remaining subject to entry of a final order.  *See* Interim DIP Order ¶ 3.

21.  Likewise, the proposed lender releases, and liens on lender claims against

themselves, are standard provisions.  In any event, such provisions are subject to challenge rights.

Moreover, the sale of estate claims, and issues regarding potential avoidance actions against the

lenders, are ultimately sale issues that should be addressed at a later time.  The Debtors also expect

that the Final DIP Order will contain a clarification that nothing therein will release: "(i) claims

against the directors and officers of the Debtors based on alleged breaches of their fiduciary duties

to the Debtors; (ii) Avoidance Actions against parties other than the DIP Credit Parties, Prepetition

ABL Secured Parties, the Lender Service Parties (as defined in the DIP Credit Agreement) and/or

Prepetition Term Loan Secured Parties; and (iii) claims to subordinate or recharacterize purported

debt or claims held by parties other than the DIP Credit Parties, Prepetition ABL Secured Parties,

the Lender Service Parties (as defined in the DIP Credit Agreement) and/or Prepetition Term Loan

Secured Parties."  *See* Final DIP Order at Recital F(x) (to be filed).  Any such claims, if they exist,

will be fully preserved for the benefit of the Debtors' estates for purposes of the Final DIP Order.

22.  All of the proposed lender fees under the DIP Facility are market, and such fees

were approved through the Interim DIP Order.  *See* Interim DIP Order ¶¶ 3, 12.

23.  The Debtors remain willing and able to work with the Committee, the Landlords,

and the DIP Lenders to resolve any outstanding issues, including but not limited to the

Committee's professional fee carve-out (which fees will be increased substantially above the $1 million in the initial budget) and investigation budget (which will be increased from $50,000 to at least $150,000).

24.    For all of the foregoing reasons and the reasons set forth in the Motion and at the hearing, the DIP Facility on the terms set forth in the proposed Final DIP Order are appropriate, and the Court should overrule the Objections and enter the proposed Final DIP Order.


Dated:  January 5, 2026                    **PACHULSKI STANG ZIEHL & JONES LLP**

                                           */s/ Laura Davis Jones*
                                           Laura Davis Jones (DE Bar No. 2436)
                                           David M. Bertenthal (CA Bar No. 167624)
                                           919 North Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, Delaware 19899-8705 (Courier 19801)
                                           Telephone:  302-652-4100
                                           Facsimile:  302-652-4400
                                           Email: ljones@pszjlaw.com
                                                   dbertenthal@pszjlaw.com

                                           *Proposed Counsel for the*
                                           *Debtors and Debtors in Possession*