# EXHIBIT 8

**SIXTH AMENDMENT TO PRIVATE LABEL**
**CONSUMER CREDIT CARD PROGRAM AGREEMENT**
*(American Signature Furniture)*

This Sixth Amendment to Private Label Consumer Credit Card Program Agreement (this "Amendment" or "Sixth Amendment") is between Synchrony Bank ("Bank") and American Signature, Inc. ("Retailer"), is made as of November 1, 2021 and amends the Private Label Consumer Credit Card Program Agreement made as of December 12, 2012 (as amended, modified and supplemented from time to time, the "Agreement").  Capitalized terms used herein and not otherwise defined have the meanings given them in the Agreement.

WHEREAS, Bank and Retailer desire to amend the Agreement to extend the term of the Agreement and to address certain other issues set forth below.

NOW, THEREFORE, in consideration of the mutual promises and subject to the terms and conditions hereinafter set forth, the parties hereby agree as follows:

## I.   AMENDMENTS TO THE AGREEMENT

**1.1   Amendment to Section 3.6**.  Section 3.6 is hereby amended by replacing reference to "Twelve Month LIBOR" and "Base Twelve Month LIBOR" with "Cost of Funds Index" and "Base Cost of Funds Index," respectively.

In addition, the following is added to the end of Section 3.6:  Notwithstanding the foregoing, Bank will not increase the Promotional Rate for the 6 Month With Pay Deferred Interest Promotion under this Section 3.6 until the Cost of Funds Index equals or exceeds 1.57%.

**1.2   Amendment to Section 4.5.**  Effective for the Program Year beginning November 1, 2021, Section 4.5 is hereby deleted in its entirety and replaced with the following:

**4.5   Volume Discount.**  Provided that Retailer is not in material breach of the Agreement and the breach has not been cured, Bank will pay to Retailer, within thirty (30) days after the end of each Program Year, beginning with the Program Year that begins on November 1, 2021, an amount (a "Volume Discount") equal to (a) the Net Program Sales for the previous Program Year, multiplied by (b) the Multiplier determined in accordance with the following table based on the Net Program Sales for the previous Program Year:



If any Program Year (such as the Program Year ending on October 31, 2021 and the last Program Year) is less than 12 months, the thresholds in the first column in the table above will be pro-rated in proportion to the duration of such Program Year (for example, if the last Program Year is only 8 months, the thresholds will be multiplied by 0.667). For sake of clarity, all volume on Installment Accounts will not be included in the calculation of Volume Discount (but will count for the thresholds).  Volume Discount for the Program Year that began on April 1, 2021 and ending on October 31, 2021 will be based on the version of Section 4.5 that was in effect prior to November 1, 2021 and the thresholds will be pro-rated by 7/12 to account for the shortened Program Year).

**1.3    Addition of New Section 4.6.**  The following New Section 4.6 is hereby added to the Agreement:

**4.6    Sixth Amendment Extension Bonus.**

(a)   As an incentive for Retailer to enter into the Sixth Amendment, Bank will pay to Retailer an extension bonus in an amount of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the "Sixth Amendment Extension Bonus") within 30 days after each party executes the Sixth Amendment.

(b)  Upon a Repayment Event, Retailer will pay to Bank, within ten (10) business days after the effective date of such Repayment Event, the Unamortized Sixth Amendment Extension Bonus.  "Unamortized Sixth Amendment Extension Bonus" means, on the date of a Repayment Event, an amount, not to exceed the amount of the Sixth Amendment Extension Bonus actually paid, equal to (xx) one-thirty-third (1/33) of the Sixth Amendment Extension Bonus, multiplied by (yy) the number of months, rounded up to the next integer (not to exceed 33), remaining before June 30, 2026."  "Repayment Event" means the Agreement is terminated prior to June 30, 2026 (other than as a result of a termination resulting from a breach by Bank)."

**1.4    Amendment to Section 5.2(a)**.  Effective for the Program Year beginning on November 1, 2021, Section 5.2(a) is hereby deleted in its entirety and replaced with the following:

(a)       During the Term, Bank will allocate to a record maintained on the books of Bank (such record is referred to herein as the "Marketing Fund") 15 basis points (0.15%) of the immediately prior Program Year's Net Program Sales.  The foregoing notwithstanding, (1) the contribution made for the Program Year beginning November 1, 2021 will be based on the Net Program Sales for the period November 1, 2020 through October 31, 2021 minus $71,429 (five-twelfths of the $250,000 allocation made to the Marketing Fund in April 2021); and (2) the contribution made for the last Program Year will be pro-rated based on the number of months remaining in the Term (e.g., if the last Program Year runs from November 1, 2025 to June 30, 2026, the amount allocated to the Marketing Fund will be based on Net Program Sales for the period November 1, 2024 to June 30, 2025).

**1.5    Amendment to Section 6.7(a).**  Section 6.7(a) is hereby deleted in its entirety and replaced with the following:

2

(a)      Retailer will, as soon as practicable, but in any event not more than one hundred fifty (150) days after the end of each fiscal year, deliver to Bank its audited annual financial statements, including its audited consolidated balance sheet, income statement and statement of cash flows and financial position. In addition, Retailer will deliver to Bank within sixty (60) days after the end of each of its fiscal quarters, its unaudited quarterly financial statements, including its unaudited consolidated balance sheet, income statement and statement of cash flows and financial position. Without limiting the foregoing, the financial statements de1ivered by Retailer under this Section 6.7(a) shall contain all information necessary for Bank to independently calculate Retailer's compliance with the financial covenants set forth on Appendix D.

