**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) | Case No. 25-12105 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**SUMMARY OF FIRST AND FINAL FEE APPLICATION OF A&G REALTY PARTNERS, LLC FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD NOVEMBER 22, 2025 THROUGH FEBRUARY 11, 2026**

| | |
|---|---|
| **Name of Applicant:** | **A&G Realty Partners, LLC** |
| Authorized to provide professional services to: | The above-captioned debtors and debtors-in-possession |
| Date of retention: | Order entered on January 8, 2026, effective to November 22, 2025 |
| Period for which compensation and reimbursement is sought: | November 22, 2025, through February 11, 2026 |
| Amount of compensation sought as actual, reasonable and necessary: | $414,265.25 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $ 14,947.00 |
| Type of fee statement or application: | First and Final Fee Application |

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | ) | Case No. 25-12105 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**FIRST AND FINAL FEE APPLICATION OF A&G REALTY PARTNERS, LLC FOR COMPENSATION FOR SERVICES RENDERED AND EXPENSES INCURRED AS REAL ESTATE CONSULTANT AND ADVISOR TO THE DEBTORS FOR THE PERIOD FROM NOVEMBER 22, 2025 THROUGH FEBRUARY 11, 2026**

Pursuant to sections 327 and 328 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), A&G Realty Partners, LLC ("A&G") hereby submits this first and final fee application (the "Final Fee Application") as real estate consultant and advisor for the above captioned debtors and debtors in possession (collectively, the "Debtors"), seeking final approval and payment of professional fees in the amount of $414,265.25 for professional services rendered and reimbursement of out-of-pocket expenses in the amount of $14,947.00 during the period November 22, 2025 through February 11, 2026 (the "Compensation Period"),[2] for a total final fee award of $429,212.25. In support of this Final Fee Application, A&G

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] February 11, 2026, is the date of the Lease Termination Agreement for real property located at 2530-2536 North Elston Avenue, Chicago Illinois 60647, the last Service rendered by A&G on the Debtors' behalf.

submits the Declaration of Emilio Amendola attached hereto as Exhibit A and further represents as follows:

## BACKGROUND

1. On November 22, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 25, 2025, the Court entered an order [Docket No. 72] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On December 4, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 119].

2. As of the Petition Date, Debtor American Signature, Inc., together with its subsidiaries, was a residential furniture company operating across its Value City Furniture and American Signature Furniture brands and served as a customer destination for furniture style, quality, and value. The Debtors operated more than 120 stores across 17 states, with the largest concentrations in Ohio (20), Michigan (16), and Illinois (11). The factual background regarding the Debtors, including their business operations and the events precipitating their chapter 11 filings, is set forth in detail in the Declaration of Rudolph Morando in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 5].

3. On November 26, 2025, the Debtors filed the Motion of the Debtors for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into (I) Stalking Horse Asset Purchase Agreement and (II) Stalking Horse Agency Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner

of Notice Thereof; (II)(A) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief [Docket No. 108] (the "Sale Motion").

4. On February 6, 2026, the Court entered the order approving the sale of certain of the Debtors' assets to ASI Purchaser LLC (the "Stalking Horse Bidder") [Docket No. 520].

**RETENTION OF A&G REALTY PARTNERS, LLC**

5. In consideration of the various landlord issues that arose before the Petition Date and that would during the pendency of these chapter 11 cases, the Debtors determined, in consultation with their advisors and in the exercise of their business judgment, that the services of experienced real estate consultants would substantially enhance their attempts to maximize the value of their estates.

6. The Debtors chose to retain A&G as their real estate consultant and advisor due to A&G's experience and knowledge of the real estate market, business reputation, and experience in providing services regarding the disposition of distressed real property assets, both in and out of chapter 11 cases. A&G evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate. The Debtors believed that, as a diversified real estate consulting and advisory firm, A&G was amply qualified to provide the services required by the Debtors during these chapter 11 cases.

7. Thus, on December 17, 2025, the Debtors filed their *Application for Entry of an Order (A) Authorizing The Debtors to Retain and Employ A&G Realty Partners, LLC, as Real Estate Consultant and Advisor Effective as of the Petition Date and (B) Waiving Certain Reporting Requirements* [Docket No. 216] (the "Retention Application").

8. In the Retention Application, the Debtors requested approval from this Court to (a) approve the parties real estate services agreement dated November 2025 (the "Services Agreement") and (b) to retain and employ A&G to: (i) consult with the Debtors regarding their goals, objectives and financial parameters in relation to certain of the Leases; (ii) market the Leases designated by the Debtors for sale (the "Lease Sales") in a manner and form determined between A&G and the Debtors and assist the Debtors with Lease Sales; and (iii) provide periodic update reports to the Debtors regarding the status of the Services or more frequently as may be requested by the Debtors.[3]

9. In the Retention Application, the Debtors also requested approval to compensate A&G in accordance with the terms set forth in the Services Agreement. Pursuant to the Services Agreement, the Debtors and A&G agreed that A&G would be paid as follows for the Services, as that term is defined in the Services Agreement (the "Fee Structure"):

a) Retainer. The Company shall pay A&G a retainer (the "Retainer") in the amount of one hundred thousand dollars ($100,000) upon execution of the Services Agreement. A&G may, but shall not be required to, apply to the Retainer against invoices issued by A&G to the Company. The Company shall replenish the Retainer to the extent applied within five (5) business days of the date of the invoice. Furthermore, to the extent any invoice exceeds the amount of any Retainer applied, in addition to replenishing the Retainer, the Company shall pay the difference between the invoice amount and the Retainer to A&G within five (5) business days of the date of the invoice.

b) Lease Sales. For each Lease Sale obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee in the amount of three percent (3%) of the Gross Proceeds, with a minimum fee of seven hundred fifty dollars ($750) per Lease.

c) Property Sales. For each Property Sale obtained by A&G on behalf of the Company to an entity unaffiliated with the Schottenstein Property Group ("SGP"), A&G shall earn and be paid a fee of three percent (3%) of the Gross Proceeds thereof. For each Property Sale obtained by A&G on behalf of the

[3] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Retention Application and the Services Agreement, as the case may be.

