**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*, [1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: April 9, 2026 at 4:00 p.m. ET**<br>**Hearing Date: April 16, 2026 at 10:00 a.m. ET** |

**MOTION OF 3080 & 3232 ALUM CREEK DRIVE LLC FOR ENTRY OF AN
ORDER COMPELLING THE DEBTORS' IMMEDIATE PAYMENT
OF POST-PETITION LEASE OBLIGATIONS**

3080 & 3232 Alum Creek Drive LLC (the "Landlord"), by and through its undersigned

counsel, files this motion (the "Motion") for entry of an order, in the form attached hereto as

**Exhibit A** (the "Proposed Order"), compelling Debtor American Signature, Inc. to pay post-

petition rent obligations due and payable under the Lease in accordance with 11 U.S.C.

§§ 365(d)(3) and 503(b)(1) within two business days of the entry of such order.  In support of the

Motion, Landlord states as follows:

**I.      JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

4.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 365(d)(3) and 503(b)(1).

## II.      BACKGROUND FACTS

### A.  The Lease.

5.      On November 22, 2025 ("Petition Date"), American Signature, Inc. and certain of its debtor affiliates (collectively, the "Debtors") filed voluntary petitions (the "Chapter 11 Cases") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has been appointed in these Chapter 11 Cases.[2]

6.      The Debtor American Signature, Inc. ("ASI") leases approximately 604,800 square feet of warehouse space located at 3080 and 3232 Alum Creek Drive, Columbus, Ohio 43207 (the "Premises") from Landlord pursuant to an unexpired lease of nonresidential real property dated August 20, 2025 (as may have been amended, extended, supplemented or modified from time to time, the "Lease").

7.      Among other things, the Lease requires ASI to pay a minimum monthly rent (the "Base Rent") "on the first day of each calendar month" in the current amount of $270,648.00.  Lease, § 4(a)(i).  In addition to Base Rent, the ASI is also obligated to pay its pro rata share of certain other reoccurring related rent charges each month, including, but not limited to (i) real estate taxes (*Id.*, § 6(a)(ii)(I)) and (ii) insurance (*Id.*, § 6(a)(ii)(K)) (the "Additional Rent," together with the Base Rent, the "Rent").  Additionally, Additional Rent which may become due and owing under the Lease includes "any cost or expense incurred by Landlord on behalf of Tenant or

---

[2] Unless otherwise specified, all statutory references to "Section" are to the Bankruptcy Code.

reimbursable to Landlord by Tenant under the terms of the Lease, including, without limitation, any amount advanced by Landlord to cure a default by Tenant under this Lease." *Id.*, Schedule A.

8.      Section 14(a) of the Lease also provides that ASI "shall promptly comply throughout the Term, at Tenant's sole cost and expense, with all Governmental Requirements relating to the Premises and/or Tenant's use of the Premises," which would include payment of any taxes due and owing with respect to the Premises.  Lease, § 14(a).

9.      Section 6(a)(i) of the Lease provides that if any portion of Additional Rent is paid by ASI directly to the applicable taxing authority or vendor, Landlord shall not include those amounts in the calculation of Additional Rent to be billed to ASI under the Lease.  *Id.*, § 6(a)(i). ASI has historically paid expenses which could be classified as Additional Rent under the Lease directly to the applicable taxing authority or vendor.  Landlord has therefore never invoiced ASI for Additional Rent.

10.     Section 34 of the Lease also provides that in the event of a dispute between Landlord and ASI, "including any dispute regarding the enforcement of this Lease," the prevailing party is such dispute is entitled to recover from the other its "Legal Costs in connection with such dispute." *Id.*, § 34.  The Lease defines "Legal Costs" as "[a]ll reasonable and actual attorneys' fees, paralegal fees, disbursements and mediation, arbitration and court costs and expenses, including litigation through all trial and appellate levels." *Id.*, Schedule A.

