**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 661** |

**Hearing Date: April 16, 2026, at 10:00 a.m. (ET)**

**DEBTORS' OBJECTION AND RESERVATION OF RIGHTS TO
MOTION OF CHIPPEWA CENTER, LLC FOR
IMMEDIATE PAYMENT OF POST-PETITION AMOUNTS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this objection (the "Objection") to the *Motion of Chippewa Center, LLC for Immediate Payment of Post-Petition Amounts Pursuant to 11 U.S.C. § 365(d)(3)* [Docket No. 661] (the "Motion") filed by Chippewa Center, LLC (the "Landlord").[2]  In support of this Objection, the Debtors respectfully represent as follows:

**Preliminary Statement**

1.     The Landlord seeks an administrative expense claim pursuant to section 365(d)(3) of the Bankruptcy Code for (a) unpaid real property taxes in the amount of $89,089.43 (the "Property Tax Charges"), (b) unpaid post-petition insurance obligations in the amount of $23,964.27 (the "Insurance Charges"), and (c) unpaid costs to maintain common areas in the amount of $50,511.74 (the "CAM Charges" and collectively with the Property Tax Charges and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162).  The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Insurance Charges, the "Administrative Claims") pursuant to a non-residential real property lease agreement between the Landlord and Debtor American Signature, Inc (the "Lease").

2.     The Landlord's requests for payment pursuant to Section 365(d)(3) fail for multiple reasons.  With respect to the Property Tax Charges and Insurance Charges, the Lease provides the Debtors ten days to pay the asserted charges.  The Landlord first presented a summary of the Property Tax and Insurance Charges to the Debtors on December 22, 2025.  Thus, the Debtors' liability to pay these charges did not arise until January 1, 2026, the day after rejection of the Lease.

3.     With respect to the CAM Charges, the Landlord's purported summary did not provide sufficient detail as required by the Lease.  Further, the summary includes many charges for the first three quarters of 2025 and is not limited to the fourth quarter of 2025 as required by the Lease.

4.     Although the Motion provides no legal support for the request, the Debtors also object to any relief requesting immediate payment of the Landlord's asserted Administrative Claims because not all administrative claims have been determined on a final basis in these cases and the Debtors cannot prefer one administrative creditor over others.

**Relevant Background**

5.     On May 2, 1995, South County Venture, L.P. and Gramex Corporation entered into the Lease for commercial property located at 7077 Chippewa, St. Louis, MO 63119 (the "Premises").  Through various assignments, Debtor American Signature Inc. and the Landlord became parties to the Lease.

6.     Pursuant to the Lease, the Debtors were liable to pay the Landlord both base rent and their proportionate share of certain other charges related to the Premises.  According to the Lease, these additional charges included the Debtor's proportionate share of the Landlord's

property insurance costs. *See* Lease, section 7.4. The Lease further provides that the Debtors must pay their proportionate share of real estate taxes assessed for the Premises. *See* Lease, section 15.1. The Lease required the Debtors to pay the Landlord within ten days of receipt of a summary of these insurance and property tax costs. *See* Lease, sections 7.4 and 15.1.

7. The Lease also required the Debtors to pay their proportionate share of charges related to common areas for the Premises. *See* Lease, section 14.4(a). With respect to payment terms for these common area charges, the Lease provides that such charges "shall be computed on the basis of periods of three (3) consecutive calendar months, commencing and ending on such dates as may be designated by Lessor and shall be paid by Lessee promptly upon receipt of quarterly bills therefor from Lessor accompanied by a general ledger detail or other summary of Operating Costs for such quarter without any deduction or set-off whatever." *See* Lease, section 14.4(b).

8. According to the Landlord, a summary of charges for Property Tax Charges, Insurance Charges, and CAM Charges (the "Summary") was provided to the Debtors on December 22, 2025. *See* Motion at ¶16. A copy of the Summary was attached to the Motion as Exhibit A. The Summary includes the proration of the Property Tax, Insurance, and CAM Charges as between the Debtors and other tenants sharing common areas of the Premises. The Summary provides no invoices or details to support the requested CAM Charges.

9. On December 31, 2025, the Debtors served notice of rejection of the Lease on the Landlord. On January 23, 2026, the Court entered an order [Docket No. 415] rejecting the Lease effective as of December 31, 2025.

10. On February 8, 2026, counsel to the Landlord provided its charge summary to the Debtors' counsel with a request for payment. The Debtors requested additional information and

detail related to the charge summary.  The Landlord did not respond to the Debtors' request for additional information.

<u>Argument</u>

**A.    The Debtors' Obligation to Pay the Property Tax Charges and Insurance Charges Did Not Arise Until After the Lease was Rejected.**

11.    The Lease did not require payment of the Property Tax and Insurance Charges prior to rejection.  Pursuant to the Lease, the Debtors were provided ten days to make payment in response to the Landlord's request for payment of Property Tax Charges or Insurance Charges. *See* Lease, sections 7.4 and 15.1.  According to the Landlord, that request was provided on December 22, 2025.  Thus, the Debtors' obligation to make payment on the Property Tax Charges and Insurance Charges under the Lease did not arise until January 1, 2026.  The Debtors rejected the Lease on December 31, 2025.

12.    Pursuant to *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 211 (3d Cir. 2001), a debtor must timely perform its postpetition obligations under section 365(d)(3) of the Code when "the legally enforceable duty to perform arises under [the] lease."  Because the Debtors rejected the Lease prior to the date when their legally enforceable duty to pay the Property Tax Charges and Insurance Charges arose, the Debtors have no obligation to pay the Property Tax Charges and Insurance Charges under section 365(d)(3).

