**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No.  659** |

**Hearing Date: April 16, 2026, at 10:00 a.m. (ET)**

**DEBTORS' OBJECTION AND RESERVATION OF RIGHTS TO**
**MOTION OF 3080 & 3232 ALUM CREEK DRIVE LLC FOR**
**IMMEDIATE PAYMENT OF POST-PETITION LEASE OBLIGATIONS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
hereby submit this objection (the "Objection") to the *Motion of 3080 & 3232 Alum Creek Drive*
*LLC for Entry of an Order Compelling the Debtors' Immediate Payment of Post-Petition Lease*
*Obligations*  [Docket No. 659] (the "Motion") filed by 3080 & 3232 Alum Creek Drive LLC (the
"Landlord").[2]  In support of this Objection, the Debtors respectfully represent as follows:

**Preliminary Statement**

1.      The Landlord seeks an administrative claim for (a) unpaid real property taxes in the
amount of $205,853.82 (the "Property Tax Obligation") and (b) unpaid post-petition insurance
obligations in the amount of $23,422.31 (the "Insurance Obligation"[3] and collectively with the
Property Tax Obligation, the "Administrative Claims") pursuant to a non-residential real property
lease agreement between the Landlord and Debtor American Signature, Inc. (the "Lease").  The

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification
number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA
Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI
Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162).  The
Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3]     The Debtors do not object to payment of the Insurance Obligation.

Debtors object to the Property Tax Obligation for two reasons. First, the Property Tax Obligation relates to taxes due to Franklin County, Ohio for the first half of calendar year 2025 (i.e., January 2025 to June 2025), a period that pre-dates the Lease executed on August 25, 2025. The Lease does not provide for payment of obligations that accrued prior to execution. Second, and assuming arguendo the Debtors could possibly have any obligation to pay taxes for a period prior to their tenancy, the Debtors' liability to pay the Property Tax Obligation did not arise until after rejection of the Lease. Thus, the Property Tax Obligation is subject to the standard of Bankruptcy Code §503(b)(1) and not §365(d)(3), and the Debtors are liable only to pay administrative expenses for that portion of the Property Tax Obligation that provided a benefit to the estate.

2.      In addition, the Debtors object to any relief requesting immediate payment of the Landlord's asserted Administrative Claims because not all administrative claims have been determined on a final basis in these cases and the Debtors cannot prefer one administrative creditor over others. The Debtors also object to any request for payment of fees by the Landlord.

### Relevant Background

3.      On August 20, 2025, Debtor American Signature, Inc. entered into the Lease with the Landlord for warehouse space located at 3080 and 3232 Alum Creek Drive, Columbus, Ohio 43207 (the "Premises").

4.      Pursuant to the Lease, the Debtors were liable to pay the Landlord both base rent and certain other charges related to the Premises. According to Section 6 of the Lease, these additional charges included real estate taxes and insurance costs. *See* Lease, section 6(a)(i). Any additional charges not paid directly to insurers or taxing authorities by the Debtors were to be paid as Additional Rent and paid along with the Base Rent on the next due date. *See* Lease, section 6(b) ("Tenant will make such payment directly to such taxing authority if billed directly to Tenant,

or if billed to Landlord, such payment will be paid concurrently with the payment of the Base Rent, Additional Rent, or such other charge upon which the tax is based, all as set forth herein.").

5.      The Debtors did not pay tax obligations or insurance costs directly during the term of the Lease.  No provision of the Lease assigns to the Debtors the duty to directly pay tax or insurance obligations.  Upon information and belief, the Debtors and Landlord had no separate agreement regarding the payment methods for tax and insurance obligations.

6.      On March 4, 2026, counsel to the Landlord provided a copy of the tax invoice from Franklin County to determine whether the tax obligation had been paid.  The Debtors and counsel to the Landlord exchanged emails regarding the terms of payment.  On March 12, 2026, the Debtors informed the Landlord's counsel that the tax obligation would be scheduled for payment on April 1, 2026.

7.      On March 31, 2026, the Debtors served notice of rejection of the Lease on the Landlord.

## Argument

**A.      The Debtors have no obligation to pay the Property Tax Obligation.**

8.      Section 365(d)(3) provides that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."  Central to this obligation to pay is the requirement that a lease must expressly require the payments requested.

9.      Here, the Lease does not require the Debtors to pay the Property Tax Obligation the Landlord demands.  As provided by the Landlord in the Motion, the Lease defines the Property Tax Obligation as Additional Rent.  *See* Motion at ¶7, Lease at section 6(a)(ii)(I).  The Lease

further provides that "[t]enant's obligation to pay Additional Rent **will begin to accrue** on the Lease Commencement Date regardless of the Base Rent Commencement Date." *See* Lease at section 4(b) (**emphasis added**). Thus, the Debtors do not accrue any obligations under the Lease that arose prior to August 20, 2025, the Lease Commencement Date.

