**Exhibit B**

**Assignment and Assumption Agreement**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "**Agreement**"), dated as of April [__], 2026, is by and between American Signature, Inc., an Ohio corporation ("**Assignor**"), and HOBBY LOBBY STORES, INC., an Oklahoma corporation ("**Assignee**" and together with Assignor, collectively, the "**Parties**" and each a "**Party**").  For the avoidance of doubt, except as expressly set forth in the Assignment Order, all provisions of each of the Leases, including any provision limiting future assignment, shall be binding on the Assignee after consummation of the assignment of such contract by the Debtors to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re American Signature, Inc.*, Case No. 25-12105 (JKS) (Bankr. D. Del. 2025) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume each of the unexpired leases listed on Schedule A attached hereto (collectively, the "**Leases**" and each, a "**Lease**") with respect to the applicable premises set forth on Schedule A (each, a "**Premises**") and the other Potential Assigned Agreements Primarily Related thereto listed on Schedule A attached hereto (the "**Related Assigned Agreements**"), pursuant to the terms and conditions set forth in (i) the Asset Purchase Agreement, dated as of November 25, 2025 (as amended, supplemented or otherwise modified from time to time on or prior to the date hereof, the "**APA**"), by and among ASI Purchaser LLC, a Delaware limited liability company ("**ASIP**"), American Signature, Inc., an Ohio corporation, and each of its subsidiaries party thereto, (ii) the *Order Approving Sale of All or Substantially All of Debtors' Assets and Granting Related Relief* entered by the Court on February 6, 2026 [Docket No. 520] (the "**Sale Order**") and (iii) the *Order (I) Authorizing Sale and Assumption and Assignment of Leases and (II) Granting Related Relief (Store No. 107 (Orland Park, IL; Landlord: JLP-Orland Park, LLC) & Store No. 406 (Tampa, FL; Landlord: JLPK-Dale Mabry, LLC))* entered by the Court on April [__], 2026 [Docket No. [__]] (the "**Assignment Order**").  Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the APA.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.     Assignment and Assumption.

(a)     Effective as of the occurrence of the Closing Date (as defined below) and the payment of the Cure Costs in accordance with the terms of this Agreement and subject to the terms of the Sale Order and the Assignment Order, Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to each of the Leases, the Related Assigned Agreements and all Acquired Assets Primarily Related thereto (collectively, the "**Assigned Assets**") free and clear of any and all

Encumbrances of any and every kind, nature and description, other than Permitted Post-Closing Encumbrances.  For the avoidance of doubt, no Contract shall constitute an Assigned Asset or be sold, transferred, conveyed, assigned or set over pursuant to this Agreement other than the Leases, the Related Assigned Agreements and the Acquired Assets Primarily Related thereto.

(b)     No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for such Premises (if practically available) to Assignee.

(c)     Effective upon the occurrence of the Closing Date, the payment of the Cure Costs in accordance with the terms of this Agreement and consummation of the sale, transfer, conveyance, assignment and set over set forth in Section 1(a) above and subject to the terms of the Sale Order and the Assignment Order, Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Assigned Assets which accrue and come due after the Closing Date, and any accrued but unbilled adjustments for CAM, real estate taxes, and insurance due under the Leases, provided however, it being specifically acknowledged and agreed that Assignee shall have no liability for any real estate taxes that accrued and were due pursuant to demand by the taxing authority prior to the Closing Date.  Other than the Buyer Cure Costs as set forth below and except as otherwise set forth in the Assignment Order, Assignee shall have no liabilities (and both Assignor and the landlord in respect of the applicable Lease shall be barred from asserting any cure costs or other claims) with respect to the Assigned Assets that came due on or before the Closing Date and Assignor shall be barred from asserting any additional Cure Costs or other claims with respect to the Leases that came due on or before the Closing Date except the Buyer Cure Costs.

2.     Cure Costs.  (a) Assignee shall, or shall cause ASIP to (as applicable), on the Closing Date, deliver to the applicable landlord in respect of each of the Leases cure amounts owed as a result of the assumption and assignment of such Lease in connection with this Agreement in the applicable amount set forth as "Buyer Cure Costs" with respect to such Lease on Schedule A attached hereto (the "**Buyer Cure Costs**") and (b) Assignor shall, on the Closing Date, deliver to the applicable landlord in respect of each of the Leases cure amounts owed as a result of the assumption and assignment of such Lease in connection with this Agreement in the amount set forth as "Excess Cure Costs" with respect to such Lease on Schedule A attached hereto (together with the Buyer Cure Costs, the "**Cure Costs**").

