**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*, [1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 659 and 688**<br>**Hearing Date: May 12, 2026 at 10:00 a.m. ET** |

**REPLY OF 3080 & 3232 ALUM CREEK DRIVE LLC IN SUPPORT OF
ITS MOTION FOR ENTRY OF AN ORDER COMPELLING THE DEBTORS'
IMMEDIATE PAYMENT OF POST-PETITION LEASE OBLIGATIONS**

3080 & 3232 Alum Creek Drive LLC (the "Landlord"), through its undersigned counsel, respectfully submits this reply (the "Reply") in support of the *Motion of 3080 & 3232 Alum Creek Drive LLC for Entry of an Order Compelling the Debtors' Immediate Payment of Post-Petition Lease Obligations* [D.I. 659] (the "Motion")[2] and in response to the *Debtors' Objection and Reservation of Rights to Motion of 3080 & 3232 Alum Creek Drive LLC for Immediate Payment of Post-Petition Lease Obligations* [D.I. 688] (the "Objection"). This Reply is supported by the *Declaration of Robert Moriarty* (the "Moriarty Declaration"), submitted contemporaneously herewith. In further support of the Motion, the Landlord states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**ARGUMENT**

**I.      The Debtors Have Consented to Payment of the Post-Petition Insurance and Stub Rent.**

1.      ASI does not dispute that the Post-Petition Insurance is due and owing to the Landlord as asserted in the Motion.  Objection, ¶ 28.  Indeed, ASI expressly "consent[s] to the payment of the Insurance Obligation requested by the Landlord."  *Id.*  Accordingly, the Post-Petition Insurance in the amount of $23,422.31 should be an allowed administrative expense.

2.      Likewise, ASI does not dispute that the Stub Rent is due and owing to Landlord.  Pursuant to the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [D.I. 350] (the "Final Cash Collateral Order"), the Debtors are obligated to pay the Stub Rent "within the later of (x) thirty (30) days following the effective date of such lease being rejected or (y) one (1) business day following the date on which the affected parties consensually resolve or the Court adjudicates any dispute regarding the validity, priority, or amount of such Stub Rent Claim . . . ." Final Cash Collateral Order, ¶ 54.  The Lease was rejected effective March 31, 2026 (*see* D.I. 714) (the "Rejection Date") and ASI does not dispute the Landlord's calculated asserted Stub Rent. Accordingly, ASI's deadline to pay the Stub Rent was April 30, 2026 (the "Stub Rent Deadline").

3.      To date, the Landlord has not received payment on account of the Stub Rent although the Stub Rent Deadline has passed.  Therefore, to the extent the Stub Rent payment is not received prior to any adjudication of the Motion, the Stub Rent in the amount of $72,172.80 should also be an allowed administrative expense.

**II.     Landlord Is Entitled to Allowance of an Administrative Claim for the Tax Obligation Pursuant to Section 365(d)(3).**

    **a.  The Tax Obligation Accrued Post-Petition, and ASI has Not Paid Any Real Estate Taxes to Landlord Despite this Obligation under the Lease.**

4.      In the Objection, ASI sets forth an incomplete recitation of the facts surrounding the Debtors' occupancy of the Premises and the Lease.  ASI argues that it is not obligated to pay the Tax Obligation because said obligation relates to the first half of 2025 which occurred prior to the date upon which the Lease commenced, August 20, 2025 (the "Lease Commencement Date").  Objection, ¶ 9-10.  While this accurately reflects the Lease Commencement Date, it gives the mistaken impression that ASI's occupancy of the Premises first began on the Lease Commencement Date. *Id.* at ¶ 9.  In fact, since as early as 1992, prior to the Landlord's ownership of the Premises, ASI's affiliate JAL Realty Co. owned the Premises and ASI or its affiliates occupied the Premises.  Moriarty Declaration, ¶¶ 3-5.  The Lease only commenced following the closing of a sale leaseback transaction in August 2025, pursuant to which the Landlord purchased the Premises from ASI's affiliate, and the Lease was executed to allow ASI to continue to occupy the Premises. *Id.* at ¶¶ 4-5.  At all relevant times during the period to which the Tax Obligation applies, ASI occupied the Premises. *Id.* at ¶ 18.

5.      Consistent with ASI's continuous occupancy irrespective of ownership, no provision of the Lease limits ASI's obligation to pay amounts which may come due after the Lease Commencement Date but may include or relate to a pre-Lease Commencement Date period.  Pursuant  to the Lease, ASI is obligated to pay its allocable share of "Operating Expenses" which is defined as "all reasonable expenses for operation, repair, maintenance and replacement as necessary to keep the Buildings and the Building Common Area fully operational and in good order, condition and repair" including, but not limited to, the list enumerated in Section 6(a)(ii) of

the Lease, which includes "all real property taxes."  Lease, § 6(a)(ii).  Although the Debtors' "obligation to **pay** Additional Rent [including Operating Expenses] will begin to accrue on the Lease Commencement Date," nothing in the Lease limits the Landlord's right to bill ASI only for Operating Expenses which are attributable to the post-Lease Commencement Date period.  *Id.* at § 4(a) (emphasis added).

