**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*, [1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF ROBERT MORIARTY

I, Robert Moriarty, declare as follows:

1.      I am Vice President of Investments for Brookfield Logistics. I submit this declaration on behalf of 3080 & 3232 Alum Creek Drive LLC (the "Landlord") in further support of Landlord's motion for allowance and payment of an administrative expense claim for unpaid post-petition lease obligations, including real estate taxes arising under the Lease (the "Motion").

2.      The statements in this declaration are based on my personal knowledge, my involvement in the transaction described below, and my review of Landlord's books and records.

3.      I managed the sale-leaseback transaction that closed on or about August 7, 2025, pursuant to which Landlord acquired the real property located at 3080 and 3232 Alum Creek Drive, Columbus, Ohio (the "Property") from JAL Realty Co., an affiliate of Debtor American Signature, Inc. ("ASI").

4.      As early as 1992 and at the time of the sale-leaseback transaction, ASI occupied the entirety of the Property.  A material component of the transaction was that ASI would remain

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

in possession of, and lease from Landlord, the entirety of the Property, approximately 604,800 square feet of warehouse space (the "Premises"), for a three-year term.

5.      In connection with that transaction, Landlord and ASI entered into that certain Industrial Lease (Warehouse/Distribution) Agreement dated August 25, 2025 (the "Lease").

6.      As is customary with industrial leases, the Lease was structured as a triple-net lease. Consistent with that structure, the Base Rent reflects that ASI would bear the real estate taxes and other pass-through expenses associated with the Premises.

7.      Section 6(a)(ii)(I) of the Lease requires ASI to pay real estate taxes as part of Operating Expenses.

8.      Section 6(a)(i) of the Lease also recognizes that direct payments to the applicable taxing authority or vendor should be excluded from Operating Expenses.  In that circumstance, Landlord will not include those amounts in a monthly Operating Expense bill to ASI.

9.      That direct-payment structure was consistent with the parties' expectations at closing.  In connection with the sale-leaseback transaction and Lease, the parties contemplated and agreed that ASI would continue to pay the Premises' real estate taxes directly to Franklin County, as it had historically done when the Property was owned by JAL Realty Co. and occupied by ASI.

10.     Additionally, it is common practice in large industrial leases for the tenant to pay the real estate taxes directly to the taxing authority.

11.     After entering into the Lease, ASI agreed to and continued to pay other Operating Expenses directly, such as utilities.

12.     For these reasons, Landlord did not issue any monthly Operating Expense invoices to ASI during the Lease term.  ASI likewise did not pay Landlord any estimated Operating Expenses during the Lease term and has not paid any real estate taxes for the Premises after the Lease commenced.

2

13.   In the ordinary course, taxing authorities frequently issue real estate tax invoices to the owner of record, even where a tenant is responsible under its lease for paying the taxes.

14.   The real estate tax invoice at issue was issued to Landlord by Franklin County for the Property for tax year 2025 in the total amount of $410,208.20.  The invoice required payment of at least $205,104.10 on or before March 2, 2026.  A true and correct copy of that tax invoice is attached as Exhibit B to the Motion.

15.   The tax invoice was issued after the Lease was executed and after the Lease Commencement Date.

16.   The payment deadline for the first-half tax installment also occurred after ASI commenced its Chapter 11 case and before the Lease was rejected.

17.   ASI filed its Chapter 11 case on November 22, 2025. The Lease was rejected effective March 31, 2026.

18.   ASI occupied the Property for the entirety of 2025.

19.   For any Operating Expense not billed as Additional Rent, and therefore paid directly to the applicable taxing authority or vendor, ASI must abide by the dates and deadlines established by that applicable taxing authority or vendor.

20.   Before making payment itself, Landlord, through counsel, requested that ASI confirm that it would satisfy the March 2, 2026 real estate tax obligation.  ASI refused to do so.

21.   After ASI refused to pay the tax bill, Landlord paid the real estate taxes reflected on the invoice. The amounts paid were not hypothetical, estimated, duplicative, or discretionary charges; they were actual real estate taxes assessed by Franklin County against the Premises.

22.   Landlord has not received any payment or reimbursement from ASI for the March 2, 2026 tax payment.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct this 7th day of May, 2026.

**ROBERT MORIARTY**

A notary is not required pursuant to 28 U.S.C. § 1746.

4