**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN SIGNATURE, INC., *et al.*,[1] | Case No. 25-12105 (JKS) |
| Debtors. | (Jointly Administered) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE PRIVATE SALE OF CERTAIN GOOGLE CLAIMS AND
PARTICIPATION INTERESTS TO
BUYER AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):[2]

**Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):  (a) authorizing the sale of the Google Claims, Participation and Participated Rights (each as defined below) to [REDACTED] (the "Buyer"), free

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: American Signature, Inc. (6162); American Signature Home Inc. (8573); American Signature USA Inc. (6162); ASI Pure Promise Insurance LLC (6162); ASI Elston LLC (7520); ASI – Laporte LLC (6162); ASI Polaris LLC (6162); ASI Thomasville LLC (6162); and American Signature Woodbridge LLC (6162). The Debtors' business address is 4300 E. 5th Avenue, Columbus, OH 43235.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Rudolph Morando in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") [Docket No. 5]. Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration or Agreement (defined below), as applicable. Concurrently herewith, the Debtors are filing the *Declaration of Rudolph Morando in Support of [the Motion]*.

and clear of liens, claims, interests, and encumbrances, pursuant to the terms of that certain *Claim Sale and Purchase Agreement* (the "Agreement"), substantially in the form attached (without the Schedules except Schedule B (Purchase Price)) to the Order as Exhibit 1; and (b) granting related relief.  In support of this Motion, the Debtors submit the Declaration of Rudolph Morando (the "Morando Declaration"), which is attached hereto as **Exhibit B**.

### Jurisdiction and Venue

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

### Background

5.      On November 22, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 25, 2025, the Court entered an order [Docket No. 72] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On December 4, 2025, the United States

Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 119] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### The Sale

6.        Debtor, American Signature, Inc. (the "Seller") has certain claims and causes of action against Google LLC and/or Google LLC's affiliates (collectively, "Google"), including, without limitation: any claims and causes of action arising out of, or in connection with, or relating to, Google's violation of the Sherman Act §§ 1, 2 as enumerated in (1) the United States District Court for the Eastern District of Virgina on April 17, 2025 in *United States of America, et al., v. Google LLC*, (Case No. 1:23-cv-108) and (2) the United States District Court for the District of Columbia on August 5, 2024 in (a) *United States of America et al., v. Google LLC*, (Case No. 20-cv-3010) and (b) *State of Colorado et al., v. Google LLC,* (Case No. 20-cv-3715), on account of certain payments made by Seller to Google with respect to the purchase by Seller from Google of certain advertising services in connection with Google's Advertising Program Terms (the "Google Program Terms") and any other relevant contract for such services between Seller and Google, and all proceeds thereof, including without limitation any interest thereon and other amounts paid or reimbursed in relation thereto (all of the foregoing claims and causes of action, the "Google Claims").

7.        The Google Claims, Participation and Participated Rights include all of Seller's (and, if and to the extent applicable, SSC's (defined below)) claims, interests and causes of action directly arising from or relating to payments made by Seller to Google with respect to the purchase by Seller from Google of certain advertising services (the "Google Spend Amount"), and any other claims and causes of action of Seller (and, if and to the extent applicable, of SSC) relating to the

Google Spend Amount that were paid to Google and all related rights, distributions, amounts, payments related thereto and other proceeds thereof.

8.      The Debtors have negotiated a private sale of the Google Claims, Participation and Participated Rights to Buyer, under which Buyer will acquire, for cash consideration of $5,757,165.65 (the "Purchase Price"), all rights, title, and interest of the Seller in and to the Google Claims, Participation and Participated Rights, together with all related rights, interest thereon, and proceeds thereof, on the terms summarized below and as set forth in the Agreement.

9.      The Debtors have analyzed the process, timing and potential costs related to pursuing the Google Claims.  Prior to the Petition Date, Debtors retained Keller Postman LLC ("Keller")[3] which is coordinating the pursuit and prosecution of claims against Google on behalf of Debtors and other potential plaintiffs.   Keller is proceeding against Google on behalf of numerous parties, and Keller is entitled to a contingency fee for a percentage of the amounts recovered on account of the Google Claims.  Any amounts owed to Keller in connection with the pursuit of the Google Claims incurred during the period from and after the Closing Date are the responsibility of the Buyer and will not reduce the Purchase Price.  For the avoidance of doubt, Buyer shall be responsible for any contingency fee owed to Keller in connection with the pursuit of the Google Claims.

10.     Based on this analysis, the Debtors believe that the process and timing of collecting on the Google Claims is uncertain, and there is a risk of recovery of the Google Claims.  That is, there is no assurance that the estate would realize any meaningful (and timely) net recovery. In

---

[3]     Keller, and any counsel retained by Seller in accordance with the terms of the Agreement, are referred to as "Multi-Plaintiff Counsel."

light of the timing and risk of collection, the Debtors explored the possibility of selling the Google Claims.

11.    The Debtors started marketing the Google Claims in mid-April of 2026 starting with the parties that had participated in the marketing of the Debtors rights to certain tariff refunds. Debtors spoke with 11 different parties who had some interest in purchasing the Google Claims.

12.    The Debtors solicited bids from interested parties and received three bids.  Debtors determined Buyer's offer to be the highest and best offer for the Google Claims.  In addition to offering the highest amount, Buyer is a sophisticated party who has the resources to close quickly.