**1.6      Amendment to Section 9.1.**  Section 9.1 is hereby deleted in its entirety and replaced with the following:

**9.1 Program Term.** This Agreement shall continue through the end of the day on June 30, 2026 (the "Initial Term"), and shall automatically renew for additional one (1) year terms (each such period, a "Renewal Term", and all such Renewal Terms, if any, collectively with the Initial Term, the "Term"), unless either party shall give written notice to the other party at least 180 days prior to the end of the scheduled expiration of the end of the Initial Term or the then-current Renewal Term of its intention to terminate the Program, in which case this Agreement shall terminate as of the end of the Initial Term or the then-current Renewal Term, as applicable.

**1.7      Amendments to Appendix A.**

**a)**      The definition of "Program Year" is hereby deleted in its entirety and replaced with the following:

"Program Year" means each twelve month beginning on November 1 of a year and ending on October 31 of the following year.

**b)**      The definition of "Base Twelve Month LIBOR" is hereby deleted in its entirety and replaced with the following definition for "Base Cost of Funds Index:

"Base Cost of Funds Index" means 0.07% (7 basis points).

**c)**      The definition of "Twelve Month LIBOR" is hereby deleted in its entirety and replaced with the following definition for "Cost of Funds Index:

"Cost of Funds Index" means, for any date, the U.S. Treasury Securities at 1-Year Constant Maturity ("1-Year Treasuries") that are in effect as of the date, as published by the Board of Governors of the Federal Reserve System (US) at:  https://www.federalreserve.gov/releases/h15/ (or if the Board of Governors of the Federal Reserve System (US) ceases to publish the rates on its website in a reliable manner, at another website or publication as Bank may reasonably designate).  If during the Term the 1-Year Treasuries (or any replacement Cost of Funds Index) ceases to be

3

reported, or Bank reasonably determines that the 1-Year Treasuries (or any replacement Cost of Funds Index) is no longer, or will no longer be, a reliable benchmark, then Bank, in its reasonable discretion, may designate an industry-accepted replacement rate (and the medium for the publishing of the replacement rate) and an appropriate base to replace the Base Cost of Funds Index, each as adjusted as necessary to align the replacement index and base to the greatest degree practicable with the index and base being replaced.

**1.8    Amendment to Schedule 3.5.**  Effective as of November 1, 2021, Schedule 3.5 is deleted and replaced with new Schedule 3.5 attached hereto as Attachment 1.  Within  30 days after the execution of the Sixth Amendment, Bank will pay Retailer any amounts owed due to backdating of changes in the Promotional Rates.

## II. GENERAL

**2.1    Authority for Amendment.**  Retailer represents and warrants to Bank that the execution, delivery and performance of this Amendment has been duly authorized by all requisite corporate action on the part of Retailer and upon execution by all parties, will constitute a legal, binding obligation of Retailer. Bank represents and warrants to Retailer that the execution, delivery and performance of this Amendment has been duly authorized by all requisite corporate action on the part of Bank and upon execution by all parties, will constitute a legal, binding obligation of Bank.

**2.2    Effect of Amendment.**  Except as specifically amended hereby, the Agreement, and all terms contained therein, remains in full force and effect.  The Agreement, as amended by this Amendment, constitutes the entire understanding of the parties with respect to the subject matter hereof.

**2.3    Binding Effect; Severability.**  Each reference herein to a party hereto shall be deemed to include its successors and assigns, all of whom shall be bound by this Amendment and in whose favor the provisions of this Amendment shall inure.  In case any one or more of the provisions contained in this Amendment shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

**2.4    Further Assurances.**  The parties hereto agree to execute such other documents and instruments and to do such other and further things as may be necessary or desirable for the execution and implementation of this Amendment and the consummation of the transactions contemplated hereby and thereby.

**2.5    Governing Law.**  This Amendment shall be governed by and construed in accordance with the laws of the State of Utah, without regard to principles of conflicts of laws.

**3.6    Counterparts.**  This Amendment may be executed in counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one agreement.

4

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their duly authorized officers, all as of the day and year first above written.

**AMERICAN SIGNATURE, INC.**                    **SYNCHRONY BANK**

By: Eric Jackson (Nov 9, 2021 17:03 EST)        By: Anthony S. Foster (Nov 10, 2021 05:43 EST)

Name: Eric Jackson                              Name: Anthony S. Foster

Title: CFO                                      Title: SVP

5

Attachment 1 to Sixth Amendment

**SCHEDULE 3.5**
**To**
**Credit Card Program Agreement**

**Program Fee Percentages**

**A.**   **"Core Credit Offer" or Base Rate**: 0%

**B.**   **Promotional Rates**



The Retailer Promotion Fee Percentages set forth in the table above are subject to revision as set forth in Sections 3.5(b), 3.5(e) and 3.6.

6