> Company to an entity affiliated with SGP (an "SGP Entity"), A&G shall earn and be paid a minimum fee of $350,000 (the "Minimum Sale Fee"), *provided, however*, in the event an SGP Entity is the "stalking horse" bidder of any Property or Properties (the "Stalking Horse Bid"), competitive bidding against the Stalking Horse Bid ensues and the SGP Entity emerges as the successful bidder for the Property or Properties (the "Successful Bid"), A&G shall earn and be paid a fee in the amount of the Minimum Sa1e Fee plus three percent (3%) of the difference between the Gross Proceeds set forth in the Stalking Horse Bid and the Gross Proceeds set forth in the Successful Bid.

10. Additionally, the Services Agreement provided that the Debtors shall reimburse A&G for its reasonable out-of-pocket expenses incurred in connection with its retention and performance of Service.

11. On January 8, 2026, the Court entered an order granting the Retention Application, as revised [Docket No. 356] (the "A&G Retention Order").

12. Pursuant to the A&G Retention Order and in accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, the Debtors were authorized by this Court to retain and employ A&G as their real estate advisor and consultant effective to the Petition Date on the terms and conditions set forth in the Retention Application and the Services Agreement, as revised in the A&G Retention Order, and in accordance with the Fee Structure, except as provided otherwise by the A&G Retention Order.

13. The A&G Retention Order stated that A&G's compensation as set forth in the Services Agreement for Lease Sales and Property Sales was approved pursuant to section 328(a) of the Bankruptcy Code. The A&G Retention Order further stated that A&G will be compensated one hundred percent (100%) of the amount due upon submission of an acceptable invoice to the Debtors for all Services (other than any Additional Services) and expenses incurred in connection therewith. The A&G Retention Order further provided that upon completion of the Services, A&G will file a final fee application for review by the Court and parties in interest pursuant to section

328(a) of the Bankruptcy Code, except as to the United States Trustee, who retained the right to object to the final fee application on all grounds including section 330 of the Bankruptcy Code.

14. Accordingly, in compliance with the A&G Retention Order, A&G hereby submits this Final Fee Application.

**RELIEF REQUESTED**

15. Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

16. During the Compensation Period, A&G performed significant services on behalf of the Debtors including, but not limited to, extensive marketing of the Debtors' fee owned real property (the "Properties") and unexpired commercial real property leases (the "Leases"), negotiations with prospective purchasers and Landlords, and assisting the Debtors and counsel with the closing on 12 Lease Sales. Regarding the extensive marketing campaign:

(i) A&G sent to over 1,800 recipients an email blast of custom flyers, which showcased the approximately 120 Leases available for termination and assignment as well as five fee owned Properties. These marketing materials were constantly updated as Leases were rejected, assigned, or terminated;

(ii) A&G issued two press releases publicly showcasing the opportunity available. The press release provided direct contact information to the A&G team to field inquiries about the Leases and Properties; and

(iii) Of the 1,800 initial recipients, A&G directly engaged with 146 interested parties. This engagement involved sending Leases of interest, educating potential bidders on the process, and negotiating with bidders to get the best offer.

17. A&G's services often were performed under severe time constraints (the marketing period lasted three months) and were necessary to address a multitude of critical issues unique to

these chapter 11 cases. The detail of each Service and resulting benefit to the Debtors is set forth in detail in the invoices sent to the Debtors attached as Exhibit B.

18. A&G's efforts resulted in Gross Proceeds of $2,142,175.00 for the Lease Sales. Additionally, despite A&G's best marketing attempts, the bids for the Properties which A&G received did not surpass the total consideration to be paid by the Stalking Horse Bidder; therefore, pursuant to the Services Agreement and Retention Order, A&G is entitled to the Minimum Sale Fee of $350,000.

19. Consequently, pursuant to this Final Fee Application and in accordance with the Fee Structure set forth in the Services Agreement, A&G seeks final allowance of fees in the total amount of $414,265.25 for Services rendered, and reimbursement of out-of-pocket expenses incurred in the amount of $14,947.00, on behalf of the Debtors during the Compensation Period, for a total final fee award of $429,212.25. A&G also requests approval of its application of the Retainer against the invoices attached as Exhibit B.

20. The fees charged by A&G have been billed in accordance with the Services Agreement, the Retention Application and the A&G Retention Order and are reasonable in light of, among other things, (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) complexity, importance and nature of the problems, issues and/or tasks involved, and (d) A&G's substantial experience with respect to real estate consulting and advisory services. A&G further respectfully submits that the fees sought herein are reasonable based upon the customary compensation charged by similarly skilled professionals in comparable bankruptcy cases and non-bankruptcy matters in the competitive real estate market.

21. A&G has received no payment and no promises for payment from any source other than the Debtors for services rendered during the Compensation Period in connection with the

Debtors' chapter 11 cases. There exists no agreement or understanding between A&G and any other person for the sharing of any compensation to be received for services rendered by A&G in the Debtors' chapter 11 cases.

22. All services for which compensation is requested by A&G pursuant to this Final Fee Application were performed for or on behalf of the Debtors in these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 30, 2026

*/s/ Emilio Amendola*
EMILIO AMENDOLA
Co-President
A&G Realty Partners, LLC