**B.  Outstanding Post-Petition Obligations.**

11.     On March 2, 2026, real estate taxes relating to the first half of calendar year 2025 became due to Franklin County, Ohio in the amount $205,853.82 (the "<u>Tax Obligation</u>").  A true and correct copy of the invoice from the taxing authority evidencing the Tax Obligation is attached hereto as **<u>Exhibit B</u>**.  Failure to timely pay the Tax Obligation by the March 2, 2026 deadline

results in the addition of penalties and interest, increasing the amount of the Tax Obligation. *See* Exhibit B, page 2. Moreover, failure to pay the Tax Obligation within 60 days from delinquency subjects the property "to foreclosure for tax delinquency." *Id.*

12. ASI failed to pay the Tax Obligation to the taxing authority on or before the March 2, 2026 due date. Thus, to avoid risk of additional fees, penalties, cloud on title, or foreclosure of the property, the Landlord paid ASI's Tax Obligation. Proof of Landlord's payment of ASI's Tax Obligation is attached hereto as **Exhibit C**.

13. Despite Landlord's outreach to ASI regarding the Tax Obligation, and efforts to work with the Debtors and avoid motion practice on this issue, ASI has failed to pay the Tax Obligation to the Landlord, as required by the Lease.

14. The Landlord further provides insurance for the Premises, for which ASI is obligated to reimburse Landlord pursuant to the Lease. Lease, § 6(a)(ii)(K). The Landlord has paid $49,749.72 to insure the Premises for the period from June 30, 2025 through March 31, 2026. A true and correct copy of the insurance invoice is attached hereto as **Exhibit D** (the "Insurance Invoice"). The Landlord paid the Insurance Invoice to maintain insurance at the Premises. A true and correct copy of the insurance payments are attached hereto as **Exhibit E**. ASI received the benefit of the required insurance of the Premises from the Petition Date through March 31, 2026, which prorated portion of the Insurance Invoice totals $23,422.31 (the "Post-Petition Insurance").

15. Additionally, ASI has not yet paid the prorated Rent due and owing under the Lease for ASI's use and occupancy of the Premises from and including the Petition Date, through November 30, 2025 (the "Stub Rent"), in the amount of $72,172.80.

16. ASI has not paid the Landlord for the Tax Obligation or Post-Petition Insurance (the "Outstanding Post-Petition Obligations") or Stub Rent. Furthermore, Landlord estimates that

its attorneys' fees incurred to date arising from ASI's defaults are in an amount not less than $10,000.

**C. Status of the Lease.**

17. On December 8, 2025, the Court entered an order [D.I. 159] extending the Debtors' time to assume or reject executory contracts and unexpired leases of nonresidential property, including the Lease, to the earlier of (i) June 20, 2026, or (ii) the date of entry of an order confirming a plan.

18. On February 6, 2026, the Court entered an order [D.I. 520] approving the sale of substantially all of the Debtors' assets to ASI Purchaser LLC (the "Sale Order").

19. The Sale Order, among other things, approved the Debtors' entry into that certain *Asset Purchase Agreement*, dated as of November 25, 2025 (as amended, the "Stalking Horse APA") by and between the Debtors and ASI Purchaser LLC (and together with any applicable designee, the "Stalking Horse Buyer") and SEI, Inc. as Guarantor the accompanying *Agency Agreement*, dated as of November 25, 2025 (as amended, the "Stalking Horse Agency Agreement"), by and between the Debtors and ASI Purchaser LLC (and/or its designee(s)) (the "Stalking Horse Agent," collectively with the Stalking Horse Buyer, the "Stalking Horse Bidder") and SEI, Inc. as Guarantor.

20. The Lease was not included as an asset sold to the Stalking Horse Bidder under the Stalking Horse APA, nor did the Stalking Horse Bidder purchase designation rights for the Lease. Pursuant to the Stalking Horse Agency Agreement, however, the Stalking Horse Bidder is acting as the Debtors' agent for the purposes of liquidating their inventory, furniture, fixtures, and equipment at the Premises.

21.     On March 30, 2026, Landlord received an email from a representative of the Debtors stating that effective March 31, 2026, the Debtors are surrendering the Premises.  On March 31, 2026, the Debtors filed a notice of rejection [D.I. 653], proposing to reject the Lease effective as of March 31, 2026 (the "Proposed Rejection Date").