**B.    The Landlord's Request for Payment of the CAM Charges Did Not Meet the Requirement of the Lease.**

13.    The detail provided by Summary for CAM Charges did not meet the requirement of the Lease for a request for payment of common area charges.

14.     First, the Lease requires that the Debtors pay common area charges to the Landlord "promptly upon receipt of quarterly bills therefor from Lessor accompanied by a general ledger detail or other summary of Operating Costs . . . ." *See* Lease, section 14.4(b).  Here, the Landlord provided only a summary and not "quarterly bills" or any other detail to permit the Debtors to review the CAM Charges requested for payment.  While the Lease permits the detail to be "accompanied by" a summary, it demands the Landlord to provide the detail on the charges included in such summary.  The Landlord failed to provide these details until the filing of the Motion, and these should not now be retroactively applied to support the Administrative Claims pursuant to section 365(d)(3) requested by the Landlord.

15.     Second, the Lease allows the Landlord to request payment of common area charges "computed on the basis of periods of three (3) consecutive calendar months, commencing and ending on such dates as may be designated by Lessor . . . " *See* Lease, section 14.4(b).  A preliminary review of the approximately 250 pages of invoices supporting the CAM Charges attached to the Motion reveals that a significant portion of the charges billed to the fourth quarter 2025 were actually incurred during the previous three quarters of 2025, and in some cases as far back as 2024.  The Landlord provides no detail in the Motion or its summary to explain the inclusion of charges that fall outside the "three (3) consecutive calendar months" allowed by the Lease.  Because the aged requests for common area charges are not supported by the Lease, they are not appropriate to be paid as claims pursuant to section 365(d)(3).

16.     Finally, the Summary includes a charge of an "Administrative Fee" related to the CAM Charges.  The Lease does not provide support for such a fee, and it is not appropriate for payment as an administrative claim pursuant to Section 365(d)(3).

**C.      Immediate Payment of the Administrative Claims is Not Appropriate.**

17.      The Debtors object to the Landlord's request for immediate payment of any allowed Administrative Claim.[3]   The timing of payment of an administrative expense claim is a matter within the Court's discretion.  *See In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (explaining that "courts have discretion to determine when an administrative expense is paid"); *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (same); *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (same).  Indeed, "most courts postpone actual payment [of administrative expenses] until confirmation of a plan."  *In re Continental Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992).

18.      In determining whether to require immediate payment of an administrative expense claim, a court's primary concern is the "orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets."  *In re Chi-Chi's Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (quoting *HQ Glob.*, 282 B.R. at 173).  Thus, "a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay."  *NE Opco*, 501 B.R. at 259 (quoting *In re Glob. Home Prods., LLC*, No. 06-10340, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006)).

19.      In evaluating such requests, courts also consider the following factors:  (a) whether payment would result in prejudice to the debtor, (b) the degree of hardship to the claimant of delayed payment, and (c) whether payment would cause a potential detriment to other creditors. *See, e.g.*, *NE Opco*, 501 B.R. at 259; *Glob. Home*, 2006 WL 3791955, at *4; *Garden Ridge*, 323

---

[3]      Other than the use of the word "immediately" throughout the Motion, the Landlord provides no legal argument or detail to support their request for immediate payment.  Out of an abundance of caution, the Debtors are obliged to respond to any inferred request made in the Motion.

B.R. at 143.   An application of these factors weighs strongly against compelling immediate payment for any administrative expense claims ultimately allowed in favor of the Landlord.

20.      First, the Debtors would be unfairly prejudiced if they are forced to pay the Landlord's Administrative Claims immediately.  The Debtors are in the process of analyzing and reconciling creditors' claims against their books and records, and the "rush to the courthouse" that could result if the Motion is granted could severely threaten the Debtors' ability to administer these cases effectively and bring them to an orderly resolution.

21.      Second, the Debtors respectfully submit that any hardship suffered by the Landlord from delay in payment of its Administrative Claim, to the extent allowed, is substantially outweighed by the harm imposed on the Debtors and other creditors.  Indeed, in the Motion the Landlord makes no reference to any hardship it might suffer if the Court does not order immediate payment.  Upon information and belief, the Landlord is holding a letter of credit that it could use to pay any outstanding expenses related to the Lease.

22.      Third, other creditors could be adversely affected if the Court compels immediate payment of the Landlord's Administrative Claim.  Detriment to other creditors exists where, as here, other creditors may be compelled to seek payment on account of postpetition administrative expenses prior to confirmation.  *See In re Modern Metals, Inc.*, No. 08-73908, 2009 WL 1362632, at *3 (Bankr. N.D. Ill. May 13, 2009) ("Other creditors could be harmed . . . because, while there may not be many more [administrative priority] claims, there may be other claimants that may bring administrative expense claims prior to confirmation of the reorganization plan.").  Immediate payment would likely cause other landlords to assert similar motions, resulting in precisely the sort of run on the Debtors' assets that courts are concerned about when analyzing requests for immediate payment under section 503(b) of the Bankruptcy Code.  In fact, other similarly situated

creditors have already filed motions for relief similar to that requested by the Landlord.  The Debtors are in the process of reconciling their claims, and requiring the Debtors to consider all administrative claims immediately would unnecessarily distract the Debtors' management team from the ultimate task at hand, which is bringing these cases to a final, expeditious resolution.

23.     Accordingly, the Landlord's request for immediate payment of the Administrative Claim, if allowed, should be denied.

### Reservation of Rights

24.     The Debtors reserve all rights to supplement this Objection on any and all available substantive and non-substantive grounds that bankruptcy and nonbankruptcy law may permit, to conduct discovery into the matters raised by the Motion, and to present evidence at any hearing on the Motion.

Dated: April 10, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
            dbertenthal@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*