10.    Pursuant to the Motion and the tax invoice from Franklin County, the Property Tax Obligation relates to the first half of calendar year 2025. *See* Motion at ¶11 and Exhibit B. The entire period related to the Property Tax Obligation occurred prior to the Lease Commencement Date (i.e., August 20, 2025). Moreover, the purported payment obligation did not arise until after rejection of the Lease, taking it expressly out of the purview of Section 365(d)(3).

11.    Section 365(d)(3) does not require the Debtors to pay the Landlord's Administrative Claim for the Property Tax Obligation.

**B.    Alternatively, the Landlord is not Entitled to Payment of the Property Tax Obligation Pursuant to Section 503(b)(1).**

12.    As provided above, the Debtors had no agreement with the Landlord to make direct payments to Franklin County or any other taxing authority for the Property Tax Obligation. Contrary to the assertion made by the Landlord that the Debtors "historically" paid expenses directly to taxing authorities or others, there was no such arrangement. In fact, because the Lease was less than three months old on the Petition Date, there is very little history to use to establish a course of dealing. Upon information and belief, the March 2 tax invoice from Franklin County was the first such tax expense to be paid under the Lease.

13.    Pursuant to Section 6(b) of the Lease, if taxes are billed to the Landlord, the Debtors were obligated to pay the taxes as Additional Rent. Pursuant to the Lease, the Debtors' legally enforceable duty was to pay the Property Tax Obligation by April 1, 2026, the next scheduled date when Additional Rent was due.

14.     On March 31, 2026, the Debtors rejected the Lease.

15.     Pursuant to *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 211 (3d Cir. 2001), a debtor must timely perform its postpetition obligations under section 365(d)(3) of the Bankruptcy Code when "the legally enforceable duty to perform arises under [the] lease." Because the Debtors rejected the Lease prior to the date when their legally enforceable duty to pay the Property Tax Obligation arose, the Debtors have no obligation to pay the Property Tax Obligation under Section 365(d)(3).

16.     The Landlord also asserts an administrative claim for payment under Section 503(b)(1). Section 503(b) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. 503(b)(1)(A). Because section 503 administrative expense claims are afforded priority pursuant to section 507(a)(1) of the Bankruptcy Code, allowance of such claims is narrowly construed. *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001); *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996). The burden of proving an entitlement to an administrative expense claim is on the claimant. *In re O'Brien Envt'l Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999).

17.     To qualify for administrative priority, the expense must represent "a concrete, discernible benefit" to the estate; a "speculative benefit or the mere potential for benefit is not enough." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 490 (Bankr. S.D.N.Y. 1991) (quoting *In re United Trucking Serv., Inc.*, 851 F.2d 159, 162 (6th Cir. 1988)); *see also Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A.*, 280 F.2d 119, 126 (2d Cir. 1960). Thus, as the Third Circuit has summarized, "[f]or a claim in its entirety to be entitled to first priority under [section 503(b)(1)(A) of the Bankruptcy Code], the debt must arise from a

transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *O'Brien*, 181 F.3d at 532–33 (citation omitted). Additionally, "[a] party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.*; *see also In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) ("The claimant bears the burden of proving its actions conferred a benefit upon the estate.").

18. Bankruptcy courts apply a two-part test in determining whether a creditor has an administrative claim under section 503(b)(1)(A) of the Bankruptcy Code. The claimed expenses must (i) arise out of a postpetition transaction with the trustee or debtor in possession and (ii) directly and substantially benefit the estate. *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999); *see also Unidigital*, 262 B.R. at 288; *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51 (Bankr. D. Del. 2001) ("[T]he expense must have arisen from a post-petition transaction between the creditor and the trustee and the transaction must have substantially benefitted the estate.").

19. Here, however, none of the taxes included in the requested Administrative Claim accrued during the post-petition/pre-rejection period. Thus, Section 503(b)(1) also does not require the Debtors to pay the Landlord's Administrative Claim for the Property Tax Obligation.

**C.     Immediate payment of the Administrative Claim is not appropriate in these circumstances.**

20. The Debtors object to the Landlord's request for immediate payment of any allowed Administrative Claim. As discussed above, section 503(b)(1)(A) of the Bankruptcy Code provides special priority for "actual, necessary costs and expenses of preserving the estate, including wages,

salaries, or commission for services rendered after the commencement of the case."   Section 503(b)(1)(A) does not, however, address the timing for the payment of any claim that may be allowed thereunder.  Accordingly, the timing of payment of an administrative expense claim under section 503(b) of the Bankruptcy Code is a matter within the Court's discretion.  *See In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (explaining that "courts have discretion to determine when an administrative expense is paid"); *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (same); *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (same).  Indeed, "most courts postpone actual payment [of administrative expenses] until confirmation of a plan."  *In re Continental Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992).