3.     No Further Liability of Assignor.  Except to the extent set forth in the Assignment Order and as provided for herein, from and after the date hereof, Assignor shall have no further obligations and duties with respect to the Assigned Assets; provided that nothing herein shall impair or prejudice the applicable landlord's right to recover from the Assignor's available insurance coverage with respect to third-party claims asserted in connection with the Assignor's use and occupancy of either of the Premises on account of events that occurred prior to the date of entry of the Assignment Order (it being acknowledged, understood and agreed that (i) nothing herein shall (a) be deemed an assurance of any kind by Assignor that any such coverage exists or is or will be so available, or (b) require Assignor to take any action whatsoever with respect to any such insurance coverage relating to either of the Premises, including, without limitation, modifying, obtaining, renewing, maintaining, or replacing any such insurance coverage).

4.      Effectiveness.  Assignee's obligation to consummate the transactions contemplated by this Agreement is subject to the satisfaction (or waiver by Assignee) of each of the following conditions: (a) this Agreement shall have been executed by Assignor and Assignee, (b) the store closing sale contemplated by the Agency Agreement (as defined in the APA) at each of the Premises has been completed and (c) the Sale Order and the Assignment Order shall have been entered and shall not have been modified, vacated or stayed. The first day on which such conditions are satisfied or waived shall be referred to herein as the "**Closing Date**".

5.      Further Assurances.  At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Assets.

6.      "As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Assets except as otherwise expressly provided herein.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Assigned Assets except as otherwise expressly provided herein.  Assignee further acknowledges that the Assignee has conducted (or has had an opportunity to conduct) an independent inspection and investigation of the physical condition of the Assigned Assets and all such other matters relating to or affecting the Assigned Assets as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Assets, Assignee is doing so based upon such independent inspections and investigations.  Accordingly, except as otherwise expressly set forth herein, Assignee will accept the Assigned Assets "AS IS" and "WHERE IS."

7.      Abandonment.  Upon the Closing Date, any personal property of Assignor (or any other Debtor) remaining at either of the Premises is deemed abandoned and Assignee is free to dispose of or utilize any such personal property without further notice or liability to Assignor (or any other Debtor).

8.      Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

9.      Jurisdiction.  The Parties consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.     No Reliance.  Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

11.     Construction.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.     Inconsistency.  Each of Assignor and Assignee agree that the terms of this Agreement and the APA are intended to be mutually consistent and should be interpreted as such.  To the extent, however, of any irresolvable inconsistency between the terms and provisions of the APA and those of this Agreement as to matters which are addressed in this Agreement, the terms and provisions of the APA shall govern and control.

13.     Execution in Counterparts.  This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.     Miscellaneous.  Assignor acknowledges and agrees that Assignee shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Assignor with respect to this Agreement.

*[Signatures appear on following page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**AMERICAN SIGNATURE, INC.**

By: _____
Name: _____
Title: _____


**ASSIGNEE:**
**HOBBY LOBBY STORES, INC.**

By: _____
Name:
Title:

**Schedule A to the Assumption and Assignment Agreement**

**Store No. 107 (Orland Park, IL):**

**Lease and Related Assigned Agreements:** Agreement of Lease, dated as of June 10, 2002, as subsequently amended, supplemented or otherwise modified (including, without limitation, by related assignments, renewals and estoppels) from time to time.

**Premises:** Store No. 107, 15770 South La Grange Road, Orland Park, IL 60462

**Landlord:** JLP-Orland Park, LLC, an Ohio limited liability company

**Cure Costs:**

Buyer Cure Costs: $606,000.00

Excess Cure Costs: $0.00


**Store No. 406 (Tampa FL):**

**Lease and Related Assigned Agreements:** Agreement of Lease, dated as of May 12, 2003, as subsequently amended, supplemented or otherwise modified (including, without limitation, by related assignments, renewals and estoppels) from time to time.

**Premises:** Store No. 406, 15018 North Dale-Mabry Highway, Tampa, FL 33618

**Landlord:** JLPK-Dale Mabry, LLC, a Delaware limited liability company

**Cure Costs:**

Buyer Cure Costs to be paid by Assignee: $52,060.09

Buyer Cure Costs to be paid by ASIP: $76,410.36

Excess Cure Costs: $0.00