6.  However, for any Operating Expense not billed as Additional Rent, and therefore paid directly to the applicable taxing authority or vendor, ASI must abide by the dates and deadlines established by that applicable taxing authority or vendor.  *Id.* at § 6(a)(i).  Section 6(a)(i) of the Lease provides that if any portion of the Operating Expenses are paid by ASI directly to the applicable taxing authority or vendor, Landlord shall exclude those amounts from the calculation of Operating Expenses to be billed to ASI under the Lease.  *Id.*  Prior to the Landlord's purchase of the Premises, ASI historically paid real property taxes directly to the applicable taxing authority.  Moriarty Declaration, ¶ 9.  Additionally, it is common practice for tenants to directly pay real estate taxes as they come due.  *Id.* at ¶ 10.  Such practice was provided for in the Lease and was the expectation of the Landlord, and no Operating Expenses were ever billed to ASI under the Lease.  *Id.* at ¶¶ 8-12.  By way of example, ASI continued to pay other Operating Expenses directly, such as utilities.  *Id.* at ¶ 11.

7.  The Tax Obligation became due and owing on the date prescribed by the taxing authority—March 2, 2026.  ASI argues that pursuant to Section 6(b), the Landlord was required to bill the Tax Obligation as Additional Rent, and that such Additional Rent was not due and owing until the following month, on April 1, 2026. Objection, ¶ 13.  The Lease, as discussed, expressly states that real estate taxes to be paid directly to the applicable taxing authority shall not be considered Operating Expenses due and owing on the first day of the next subsequent calendar

month.  Lease, § 6(a)(i).  ASI's reliance in the Objection on Section 6(b) is inappropriate, as Section 6(b) applies only to "all rental, sales, use, and inventory taxes or other similar taxes" and not real estate taxes, which are already explicitly provided for above in Section 6(a).  *Id.* at § 6(b).

8.      ASI was obligated to pay real estate taxes under the Lease, and ASI did not pay any real estate taxes under the Lease.

**b.  The Tax Obligation Became Due and Payable Before the Rejection Date.**

9.      Under the billing date case law of the Third Circuit, the Tax Obligation "accrued" on March 2, 2026, when it became due and payable to the applicable authority under the billing date case law of the Third Circuit.  As discussed in the Motion, a debtor must timely perform its post-petition obligations under section 365(d)(3) of the Bankruptcy Code when "the legally enforceable duty to perform arises under [the] lease."  *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 211 (3d Cir. 2001); *see* Motion, ¶ 27-33.  While it may be the Debtors' argument that the Tax Obligation "accrued" pre-Lease Commencement Date, Objection, ¶ 10, that is not a fact and it is not consistent with Third Circuit law.

10.      "The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms."  *In re Montgomery Ward Holding Corp.*, 268 F.3d at 209.  Under *Montgomery Ward*, the inquiry is not when the Landlord's costs accrued, not when the Debtors received the benefit, and not when the obligation was economically earned.  *See id.* at 211. Rather, the Court must consider when the Debtors became legally obligated to *perform* under the terms of the Lease.  *Id.*  The fact that the Tax Obligation relates to an earlier assessment period does not change this analysis.  Moreover, to eliminate ASI's obligation to pay the Tax Obligation based solely on the taxing authority's billing cycle would improperly shift a tax burden allocated

to ASI under the Lease back to the Landlord.  Such a holding would be inconsistent with both the equitable purpose of Section 365(d)(3) and the holding of *Montgomery Ward*.  Accordingly, pursuant to Section 365(d)(3), as of March 2, 2026, the Landlord is entitled to an allowed administrative expense in the amount of $205,853.82 for the Tax Obligation.[3]

### III.      The Landlord is Entitled to Its Attorney's Fees.

11.      Since filing the Motion, Landlord has been compelled to incur further attorneys' fees to enforce its rights under the Lease and the Bankruptcy Code with respect to Debtors' defaults in their failure to timely pay the Tax Obligation, and such fees, as authorized by the terms of the Lease, are recoverable as an administrative claim as well.  *See, e.g.*, *In re Pac-West Telecomm., Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) (attorneys' fees for motion to compel payment of post-petition lease obligations); *In re Beltway Med., Inc.*, 358 B.R. 448, 453-55 (Bankr. S.D. Fla. 2006); *In re MS Freight Distrib., Inc.*, 172 B.R. 976, 978-79 (Bankr. W.D. Wash. 1994); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449, 127 S. Ct. 1199, 1203-04 (2007) (holding that "an otherwise enforceable contract allocating attorney's fees . . . is allowable in bankruptcy except where the Bankruptcy Code provides otherwise.").  These attorneys' fees are estimated to be in excess of $20,000, and will only increase through the hearing scheduled for May 12, 2026.