13.    Buyer is an independent third-party buyer and is not an "insider" or "affiliate" as defined in section 101 of the Bankruptcy Code.  The Agreement was negotiated and entered into in good faith, and from arm's length bargaining positions with each party represented by its own legal counsel and other advisors.

14.    The Debtors believe, for the reasons set forth herein and in the Morando Declaration, that it is in the best interests of the Debtors' estates and all parties in interest, and that it will maximize value for the estates, to complete the proposed sale of the Google Claims, Participation and Participated Rights under the terms of the Agreement.  The proposed sale converts a litigation asset into an immediate and certain benefit for the estate and its creditors, eliminates the risks and costs attendant to continued litigation, and avoids further depletion of estate resources through professional fees and litigation expenses.  The key terms of the Agreement are summarized below:[4]

| Provision | Summary Description |
|---|---|
| Buyer | [REDACTED] ("Buyer"). |

---

[4]    The descriptions below only summarize certain provisions of the Agreement, and the final terms of the Agreement will control in the event of any inconsistency.

| Provision | Summary Description |
|---|---|
| Seller | American Signature Inc. ("Seller"). |
| Purchase Price | $5,757,165.65<br><br>Within three (3) Business Days (as defined below) after the later to occur of (a) the date upon which the last of Buyer and Seller have duly executed the Agreement, and (b) satisfaction of the Closing Conditions, Buyer shall deliver to Seller the Purchase Price as set forth on Schedule B to the Agreement by wire transfer of immediately available funds to the account of Seller. The date upon which the Purchase Price is paid by Buyer to Seller shall be the "Closing Date."<br><br>Agreement §4; Schedule B. |
| Purchased Property | An undivided 100% beneficial participation interest in all of Seller's (including any claims or interests purchased from SSC in accordance with the SSC Bill of Sale (defined below)) right, title and interest in, to and under, or arising out of, or in connection with any and all claims and causes of action held by Seller against Google, including, without limitation: any claims and causes of action arising out of, or in connection with, or relating to, Google's violation of the Sherman Act §§ 1, 2 as enumerated in (1) the United States District Court for the Eastern District of Virgina on April 17, 2025 in *United States of America, et al., v. Google LLC*, (Case No. 1:23-cv-108) and (2) the United States District Court for the District of Columbia on August 5, 2024 in (a) *United States of America et al., v. Google LLC*, (Case No. 20-cv-3010) and (b) *State of Colorado et al., v. Google LLC*, (Case No. 20-cv-3715), on account of certain payments made by Seller to Google with respect to the purchase by Seller from Google of certain advertising services in connection with the Google Program Terms and any other relevant contract for such services between Seller and Google, and all proceeds thereof, including without limitation any interest thereon and other amounts paid or reimbursed in relation thereto.<br><br>Agreement:  Whereas Clause; § 1(a); Schedules A and B. |
| Sale Free and Clear of All Encumbrances | The sale of the Google Claims, Participation and Participated Rights, is to be free and clear of any liens, charges, easements, title defects, encumbrances, encroachments, hypothecations, security interests, claims, interests, leases, pledges, options or agreements to purchase or lease or otherwise acquire any interest, rights of first refusal or of first offer, sales agreements, |

| Provision | Summary Description |
|---|---|
| | mortgages, proxies, voting trusts or agreements, restrictions of any kind, including restrictions on title, transfer, voting, receipt of income, use or exercise of any other attribute of ownership, or adverse claims of ownership or use and adverse monetary claims of any kind, including, without limitation, any and all "Claims" as defined in Section 101(5) of the Bankruptcy Code, in each case arising prior to or after the date hereof and to the fullest extent permitted by applicable law (collectively, other than claims of Multi-Plaintiff Counsel (as defined below) under the terms of its engagement, any "Encumbrances") to the fullest extent permitted by applicable law. <br><br> Agreement §7(b). |
| Breakup Fee | N/A. |
| Participation and Security Interest | Buyer and Seller intend the transactions contemplated by the Agreement (the "Transactions") to be a true sale of an undivided 100.0% participation interest (the "Participation") in and to the Google Claims on the Closing Date.  The "Participated Rights" of Buyer shall include (i)  any and all right to receive all amounts paid or payable in respect of the Google Claims (including interest, penalties, expenses, fees, damages and any other amounts, and in each case whether accruing prior to, on or after the date of the Agreement); (ii) all supporting documentation and materials, including without limitation, all invoices and receipts, and any terms of service entered into between Google and Seller related to the purchase of any advertising related to the Claim, including, without limitation, the Google Program Terms, and any amendments and supplements with respect thereto, and any other contracts, agreements, documents, data, correspondence, notices, and other information primarily related to any of the above and any of Sections 1(c),  and (d) of the Agreement (collectively, the "Supporting Documents"); provided, however, that Seller shall be entitled to retain copies of all Supporting Documents to the extent reasonably required by Seller for accounting or tax purposes or in connection with the Bankruptcy Case; (iii) the net amount of all cash, securities, or other property, received, distributed or payable on account of any of the foregoing; and (iv) all proceeds of the foregoing.  The sale of the Participation shall be deemed an absolute and unconditional sale of the Participated Rights for the purpose of collection and satisfaction and shall not be deemed to create any debtor-creditor relationship or be construed to be a loan or a financing. |