## III.    ARGUMENT

22.     In violation of Section 365(d)(3), ASI has failed to pay post-petition obligations accruing under the Lease, while ASI's ongoing use and occupancy of the Premises to conduct their business has been utilized to generate revenue.

23.     Section 365(d)(3) of the Bankruptcy Code requires ASI, as tenant, to timely perform all obligations under the Lease, including payment of all post-petition lease obligations, until the Lease is assumed or rejected.  The Lease was not proposed to be rejected until March 31, 2026.  And yet, ASI has refused to pay the Tax Obligation as required under the Lease, despite that obligation becoming due in the post-petition, pre-rejection period.  This willful disregard for ASI's statutory obligations imposes undue hardship on the Landlord and is a direct violation of the Bankruptcy Code and its intent.

24.     Moreover, the Debtors have benefited from the continued insurance of the Premises, which insurance is required by both the Lease and in order to remain a chapter 11 debtor, so the Landlord is entitled to the allowance and payment of an administrative claim pursuant to Section 503(b)(1) with respect to the Post-Petition Insurance.

25.     Thus, ASI should be compelled to immediately pay Landlord the Outstanding Rent Obligations.  In addition, the Landlord should be granted an allowed administrative expense priority claim for the Outstanding Post-Petition Obligations.

## IV.   RELIEF REQUESTED

26.   By this Motion, Landlord seeks entry of an order by this Court, in the form of the Proposed Order: (i) allowing and directing immediate payment of the Outstanding Post-Petition Obligations due under the Lease pursuant to Sections 365(d)(3) and 503(b)(1); and (ii) awarding Landlord its reasonable attorneys' fees and costs incurred in connection with the post-petition enforcement of its rights under the Lease, including its costs to prepare the Motion.

## V.   BASIS FOR RELIEF REQUESTED

### A. Debtors are Required to Timely Perform Post-Petition Lease Obligations.

27.   The Bankruptcy Code affords lessors of nonresidential real property specific protections with regard to post-petition, pre-rejection rental obligations.  Bankruptcy Code section 365(d)(3) provides, in pertinent part, as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

28.   The plain language of Section 365(d)(3) and applicable case law require Debtors' immediate payment of the post-petition, pre-rejection obligations under the Lease.  "The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms."  *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3rd Cir. 2001); *see also In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 124 (Bankr. D. Del. 2007) ("In simpler terms, the bankruptcy trustee must fulfill any obligation that arises under a non-residential lease after the filing of the bankruptcy petition but before either assumption or rejection occurs."); *Augusta Mall Partnership v. Twigland Fashions*

7

*(In re Twigland Fashions, Inc.*), 198 B.R. 199, 200 (W.D. Tex. 1996) (quoting *In re PacificAtlantic Trading Co.*, 27 F.3d 401, 404 (9th Cir. 1994) ("The plain and unconditional language of the statute demands that a trustee promptly pay the full amount of rent due under a nonresidential real property lease during the 60-day [now 120-day] period pending assumption or rejection [of the lease]."));  *In re Appletree Markets, Inc.*, 139 B.R. 417, 421 (Bankr. S.D. Tex. 1992) ("The plain language of the statute is clear.  Section 365(d)(3) provides for timely performance of all obligations of the debtor from and after the order for relief.").  "Both the text and the intent of § 365(d)(3) are clear: commercial real property lessees must continue to perform after filing for bankruptcy." *In re CEC Entm't, Inc.*, 625 B.R. 344, 352 (Bankr. S.D. Tex. 2020).[3]

29.    Indeed, the Third Circuit has characterized Section 365(d)(3) of the Bankruptcy Code as "impos[ing] a special duty with respect to unexpired leases of nonresidential real property" on the debtor in possession.  *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816 (3rd Cir. 2010).