21.     In determining whether to require immediate payment of an administrative expense claim, a court's primary concern is the "orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets."  *In re Chi-Chi's Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (quoting *HQ Glob.*, 282 B.R. at 173).  Thus, "a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay."  *NE Opco*, 501 B.R. at 259 (quoting *In re Glob. Home Prods., LLC*, No. 06-10340, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006)).

22.     In evaluating such requests, courts also consider the following factors:  (a) whether payment would result in prejudice to the debtor, (b) the degree of hardship to the claimant of delayed payment, and (c) whether payment would cause a potential detriment to other creditors. *See, e.g.*, *NE Opco*, 501 B.R. at 259; *Glob. Home*, 2006 WL 3791955, at *4; *Garden Ridge*, 323 B.R. at 143.  An application of these factors weighs strongly against compelling immediate payment for any administrative expense claims ultimately allowed in favor of the Landlord under section 503(b)(1)(A) of the Bankruptcy Code.

23.     First, the Debtors would be unfairly prejudiced if they are forced to pay the Landlord's Administrative Claim immediately.  The Debtors are in the process of analyzing and reconciling creditors' claims against their books and records, and the "rush to the courthouse" that could result if the Motion is granted could severely threaten the Debtors' ability to administer these cases effectively and bring them to an orderly resolution.

24.     Second, the Debtors respectfully submit that any hardship suffered by the Landlord from delay in payment of its Administrative Claim, to the extent allowed, is substantially outweighed by the harm imposed on the Debtors and other creditors.  Indeed, in the Motion the Landlord makes no reference to any hardship it might suffer if the Court does not order immediate payment.  Upon information and belief, the Landlord is currently holding a letter of credit in the amount of $3 million that it could use to pay any outstanding expenses related to the Lease.

25.     Third, other creditors could be adversely affected if the Court compels immediate payment of the Landlord's Administrative Claim.  Detriment to other creditors exists where, as here, other creditors may be compelled to seek payment on account of postpetition administrative expenses prior to confirmation.  *See In re Modern Metals, Inc.*, No. 08-73908, 2009 WL 1362632 at *3 (Bankr. N.D. Ill. May 13, 2009) ("Other creditors could be harmed . . . because, while there may not be many more [administrative priority] claims, there may be other claimants that may bring administrative expense claims prior to confirmation of the reorganization plan.").  Immediate payment would likely cause other landlords to assert similar motions, resulting in precisely the sort of run on the Debtors' assets that courts are concerned about when analyzing requests for immediate payment under section 503(b) of the Bankruptcy Code.  In fact, other similarly situated creditors have already filed motions for relief similar to that requested by the Landlord.  The Debtors are in the process of reconciling their claims, and requiring the Debtors to consider all

administrative claims immediately would unnecessarily distract the Debtors' management team from the ultimate task at hand, which is to bring these cases to a final, expeditious resolution.

26.     Accordingly, the Landlord's request for immediate payment of the Administrative Claim, if allowed, should be denied.

**D.     The Landlord's Request for Payment of Attorney's Fees Should be Denied.**

27.     The Debtors also object to the Landlord's request for payment of attorney's fees in this matter.  As justification to request payment of its fees, the Landlord cites Section 34 of the Lease, which permits the prevailing party in any dispute to recover its legal costs in connection with such dispute.  As demonstrated above, the Landlord's request for payment of the Property Tax Obligation does not meet the standard for an administrative expense claim under section 365(d)(3) or 503(b)(1) of the Bankruptcy Code.  Thus, the Landlord should not be deemed to be the prevailing party with respect to this request.

28.     The Debtors consent to the payment of the Insurance Obligation requested by the Landlord.  Prior to the filing of this Motion, the Landlord had not previously requested payment of the Insurance Obligation.  Thus, with respect to the Insurance Obligation, the Motion is nothing more than the filing of an administrative expense claim pursuant to the Court's *Order:  (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code; (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units; (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims; (IV) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date; (V) Approving the Form of and Manner for Filing Proofs of Claim; (VI) Approving a Notice of Bar Dates; and (VII) Granting Related Relief* [Docket No. 617] (the "Bar Date Order").  The filing

of a claim in response to the Bar Date Order should not be considered a "dispute" to justify the payment of attorney's fees to the Landlord or the Debtors' other creditors.

**Reservation of Rights**

29.     The Debtors reserve all rights to supplement this Objection on any and all available substantive and non-substantive grounds that bankruptcy and nonbankruptcy law may permit, to conduct discovery into the matters raised by the Motion, and to present evidence at any hearing on the Motion.

Dated: April 10, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
          dbertenthal@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*