12.      As discussed above, the Tax Obligation is due and owing under Section 365(d)(3) and ASI's refusal to honor its obligation under the Lease required the Landlord to file the Motion

---

[3] The Objection also states that the Landlord seeks an administrative claim for the Tax Obligation under Section 503(b)(1) of the Bankruptcy Code.  Objection, ¶ 12-19.  This is an incorrect understanding of the Motion.  By the Motion, the Landlord seeks allowance of an administrative claim for the Tax Obligation for the first half of 2025 pursuant to Section 365(d)(3) alone.  All arguments under Section 503(b)(1) contained in the Motion relate to the Post-Petition Insurance, which the Debtors have conceded is due and owing.

to enforce the terms of the Lease.  Therefore, the Landlord is the "prevailing party" of the present dispute and entitled to recover its' attorneys' fees under Section 34 of the Lease.  Lease, § 34.

13.    The Objection asserts two bases for rejection of Landlord's entitlement to fees.  First, ASI argues that fees are not appropriate in connection with the Post-Petition Insurance Claim because the Motion was the first instance Landlord presented this obligation to ASI and ASI has agreed to pay it as any ordinarily allowable administrative expense claim.  Objection, ¶ 28.  Second, ASI argues that because the Landlord is not entitled to the payment of the Tax Obligation, it is not entitled to fees under Section 34 of the Lease.  *Id.* ¶ 27.  ASI has not contested that if the Landlord prevails on its entitlement to the Tax Obligation, it is thus entitled to attorney's fees pursuant to Section 34 of the Lease.  As such, if the Court determines in accordance with the Lease and applicable Third Circuit law that ASI is required to pay the Tax Obligation, it follows that Landlord is also entitled to payment of attorney's fees in accordance with the terms of the Lease.

## IV.    Immediate Payment of the Landlord's Administrative Claim is Appropriate.

14.    The timing of payment of the Landlord's administrative claim for the Post-Petition Insurance, Stub Rent, and Tax Obligation (together, the "Administrative Claim") is firmly within the discretion of this Court.  *See In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) ("The determination of the timing of payment of administrative expenses is within the discretion of the Bankruptcy Court.").  As discussed, each component of the Administrative Claim is a post-petition, pre-rejection expense of ASI due and owing to the Landlord.  ASI speculates that if forced to pay the Administrative Claim immediately, other creditors will "rush to the courthouse" and "severely threaten" the ability of ASI and its affiliated co-debtors to administer these cases.  Objection, ¶ 23.  Additionally, ASI argues that the Landlord has suffered no "hardship" because it is holding a $3 million letter of credit (the "Letter of Credit") that it could

use to pay any outstanding expenses related to the Lease. *Id.* at ¶ 24. ASI, however, cites no case law to support its position that the Landlord must draw and apply the proceeds of the Letter of Credit to its Administrative Claim (since no such law exists). Additionally, because the Lease has been rejected, the Landlord has additional unsecured claims in excess of the Letter of Credit, including prepetition general unsecured claims of $270,668.00, and rejection damages claims of $4,195,262.99, in addition to its outstanding administrative claims and additional potential unliquidated administrative claims. *See* Claim No. 11720. Indeed, the Landlord will not benefit from any perceived "windfall" related to the Letter of Credit, as ASI seems to suggest.

15.    Landlord should not be prejudiced by having to wait to receive payment for the Administrative Claim until some yet-to-be determined point in the future, for obligations ASI was supposed to pay when due, but did not pay, where other similarly situated creditors have been timely paid post-petition obligations. Were the Landlord forced to wait, there is a risk that no funds will be available to pay an otherwise valid administrative claim. Accordingly, ASI should be compelled to immediately pay the Administrative Claim.

## CONCLUSION

WHEREFORE, the Landlord respectfully requests that the Court grant the relief sought by the Motion.

*[Signature page follows]*

Dated: May 7, 2026

Respectfully submitted,

*/s/ Laurel D. Roglen*
Laurel D. Roglen (DE No. 5759)
Erin L. Williamson (DE No. 7286)
BALLARD SPAHR LLP
222 Delaware Ave, 10th Floor
Wilmington, DE  19801
Telephone: (302) 252-4446
Facsimile: (302) 252-4466
E-mail:  roglenl@ballardspahr.com
         williamsone@ballardspahr.com

-and-

Elizabeth Rose
Caiola & Rose, LLC
125 Clairemont Ave.
Suite 240
Decatur, GA 30030

*Attorneys for 3080 & 3232 Alum Creek Drive LLC*