| Provision | Summary Description |
|---|---|
| | From and after the Closing Date, Buyer shall be deemed the sole beneficial owner of the Google Claims and the Participated Rights, and unless or until Buyer becomes the full legal title holder and record owner, Seller shall hold the Google Claims solely for and on behalf of Buyer. |
| | It is the express intent of the Seller and Buyer that the sale by the Seller to Buyer be treated for all purposes as, a true sale by Seller of the Google Claims to Buyer.  In no event shall the Participation be construed as a loan from Buyer to the Seller. Notwithstanding the express intent of the  Seller and Buyer, if for any reason the sale is deemed by a court of competent jurisdiction not to be a sale and instead to be a loan or other financing arrangement, or if the Transactions are otherwise determined to be void or invalid, then (A) to secure the payment or performance, as the case may be, in full of the obligations of the Seller under the Agreement (including without limitation, Buyer's rights in the Google Claims and Seller' obligation to deliver any Distributions or other amounts due hereunder to Buyer on account of its interest in the Google Claims (the "Secured Obligations"), the Seller pledges, assigns and grants to Buyer, effective following the closing on the Closing Date, a first priority continuing security interest (the "Buyer Security Interest") in, and lien on, all of its right, title and interest, whether now owned or hereafter acquired, in, to and under the Google Claims and any Distributions (whether paid or received as a judgement, settlement or otherwise in respect of the Google Claims) and any other rights and claims of Buyer against Seller under the Agreement in respect of the Google Claims (other than Seller's rights to receive the payment of the Purchase Price), and (B) the Agreement shall constitute a security agreement under applicable law. Seller authorizes Buyer's filing of a financing statement on or after the Closing Date in such jurisdictions as may be designated by Buyer and to take such other steps and make such other filings as Buyer may determine necessary to perfect Buyer's lien and security interest in and to such collateral. |
| | Agreement § 2. |
| Expense Reimbursement | If (A) the Agreement is terminated by (i) Buyer pursuant to Section 9(d) of the Agreement, or (B) Seller completes the sale of all or substantially all of the Google Claims to any third party (other than Buyer) prior to the termination of the Agreement in breach of its covenants and obligations hereunder, then in each |

| Provision | Summary Description |
|---|---|
| | such case, upon the consummation of any sale of all or substantially all of the Google Claims to any third party (other than Buyer), and solely from the proceeds thereof, Seller shall pay to Buyer cash or other immediately available funds in an amount equal to the documented costs and expenses reasonably incurred by Buyer in connection with the Agreement (the "Expense Reimbursement"); provided, however, that in no event shall the amount of the Expense Reimbursement exceed three percent (3%) of the Purchase Price. The Expense Reimbursement shall be treated as an administrative expense claim in the Bankruptcy Case, and shall be paid to Buyer within three (3) Business Days following the receipt by Seller of the proceeds of the purchase price from such third party.<br><br>Agreement § 10(b). |
| Closing Conditions | Buyer's and Seller's obligations to close the transaction shall, as applicable, be subject to the following Closing Conditions:<br><br>(a) Entry of the Sale Approval Order (as defined in the Agreement), in form and substance reasonably satisfactory to Buyer and Seller, which shall be unstayed and in full force and effect;<br><br>(b) Seller's execution and delivery to Buyer of a power of attorney in substantially the form attached to the Agreement as Exhibit A;<br><br>(c) Seller's and SSC's (defined below) execution and delivery to Buyer of the SSC Bill of Sale (defined below) and a copy of the related notice delivered by Seller and SSC to Google;<br><br>(d) Seller's representations and warranties being true and correct in all material respects as of the Closing Date;<br><br>(e) Seller having complied in all material respects with all covenants required by the Agreement to be complied with by it on or before the Closing Date;<br><br>(f) Buyer's representations and warranties being true and correct in all material respects as of the Closing Date; and<br><br>(g) Buyer having complied in all material respects with all covenants required by the Agreement to be complied with by it on or before the Closing Date. |

| Provision | Summary Description |
|---|---|
| | Agreement §§ 5 and 6. |
| Covenants, Representations & Warranties | (a) The execution and delivery of the Agreement and the Transaction Documents by Seller and Buyer, and the performance by Seller and Buyer of their respective obligations thereunder, will not (i) result in a breach or violation of any provision of Buyer's or Seller's organizational documents or any contract or other document to which Seller or Buyer is a party or to which Buyer or Seller or Buyer or Seller's assets are bound, (ii) violate or breach any statute, law, writ, order, rule or regulation of any government, governmental agency, authority, court, arbitration panel or other tribunal (collectively, "Governmental Authority") applicable to Seller or Buyer, or (iii) breach or result in default of any judgment, injunction, decree or determination of any Governmental Authority applicable to Buyer or Seller. |
| | (b) To its knowledge, Seller has not breached or violated any law, regulation or rule applicable to it that would result in a reduction to or impairment of the Google Claims or any distribution to be made with respect to the Google Claims receivable by Buyer pursuant to the Agreement. |
| | (c) Except for the Sale Approval Order, neither the execution and delivery by Buyer or Seller of the Agreement, nor the performance by Buyer or Seller of its obligations under the Agreement, requires the consent, approval, order or authorization of, or registration with, or the giving notice to, any Governmental Authority or any other person or entity, except such as have been obtained, made or given or are otherwise set forth in the Agreement. |
| | (d) The Google Claims arise from payments made by Seller to Google on account of advertising purchases made by Seller from Google in an amount no less than the Google Spend Amount. The information in Schedule A to the Agreement is true, complete and correct in all material respects and such information provides an itemized statement of all invoices received by Seller from Google, the amount of each such invoice, the date of such invoice, and the date each such invoice was paid by the Seller to Google, in each case, with respect to the Google Claims. |
| | (e) Seller has provided Buyer with true, accurate and complete copies of all material Supporting Documents. |