30.    The legislative history of Section 365 suggests that the purpose of the 1984 Amendments to Section 365 was "to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and assumption or rejection of a lease." *Omni Partners, L.P. v. Pudgie's Development of NY, Inc. (In re Pudgie's Development of NY, Inc.)*, 239 B.R. 688, 692 (S.D.N.Y. 1999) (citing 130 Cong. Rec. S8894-95 (daily ed. June 29, 1994) (statement of Sen. Hatch)); *accord, In re Appletree Markets, Inc.,* 139 B.R. at 419-20 (discussing legislative history of 1984 amendments to Section 365).  Prior to these

---

[3] "No notice or hearing is required, the [lease] obligations are simply required to be met in a timely fashion." *In re C.Q., LLC*, 343 B.R. 915, 917 (Bankr. W.D. Wisc. 2005). *Accord, In re Valley Media, Inc.*, 290 B.R. 73, 77 (Bankr. D. Del. 2003) (In rejecting argument that a landlord must file a request for payment of an administrative expense claim for unpaid post-petition rent, the bankruptcy court concluded: "There is no suggestion of any such filing requirement in § 365(d)(3).  Indeed, just the opposite is suggested. The timely payment of the obligation is dictated by statute.").

amendments, the Bankruptcy Code did not require a trustee to perform its obligations under a nonresidential lease, but the landlord was forced to provide services to the debtor-tenant.  Congress specifically chose to protect real property lessors because "the landlord is forced to provide current services – the use of its property, utilities, security, and other services – without current payment. No other creditor is put in this position." *In re Goody's Family Clothing,* 610 F.3d at 818*; see also In re DeCicco of Montvale, Inc*., 239 B.R. 475, 479 (Bankr. D. N.J. 1999) ("§365(d)(3) [was enacted] to protect landlords from becoming involuntary post-petition creditors, and ensure that landlords receive 'current payment' for 'current services.'").  In describing the purpose and intent of Section 365(d)(3), the bankruptcy court in *In re Pac-West Telecomm, Inc*., stated that "a landlord can remain confident that obligations arising post-petition will be timely paid while the debtor is deciding whether to assume or reject the lease."  377 B.R. 119, 125 (Bankr. D. Del. 2007).

31.     Contrary to Section 365(d)(3) and applicable case law, Landlord is plainly not receiving "current payment" for the "current services" which they are being compelled to provide. ASI should accordingly be compelled to immediately pay the Tax Obligation due to Landlord under the Lease.  This is the involuntary creditor situation that Section 365(d)(3) was intended to prevent.

32.     Indeed, the facts of this case mirror those presented in *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp*.), 268 F.3d 205 (3d Cir. 2001).  In *Montgomery Ward*, the debtor filed for bankruptcy and continued to make use of the premises during the post-petition period.  Following the petition date, the landlord sent the debtor three invoices for: (1) a first installment of 1996 taxes, payable in 1997; (2) an estimated second installment of 1996 taxes; and (3) a security deposit as provided for by the leasing covering estimated 1997 taxes.  The debtor then remitted payment which represented the prorated portion

of taxes attributable to the post-petition period, taking the position that all taxes attributable to a pre-petition period constituted unsecured claims.  The landlord then filed a motion to compel full payment of the debtor's tax reimbursement obligations pursuant to the lease on the same basis that Landlord now seeks payment of the Tax Obligation.

33.     The *Montgomery Ward* Court held that, a debtor must timely perform its post-petition obligations under section 365(d)(3) of the Code when "the legally enforceable duty to perform arises under [the] lease." *In re Montgomery Ward Holding Corp.,* 268 F.3d at 211.  This remains controlling law in the Third Circuit.  Pursuant to the terms of the Lease, ASI's legally enforceable duty to perform did not arise until the post-petition, pre-rejection period.  The Tax Obligation is now past due with respect to the  Lease, and under *Montgomery Ward*, must be paid.

**B. Landlord Is Entitled to Allowance and Immediate Payment of an Administrative Expense Claim for the Post-Petition Insurance Pursuant to Section 503(b)(1).**

34.     Section 503(b)(1) provides for an independent basis for an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate.  *See* 11 U.S.C. § 503(b)(1).  A landlord's administrative claim under Section 503(b)(1) is equal to the lease contract rate.  *In re ZB Co., Inc.*, 302 B.R. 316, 319 (Bankr. D. Del. 2003) (contract rate is presumed to be the fair rental value.).  "There is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled." *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990).  Section 507(a) of the Bankruptcy Code provides that administrative expense claims that are allowed under section 503(b) of the Bankruptcy Code have first priority.  *See* 11 U.S.C. § 507(a)(2).  ASI and the Debtors, collectively, benefited from the post-petition use and occupancy of the Premises, including being able to conduct liquidation sales for the direct benefit of themselves and their lenders.