4918-5216-1981.3 03721.00001                    10

| Provision | Summary Description |
|---|---|
| | (f) Seller has not previously sold, conveyed, transferred, assigned, participated or otherwise encumbered or created or suffered an Encumbrance on the Participated Rights, nor has Seller agreed to sell, convey, transfer, assign, participate or otherwise encumber or create or suffer an Encumbrance on the Participated Rights, in either case in whole or in part, to any person or entity, in each case, excluding Encumbrances that have previously been discharged or will be discharged pursuant to the Approval Order. |
| | (g) No payment, or other distribution has been received by Seller, or by any third party on behalf of Seller, in full or partial satisfaction of, or in connection with, the Claim. Other than with respect to the contingency fee payable to Keller (which is the responsibility of Buyer), no law firm is entitled to contingency fees or other success fees with respect to the Google Claims, and Seller covenants that after the Closing Date, Seller shall not grant to any law firm or any other third party any such rights without the prior written consent of Buyer (which shall be in Buyer's sole discretion). |
| | (h) As of the date of the Agreement, to Seller's knowledge, no objection to the Google Claims has been filed or threatened, except for defenses asserted in public court filings. Seller has not received notice of any claim against Seller by any of Seller's customers, vendors, law firms, customs brokers or any other third party (or any class or group hereof) asserting any right, title, or claim of any kind to all or any portion of the Google Claims or any Distributions. |
| | (i) Seller has not engaged, and shall not engage, in any act, conduct or omission (including by virtue of Seller owing amounts or property to Google in connection with the Google Claims), or had any relationship with any party that will reduce or impair or otherwise adversely affect the Google Claims and the Participated Rights in any material respect or result in Buyer receiving proportionately less in payments or distributions under, or less favorable treatment for the Participated Rights, in each case, in any material respect, than is received by other holders of similar claims. |
| | (j) Seller has completed an investigation of data, documents, and other materials (collectively, "Claim Material") |

| Provision | Summary Description |
|---|---|
| | relevant to the Google Claims and provided all material Claim Material to Buyer. Should Seller identify additional Claim Material material to the Google Claims, Seller will provide such newly identified Claim Material to the Buyer as soon as practicable. |
| | (k) Seller acknowledges that (a) its sale of the Participation and Participated Rights to Buyer on the Closing Date is irrevocable; (b) following the Closing, Seller shall have no recourse to the Participation or Participated Rights; and (c) following the Closing, Seller shall have no recourse to Buyer, except for Buyer's breaches of its representations, warranties or covenants as expressly stated in the Agreement. |
| | (l) Seller was the direct purchaser from Google of all advertising services in connection with the Google Claims and did not use any intermediary or agent to purchase such services. |
| | (m) Buyer has as of the date of the Agreement, and will have at the Closing, sufficient cash in immediately available funds to pay the Purchase Price in cash in accordance with the terms of the Agreement. |
| | (n) Notwithstanding anything contained in the Agreement to the contrary, Buyer acknowledges and agrees that Seller is not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller in the Agreement and Buyer acknowledges and agrees, that except for the representations and warranties contained therein and Seller's obligations following the Closing Date thereunder, the Google Claims are being transferred to Buyer as of the Closing Date on an "as is" and "where is" basis.<br><br>Agreement §§7, 8. |
| Post-Closing Covenants | (a) Seller shall have responsibility to act as direct party to prosecute, enforce all rights and remedies and/or defend the Google Claims and any disputes or objections relating thereto. Seller agrees to take all actions on a timely basis in order to preserve and enforce its rights and remedies to the Google Claims and Participated Rights, including, without limitation, to take any |

| Provision | Summary Description |
|---|---|
| | required actions with any Governmental Authority. Buyer acknowledges and agrees that Seller shall have complied with its obligations under Section 12(a) of the Agreement by cooperating with Multi-Plaintiff Counsel retained in accordance with the Agreement in connection with the Claim as requested from time to time by Multi-Plaintiff Counsel. |
| (b) | Seller shall (a) take all reasonable actions directed by Buyer to promptly enforce, preserve, protect, and maximize Buyer's rights to distributions and payments with respect to the Claim; and (b) not fail to take, or delay taking, any such action without Buyer's prior written consent; provided, however, that Seller shall be permitted to take any action or refrain from taking any action as directed from time to time by Multi-Plaintiff Counsel in connection with the Google Claims. |
| (c) | Seller shall deliver drafts of all material pleadings, motions, and other documents it receives from Multi-Plaintiff Counsel in connection with the Google Claims within two (5) Business Days following such receipt. |
| (d) | Notwithstanding anything to the contrary in this Agreement, in connection with the preservation and enforcement of the Google Claims following the Closing Date (i) other than as permitted or directed by Buyer, Seller shall not compromise or settle the Google Claims, or modify the Google Claims or the Google Spend Amount, without the prior written consent of Buyer, and (ii) in connection with the enforcement and preservation of the Google Claims and Participated Rights, Buyer shall have exclusive control over all decision making with respect to all decisions and actions that would otherwise have been exercised by Seller; provided that Seller hereby agrees to continue to act as direct party to any dispute or litigation relating to the Google Claims, subject to its representation by Multi-Plaintiff Counsel. |
| (e) | In the event Seller receives any material information, communications or notices in respect of the Google Claims or Participated Rights on or after the Agreement Date, Seller shall promptly deliver the same to Buyer, including, without limitation, information, communications or notices (i) in respect of any claim, action, suit or proceeding of any kind brought by any of |