10

35.     In addition, "[t]he determination of the timing of payment of administrative expenses is within the discretion of the Bankruptcy Court.  In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to the debtor's assets.  Thus, distributions prior to confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full.  Other factors include the particular needs of each administrative claimant and the length and expense of the case's administration" *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (internal citations omitted).  Other factors that may be considered by the court when deciding when an administrative expense will be paid include "prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. 126, 143 (Bankr. D. Del. 2005).

36.     Here, the Post-Petition Insurance arose and accrued during the period of ASI's use and occupancy of the Premises from and including the Petition Date and before the Proposed Rejection Date, qualifying it for administrative expense claim status pursuant to 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.  Further, ASI benefited from the post-petition use and occupancy of the Premises by having continued access to and use of the Premises for the direct benefit of itself and its creditors prior to and through the Rejection Date.  As a result, the Debtor's obligations to the Landlord were an actual and necessary cost and expense of operating ASI's businesses.

37.     There is a concern that if the Landlord is required to wait to receive payment, ASI will be unable to pay all of its Lease obligations in full, including the Post-Petition Insurance, notwithstanding the use and occupancy of the Premises for the sale of its assets located at the Premises and other locations.  The Debtors' path to emergence is uncertain given that no plan has

11

yet been filed in these Chapter 11 Cases.  Landlord should not be prejudiced by having to wait to receive payment for its administrative claim at some yet-to-be determined point in the future, for obligations the Debtors were supposed to pay when due, but did not pay, where other similarly situated creditors have been paid and where there is a risk that if the Landlord were forced to wait, there would be no funds available to pay an otherwise valid administrative claim. Debtors should accordingly be compelled to immediately pay the Post-Petition Insurance due to Landlord.

### C. Landlord is Entitled to Its Attorneys' Fees.

38.      Additionally, Landlord has been compelled to incur attorneys' fees to enforce its rights under the Lease and the Bankruptcy Code with respect to ASI's defaults in their failure to timely pay post-petition rent charges, and such fees, as authorized by the terms of the Lease, are recoverable as an administrative claim as well.  *See, e.g.*, *In re MS Freight Distribution, Inc.*, 172 B.R. at 978-79; *In re Pac-West Telecomm, Inc*., 377 B.R. at 126 (attorneys' fees for motion to compel payment of post-petition lease obligations); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453-455 (Bankr. S.D. Fla. 2006); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co*., 549 U.S. 443, 449, 127 S. Ct. 1199, 1203-04 (2007) (holding that "an otherwise enforceable contract allocating attorney's fees . . . is allowable in bankruptcy except where the Bankruptcy Code provides otherwise.").  These attorneys' fees are estimated to be in excess of $10,000 and will only increase through the hearing on this Motion.

### V.    CONCLUSION

WHEREFORE, the Landlord respectfully requests that the Court enter the Proposed Order compelling the Debtors to immediately pay the Outstanding Post-Petition Obligations, as well as reasonable attorneys' fees incurred in connection therewith, in accordance with the terms of the Lease within two (2) business days of entry of the order and granting such other and further relief as is just and necessary under the circumstances.

12

Dated: April 2, 2026

Respectfully submitted,

*/s/ Laurel D. Roglen*
Laurel D. Roglen (DE No. 5759)
Erin L. Williamson (DE No. 7286)
BALLARD SPAHR LLP
222 Delaware Ave, 10th Floor
Wilmington, DE  19801
Telephone: (302) 252-4446
Facsimile: (302) 252-4466
E-mail:  roglenl@ballardspahr.com
               williamsone@ballardspahr.com

-and-

Elizabeth Rose
Caiola & Rose, LLC
125 Clairemont Ave.
Suite 240
Decatur, GA 30030

*Attorneys for 3080 & 3232 Alum Creek Drive LLC*