| Provision | Summary Description |
|---|---|
| | Seller's affiliates, customers, vendors, law firms, or any other third party asserting any right, title, or claim of any kind to all or any portion of the Google Claims or (ii) from any Governmental Authority; <u>provided, however</u>, in the event that Seller receives any objection or dispute of the Google Claims or Google Spend Amount, Seller shall immediately, and in any event within two (2) Business Days after its receipt of such notice, notify Buyer in writing of such objection or dispute. |
| (f) | At the request of Buyer, Seller shall issue irrevocable written directions (in form and substance satisfactory to Buyer in Buyer's reasonable discretion) to Multi-Plaintiff Counsel, any other advisor representing Seller, or any other third party as appropriate, including any third party that receives or is entitled to receive proceeds from the Google Claims or Participated Rights, to make payment of proceeds from the Google Claims or Participated Rights as directed by Buyer. |
| (g) | Buyer acknowledges that Seller has retained Keller in connection with the prosecution of the Google Claims, and as only one plaintiff represented by Multi-Plaintiff Counsel among many others with similar claims being pursued by Multi-Plaintiff Counsel, neither Buyer nor Seller may have the ability to cause Multi-Plaintiff Counsel to file proceedings, complaint, demands or pursue any particular remedy or recourse in connection with the Claim. |
| (h) | To the extent applicable, Seller shall not voluntarily dismiss or elect not to pursue all or a material part of any rights or remedies related to the Claim. |
| (i) | Buyer acknowledges that Seller has retained Keller as counsel to advise Seller with respect to the enforcement, preservation and defense of claims related to the Google Claims that Seller now holds and may hold in the future. Seller shall, upon the written request of Buyer and at Buyer's sole cost and expense, file proceedings, complaint, demands or pursue any other available remedy or recourse as reasonably directed by Buyer in connection with the Google Claims, and Seller shall take any other enforcement or preservation actions, or shall instruct Keller or any law firm or other advisor retained by Seller or Buyer, to take such |

| Provision | Summary Description |
|---|---|
| | actions, reasonably requested by Buyer. Buyer shall have the right to review, comment, and consent to all such material pleadings, motions, and other documents or filings. Seller acknowledges that Buyer has the unconstrained right to instruct Seller to change its counsel from Keller to any other counsel selected by Buyer in connection with the Google Claims. |
| (j) | Seller will, at Buyer's request and expense, file forms with any appropriate Governmental Authority or other third party as are necessary or appropriate to cause Buyer rather than Seller to directly receive any recoveries in respect of the Google Claims from Google or other individual or entity responsible for remitting proceeds or distributions with respect to the Google Claims |
| (k) | From and after the Agreement Date and until the occurrence of a termination event in accordance with Section 9 of the Agreement, Seller shall cease all discussions with any other third party with respect to any sale of any interest in the Google Claims; provided that Seller may respond to inquiries from third parties subject to compliance with this Agreement. |
| (l) | Seller covenants and agrees that it shall not effect a dissolution of the Seller until the earlier of (i) all proceeds arising from or in connection with the Google Claims having been received by Buyer or (ii) the Google Claims having been irrevocably withdrawn, discontinued, dismissed with prejudice, or otherwise finally determined by a court of competent jurisdiction pursuant to a final and non-appealable order that no further proceeds or distributions are capable of being remitted in respect thereof. |
| (m) | From and after the Agreement Date, subject to the occurrence of the Closing, Buyer shall bear all fees, including, but not limited to professional fees, documented out-of-pocket costs and expenses incurred by Seller or Buyer, including, without limitation, all fees (including contingency fees), costs and expenses payable to Multi-Plaintiff Counsel or such other counsel or advisors reasonably retained by Seller (i) in furtherance of the enforcement, prosecution and defense of the Claims, and (ii) the performance by Seller of its obligations under the Agreement. Seller |

| Provision | Summary Description |
|---|---|
| | shall provide Buyer with copies of all invoices and other out-of-pocket costs and expenses incurred by Seller in connection with the foregoing. The fees, costs and expenses of Seller to be borne by Buyer under Section 12(l) of the Agreement shall include, without limitation, all costs and expenses of Seller to retain employees, professionals and/or consultants to comply with Seller's obligations under the Agreement following the wind-down of Seller's operations pursuant to the Bankruptcy Case. |
| Termination Events | The Agreement may be terminated on the following conditions:<br><br>(a)   by the mutual written consent of Seller and Buyer;<br><br>(b)   by either Seller or Buyer if the Bankruptcy Court shall have stated unconditionally that it will not enter the Sale Approval Order; provided that a Party shall not be permitted to terminate the Agreement pursuant to Section 9(b) of the Agreement if the material breach of any of its representations, warranties, covenants or agreements contained in the Agreement resulted in or caused such event;<br><br>(c)   by written notice of either Seller or Buyer if the Closing Date shall not have occurred on or before August 31, 2026 (the "Outside Date"); provided that a Party shall not be permitted to terminate the Agreement pursuant to Section 9(c) if such failure was caused by such Party's failure to perform any of its obligations under the Agreement; provided, further, that such Outside Date can be extended by the mutual written agreement of the Parties;<br><br>(d)   by written notice from Buyer to Seller, upon a breach of any covenant or agreement by Seller, or if any representation or warranty of Seller will have become untrue, in each case that Buyer reasonably determines could have a material adverse effect on the Google Claims; provided that (i) if such breach is curable by Seller, then Buyer may not terminate the Agreement under Section 9(c) unless such breach has not been cured by the date which is the earlier of (A) two Business Days prior to the Outside Date and (B) 30 days after Buyer notifies Seller of such breach and (ii) the right to terminate the Agreement pursuant to Section |

| Provision | Summary Description |
|---|---|
| | 9(d) will not be available to Buyer at any time that Buyer is in material breach of, any covenant, representation or warranty of the Agreement; or<br><br>(e) by written notice from Seller to Buyer, upon a breach of any covenant or agreement by Buyer, or if any representation or warranty of Buyer will have become untrue, in each case that Seller reasonably determines could have a material adverse effect on Buyer's ability to consummate the Transactions or otherwise cause the Closing Conditions not to be satisfied prior the Outside Date; provided that (i) if such breach is curable by Buyer, then Seller may not terminate the Agreement under Section 9(e) unless such breach has not been cured by the date which is the earlier of (A) two Business Days prior to the Outside Date and (B) 30 days after Seller notifies Buyer of such breach and (ii) the right to terminate the Agreement pursuant to Section 9(e) will not be available to Seller at any time that Seller is in material breach of, any covenant, representation or warranty of the Agreement.<br><br>Agreement §9. |
| Power of Attorney | Seller shall appoint Buyer, individually and collectively, as their true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Google Claims, and grants to Buyer full authority to do all things necessary to enforce the Google Claims including, without limitation, endorsement of any checks constituting Distributions.<br><br>Agreement §13. |
| Deposit | N/A. |
| Sale to Insider | N/A. |

15. In connection with entering into the sale of all of the Debtors' Google Claims, the Debtors are also entering into a separate bill of sale (the "SSC Bill of Sale") with Schottenstein

Stores Corporation ("SSC"), pursuant to which SSC shall transfer and assign any interests SSC may have in certain of the Debtors' Google Claims.

16.    SSC is indemnified for certain fees and expenses in connection with the SSC Bill of Sale. The Debtors agree to indemnify SSC for SSC's costs in connection with the negotiation, execution and delivery of the Bill of Sale and must satisfy that obligation in order for the Bill of Sale to be effective.  Any other indemnification obligation owed to SSC in connection with the Bill of Sale shall be the responsibility of Buyer _upon consummation of the above-described sal and Buyer's concurrent assumption of Debtors' rights and obligations under the SSC Bill of Sale). The Debtors do not believe that their obligation to SSC will exceed $50,000 and that such cost is reasonable in light of the importance of the execution of the SSC Bill of Sale in order to proceed with the sale of the Google Claims and for the Debtors to receive the Purchase Price.

17.    The form of the SSC Bill of Sale is attached as Exhibit B to the Agreement.

18.    The Debtors submit that the provision relating to the grant of the Buyer Security Interest are fair, reasonable and appropriate to protect Buyer from the risk that the sale is deemed by a court of competent jurisdiction not to be a sale and instead to be a loan or other financing arrangement, or if the Transactions are otherwise determined to be void or invalid.  Providing the Buyer Security Interest, in the alternative, ensures that Buyer receives the benefit of its bargain as it will have already paid Debtors the Purchase Price and does not diminish the Debtors' estates as the Debtors will have already received value for the Google Claims.

19.    The Debtors also agree to provide Buyer with the Power of Attorney to enable Buyer to take such actions as may be reasonable or necessary in order to ensure the recovery of the Google Claims.

20.     Additionally, to facilitate Buyer's ability to recover on the Google Claims, the Debtors agree to take action or refrain from action in connection with the pursuit of the Google Claims as directed by Buyer or as advised by Multi-Plaintiff Counsel.  Debtors also agree, among other things, to provide communications received from Multi-Plaintiff Counsel to Buyer and, to the extent it is able to do so, to direct Multi-Plaintiff Counsel in accordance with instructions from Buyer.  Buyer will be responsible for all fees, including contingency fees, costs and expenses incurred by Seller or Buyer in connection with the pursuit of the Google Claims.

21.     Debtors also agree to continue the corporate existence of American Signature, Inc., including following the effectiveness of any proposed plan of reorganization or liquidation or in the event of a conversion of the Debtors' bankruptcy cases to cases under Chapter 7 of the Bankruptcy Code, until such time as Buyer receives all the proceeds of the Google Claims or the Google Claims having been irrevocably withdrawn, discontinued, dismissed with prejudice, or otherwise finally determined by a court of competent jurisdiction pursuant to a final and non-appealable order that no further proceeds or distributions are capable of being remitted in respect thereof.

22.     The sale is intended to be a private sale, subject to Court approval.  As discussed above, Debtors engaged in a process to identify potential buyers and received three proposals. Buyer's offer was determined to be the highest and best offer.  As Debtors are proposing a private sale, there is no break-up fee for Buyer should the Transactions not close.  However, in light of Buyer's incurring expenses in advance to pursue the proposed Transactions, the Debtors agreed to the Expense Reimbursement (which is limited to 3% of the Purchase Price) to compensate Buyer for its expenses relating to pursuing the transactions in the event that the Debtors sell all or substantially all of the Google Claims to a third party other than Buyer or upon the occurrence of

certain events of default (described above). The Expense Reimbursement shall be paid from the proceeds of a sale to a third party and shall be treated as an administrative claim in the bankruptcy. Debtors submit that the proposed Expense Reimbursement is fair and reasonable.

23.    For the reasons discussed above, the Debtors have determined in their business judgment that the proposed sale of the Google Claims, Participation and Participated Rights, to Buyer constitutes a transaction that will maximize value for these assets.

## Basis for Relief

### I.    The Proposed Sale Transaction Reflects a Sound Exercise of the Debtors' Reasonable Business Judgment and Should Be Approved

24.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.    The sale of a debtor's property should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)) (noting that courts normally "defer to the trustee's judgment so long as there is a legitimate business justification"); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("[A] bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action."); *In re Titusville Country Club*, 128 B.R. 396, 399 (W.D. Pa. 1991) (observing that a debtor in possession may sell assets outside the ordinary course of business prior to plan confirmation if there is a "sound business purpose"); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (same).

26.     The court in *Delaware & Hudson Railway* held that, once a court is satisfied that there is a sound business reason, "the court must also determine that the trustee [or debtor in possession] has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith."  124 B.R. at 176.

27.     The Debtors propose to sell the Google Claims, Participation and Participated Rights to Buyer free and clear of all Encumbrances,[5] and this decision is supported by a number of sound business reasons.  The Purchase Price represents what the Debtors believe is fair market value for the Google Claims, Participation and Participated Rights.

28.     Buyer is not entitled to a break-up fee in connection with the proposed sale, however, as described above, Buyer is entitled to the Expense Reimbursement if Debtors consummate a sale of all or substantially all of the Google Claims to a third party other than Buyer or upon the occurrence of certain events of default under the Agreement.

29.     The Debtors and Buyer intend the Transaction to be a true sale of an undivided 100% participation interest, however, subject to, and effective upon, the closing of the Transaction, the Debtors are granting Buyer a security interest in the Google Claims and any Distributions (whether paid or received as a judgement, settlement or otherwise in respect of the Google Claims) to protect Buyer in the event that a court of competent jurisdiction determines that the Transactions were not a true sale.

30.     For the reasons noted above, the Debtors believe that the proposed sale of the Google Claims, Participation and Participated Rights to Buyer represents the best and most value-

---

[5]     The Debtors' postpetition financing and prepetition revolving and term loan secured debt was paid in full in connection with the closing of the Court-approved sale of the Debtors' assets.

maximizing transaction available under the circumstances. The transaction also avoids the delay and the incurring of the additional costs that would arise from the Debtors' seeking to collect the Google Claims themselves. The transaction further avoids risk to the Debtors that the Google Claims will not be collectible. Accordingly, the Debtors request approval of the sale under section 363(b) of the Bankruptcy Code.

31.    For these reasons, the immediate sale of the Google Claims Participation and Participated Rights is supported by sound business reasons and is in the best interests of the Debtors' estates. Accordingly, the Debtors request approval under section 363(b) of the Bankruptcy Code of the sale to Buyer.

## II.    The Sale of the Google Claims and Participation Interest Will Be Free and Clear of Liens, Claims, and Encumbrances

32.    Buyer is only willing to complete the sale if the Google Claims, Participation and Participated Rights are sold free and clear of all Encumbrances as described in the Agreement. Accordingly, the Debtors seek authorization to sell the Google Claims Participation and Participated Rights free and clear of all Encumbrances to maximize value.

33.    Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34.     Section 363(f) of the Bankruptcy Code provides for the sale of property "free and clear of any interest."  The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code.  *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).  In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest."  *Id.* at 258.  The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is toward "a broader interpretation which includes other obligations that may flow from ownership of the property."  *Id.* (citing 3 Collier on Bankruptcy 363.06[1]).  As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of section 363(f) is not limited to *in rem* interests.  Thus, as noted by the Third Circuit in *Folger Adam*, the court in *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute."  *Folger Adam*, 209 F.3d at 258.

35.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale free and clear of all Encumbrances.  *See In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).  Moreover, a debtor in possession has broad authority to sell assets free and clear of liens.  *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

36.     The Debtors submit that it is appropriate to sell the Google Claims, Participation and Participated Rights on a final basis, free and clear of any and all Encumbrances, in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such sale.  In particular, known lienholders, if any, will receive notice and will be given sufficient opportunity to object to the relief requested.  Such lienholders that do not object to the sale should be deemed to have consented.  *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) (citations omitted) ("[L]ack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold."); *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that a creditor's failure to object to a sale free and clear of liens, claims, interests and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same).

37.     In addition, the Debtors propose that any Encumbrances asserted in connection with the Google Claims and participation interest will be transferred to and attach to the proceeds of such sale in the same order of priority and with the same validity, force, and effect that creditors had prior to the sale, subject to any claims and defenses the Debtors' estates may have with respect thereto.  *See Folger Adam*, 209 F.3d at 259; *see also In re Elliot*, 94 B.R. at 345 ("[I]f any of the five conditions of § 363(f) are met, the Trustee [or debtor in possession] has the authority to conduct the sale free and clear of all liens."); *In re Circus Time, Inc.*, 5 B.R. 1, 7 (Bankr. D. Me. 1979) (noting that "[t]he power of the Bankruptcy Court to sell property free and clear of liens has long been recognized" and that "Section 363(f) permits a sale free and clear of any interest if any one of the conditions of § 363(f) have been met").  Therefore, the Debtors may sell the Google

Claims, Participation and Participated Rights free and clear of all Encumbrances on the terms set forth in the Agreement.

**III.    A Finding of Good Faith Under
        Section 363(m) of the Bankruptcy Code is Appropriate**

38.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), has held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see also Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) (same); *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

39.    The Agreement was a negotiated, arm's-length transaction in which Buyer acted in good faith and in compliance with the *Abbotts Dairies* standards.  Buyer is also an independent third-party buyer and is not an "insider" or "affiliate" as defined in section 101 of the Bankruptcy

Code.  The Debtors thus request that the Court find that Buyer purchased the Google Claims, Participation and Participated Rights in good faith within the meaning of section 363(m) of the Bankruptcy Code.

## IV.   A Private Sale is Appropriate

40.     Bankruptcy Rule 6004(f) and Local Rule 6004-11(b)(iv)(D) permit a debtor in possession to conduct a private sale pursuant to section 363 of the Bankruptcy Code.  Specifically, Bankruptcy Rule 6004(f) provides that a sale "may be made by public auction or private sale." Fed. R. Bankr. P. 6004(f)(1); *see also In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

41.     Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor in possession may conduct a private sale if a good business reason exists.  *See, e.g.*, *In re MF Glob., Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference."); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing a private sale of the debtor's tire company where the "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (citation omitted) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved.  The court should exercise its discretion based upon the facts and circumstances of the proposed sale.").

42.     The Debtors submit that the proposed private sale to Buyer in accordance with the Agreement is appropriate in light of the facts and circumstances of these chapter 11 cases and the facts relating to the sale itself.  For the reasons described herein, the Debtors have determined that the proposed sale to Buyer is the best option to monetize the value of the Google Claims.  A public

sale process is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price for the Google Claims in light of the costs and expenses of such a process.

43.     Generally, when there is a valid business reason for not conducting an auction, courts, including this Court, in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) of the Bankruptcy Code.  *See, e.g.*, *In re American Signature., Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. May 20, 2026) [Doc. No. 838] (approving private sale of IEEPA Tariff Refund Claims); *In re LL Flooring Holdings, Inc.*, No. 24-11680 (BLS) (Bankr. D. Del. Dec. 16, 2024) (approving a private sale of credit card interchange fee claims); *In re Advantage Holdco, Inc.*, No. 20-11259 (CTG) (Bankr. D. Del. June 1, 2021) (approving a private sale of credit card interchange fee claims for $801,000); *In re RMBR Liquidation, Inc.*, No. 19-10234 (KBO) (Bankr. D. Del. Aug. 22, 2019) (approving a private sale of real property for approximately $2.35 million); *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving a private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving a private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving a private sale of an industrial complex for $17.9 million).

44.     The transaction with Buyer allows the Debtors to maximize the value of the Google Claims and provides a significant benefit to the Debtors' estates.  Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that Buyer's offer is the highest and best offer for the Google Claims at this time, the Debtors request that the Court approve the proposed private sale to Buyer in accordance with the Agreement.

### Waiver of Bankruptcy Rule 6004(h)

45.     Buyer is ready, willing, and able to close the sale.  Because the Encumbrances will attach to the sale proceeds, the Debtors submit that there is no prejudice to creditors by having an

order approving the Motion become effective immediately upon its entry.  Accordingly, the Debtors request a waiver of the 14-day stay requirement under Bankruptcy Rule 6004(h).

**Reservation of Rights**

46.      Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**Notice**

47.      The Debtors will provide notice of this Motion to the following parties, or their counsel if known:  (a) the Office of the United States Trustee; (b) the Committee; (c) the DIP Agent and the Prepetition ABL Agent; (d) the Prepetition Term Agent; (e) Buyer; and (f) all parties requesting notice pursuant to Bankruptcy Rule 2002.

**No Prior Request**

48.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated:  July 15, 2026                                        **PACHULSKI STANG ZIEHL & JONES LLP**

                                                                            */s/ Laura Davis Jones*
                                                                            Laura Davis Jones (DE Bar No. 2436)
                                                                            David M. Bertenthal (CA Bar No. 167624)
                                                                            919 North Market Street, 17th Floor
                                                                            P.O. Box 8705
                                                                            Wilmington, Delaware 19899-8705 (Courier 19801)
                                                                            Telephone:  302-652-4100
                                                                            Facsimile:   302-652-4400
                                                                            Email:  ljones@pszjlaw.com
                                                                                        dbertenthal@pszjlaw.com

                                                                            *Counsel for the Debtors and Debtors in Possession*