**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

2026 SEP -3 A 9:11
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**In re:**
AMERICAN SIGNATURE, INC., et al.,
Debtors.

Chapter 11
Case No. 25-12105 (JKS)
(Jointly Administered)

Docket Ref. Nos. 970, 1009
Hearing Date: September 10, 2026 at 9:30 a.m.

# MOVANT JAMYLA NOBLE'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND IN RESPONSE TO DEBTORS' OBJECTION

Jamyla Noble ("Movant"), appearing pro se, respectfully submits this Reply in support of her Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) [Docket No. 970] (the "Motion") and in response to the Debtors' Objection [Docket No. 1009] (the "Objection"), and respectfully states as follows:

## INTRODUCTION

1. Movant seeks limited relief from the automatic stay for the purpose of allowing her pending employment discrimination action, *Noble v. American Signature, Inc.*, Case No. 1:26-cv-00841-JPH-KMB, pending in the United States District Court for the Southern District of Indiana (the "Indiana Action"), to proceed to determination of liability and damages.
2. Movant does not seek through the present Motion authorization to enforce, execute upon, or collect any judgment against property of the bankruptcy estate. Movant seeks limited relief permitting the Indiana Action to proceed to determination, while reserving the treatment and satisfaction of any resulting judgment for further proceedings and orders of this Court.
3. The Debtors contend that relief should nevertheless be denied because continuation of the Indiana Action would impose defense costs upon the estates, because Movant

allegedly suffers no meaningful hardship from maintenance of the stay, and because Movant allegedly has provided no evidence demonstrating a probability of success on the merits.

4. The documentary record presented with this Reply materially addresses those arguments. In particular, ASI's own prepetition representations concerning its Human Resources investigation substantiate central factual allegations underlying the Indiana Action.

# I. THE RECORD DEMONSTRATES THAT MOVANT'S UNDERLYING CLAIM IS NOT MERELY SPECULATIVE

5. The Objection asserts that Movant "has provided no evidence" demonstrating that she is likely to prevail on the underlying merits of the Indiana Action. The evidence presently available demonstrates, at minimum, that Movant has a bona fide, evidence-supported claim warranting adjudication in the court in which that action is already pending.
6. In an October 7, 2024 Position Statement submitted on behalf of American Signature, Inc. ("ASI") to the Equal Employment Opportunity Commission ("EEOC"), ASI addressed its investigation of Movant's concerns regarding an intimate video and workplace discussion of that video. Relevant portions of ASI's Position Statement are attached as **Exhibit A**.
7. ASI represented to the EEOC that its Human Resources Partner investigated Movant's concerns and determined that a former employee had shown the intimate video to employee Will Bridgeforth and that Bridgeforth subsequently described the video in detail to employee Wendi Roddy.
8. Thus, although the parties dispute the ultimate legal consequences of the conduct and the adequacy of ASI's response, ASI's own investigation substantiated significant portions of the factual events underlying the Indiana Action. Movant's claim therefore does not rest solely upon her unsupported allegations.
9. ASI further represented that Bridgeforth received a written warning and that Roddy received a "first and final" warning. The corrective-action documentation concerning Roddy is attached as **Exhibit B**.
10. Movant acknowledges that ASI represents that Bridgeforth received a written warning. Movant does not contend that no discipline occurred. However, unlike the corrective-action documentation concerning Roddy, Movant has not been provided the corresponding written warning or other disciplinary record concerning Bridgeforth. The presently available materials therefore contain ASI's representation that Bridgeforth was disciplined, but do not independently document the nature, terms, timing, or substance of that discipline.
11. This distinction is relevant because ASI's Team Member Handbook contains policies prohibiting discrimination and harassment and sets forth ASI's procedures for responding to harassment complaints. The Handbook further identifies violation of ASI's non-discrimination or non-harassment policies among the violations that "Will Result in

Immediate Termination." Relevant portions of the applicable Handbook are attached as **Exhibit C**.

12. The conduct substantiated by ASI's own investigation—including the dissemination and detailed workplace discussion of an intimate sexual video involving Movant—implicates the very type of sexual and harassing conduct addressed by ASI's non-harassment policies. Yet, notwithstanding the Handbook's identification of violations of ASI's non-discrimination or non-harassment policies among violations that "Will Result in Immediate Termination," ASI's own account reflects that neither Bridgeforth nor Roddy was terminated for the conduct at issue. ASI represents that Bridgeforth received a written warning and that Roddy received a First and Final Warning. Movant therefore disputes not only whether ASI's remedial response was adequate and reasonably effective, but also whether ASI appropriately applied and enforced its own non-harassment policies after its investigation substantiated material portions of the underlying conduct. These issues warrant development through discovery and adjudication in the Indiana Action.
13. Those issues are appropriately developed through discovery and adjudicated in the Indiana Action. Movant does not ask this Court to adjudicate the merits of her Title VII claim through this stay-relief proceeding.
14. Rather, Exhibits A through C are offered to directly address the Debtors' assertion that Movant has presented no evidence supporting a probability of success. ASI's own investigation and records provide documentary support for significant factual allegations underlying Movant's claim.

# II. CONTEMPORANEOUS EVIDENCE FURTHER SUPPORTS MOVANT'S ACCOUNT AND THE EFFECT OF THE WORKPLACE EVENTS

15. Movant has also obtained a signed statement from Phyllis J. Bonds, MS, NCC, LMHC, Board Certified Professional Counselor, who treated Movant intermittently from January 18, 2022 through April 22, 2024. The statement is attached as **Exhibit D**.
16. Ms. Bonds states that during Movant's final counseling session, Movant reported that the preceding six months had been very difficult and that an incident at work had significantly affected her mentally, physically, emotionally, and financially. Ms. Bonds further documents Movant's reports concerning the intimate video, humiliation, difficulty being at work, and significant emotional and functional consequences during the relevant period.
17. Importantly, Ms. Bonds expressly states that the statements in her letter were condensed and arrived at through a review of actual session notes. Exhibit D therefore reflects information derived from contemporaneous counseling records predating the present litigation and the current bankruptcy stay dispute.

18. Movant also possesses a contemporaneous October 17, 2023 Messenger conversation with another ASI employee, attached as **Exhibit E**. The conversation occurred within days of the workplace confrontation concerning the intimate video.
19. In that conversation, Movant stated that she had never consented to the video being shown to others, identified Bridgeforth in connection with the video, described herself as exhausted by the situation, discussed the workplace investigation, and stated that management had informed her that employees would be interviewed.
20. Exhibit E is not offered to establish that the other participant personally viewed Movant's video, and Movant does not make that assertion based upon the conversation. Rather, Exhibit E corroborates that Movant was contemporaneously discussing the dissemination of the video, her lack of consent, her resulting distress, and ASI's workplace investigation in October 2023—well before commencement of the Indiana Action or the present stay dispute.

## III. CONTINUED MAINTENANCE OF THE STAY IMPOSES SUBSTANTIAL HARDSHIP ON MOVANT

21. The Debtors contend that Movant "will not suffer any harm" if relief is denied because her claim can ultimately be addressed through the bankruptcy claims-allowance process. The Objection further asserts that Movant has not articulated substantial prejudice resulting from delay.
22. That characterization does not adequately account for the nature of Movant's claim, the procedural posture of the Indiana Action, or the evidentiary consequences of additional delay.
23. Movant pursued administrative relief through the EEOC before commencing the Indiana Action and subsequently timely filed the Indiana Action after receiving her Notice of Right to Sue. The Indiana Action is already pending in the United States District Court for the Southern District of Indiana and is stayed because of the Debtors' bankruptcy proceedings.
24. Movant's claim concerns alleged sex discrimination and a hostile work environment arising from intensely personal workplace conduct. The evidence described above reflects that Movant was reporting substantial emotional and functional effects from those events while she remained employed by ASI.
25. Continued delay also carries concrete evidentiary consequences. The underlying events began in 2023. As additional time passes, memories may fade, witnesses may become more difficult to locate, and relevant evidence may become increasingly difficult to obtain.
26. One employee directly involved in the events underlying the dispute, Wendi Roddy, is now deceased. Additional delay therefore presents a meaningful risk to Movant's ability to fully develop and present evidence concerning events that already occurred several years ago.

27. Permitting the Indiana Action to proceed would allow liability and damages to be determined in the federal forum where Movant timely commenced her employment action following exhaustion of the EEOC process.

## IV. THE LIMITED RELIEF REQUESTED MITIGATES PREJUDICE TO THE ESTATE

28. Movant recognizes the Debtors' concern that continuation of the Indiana Action may require expenditure of estate resources and acknowledges the Debtors' representation that no applicable insurance is available to cover the claims asserted in the Indiana Action. The Debtors contend that they would therefore bear the costs of defending that action.
29. The Motion does not presently seek authorization to collect from property of the bankruptcy estate. Movant seeks to proceed with the Indiana Action to determine liability and damages, while reserving the treatment and satisfaction of any resulting judgment for further proceedings and orders of this Court.
30. Accordingly, granting the Motion would not itself authorize collection of any resulting judgment from property of the bankruptcy estate. The treatment and satisfaction of any judgment obtained in the Indiana Action would remain subject to applicable bankruptcy law and further proceedings and orders of this Court.
31. The relief presently sought is permission to proceed with the Indiana Action to determine liability and damages. Movant is not through the present Motion requesting authorization concerning the ultimate treatment or satisfaction of any resulting judgment.
32. Movant does not suggest that the Debtors' litigation-cost concerns are irrelevant. Those concerns, however, should be weighed against the limited nature of the relief presently requested, the evidentiary support for Movant's underlying claim, and the substantial hardship imposed by continued suspension of an already-pending federal employment action.
33. The Debtors also contend that granting relief could encourage other creditors to seek similar relief. Movant respectfully submits that this Motion should be determined upon its own particular facts and circumstances, including the existence of an already-pending federal employment action, the nature of the underlying allegations, ASI's own investigation substantiating material factual allegations, the contemporaneous evidence supporting Movant's account, and the risk associated with further deterioration of witness availability and evidence.

## V. THE BALANCE OF THE RELEVANT FACTORS SUPPORTS LIMITED RELIEF FROM THE STAY

34. The Debtors identify three considerations relevant to determining whether cause exists under 11 U.S.C. § 362(d)(1): (1) prejudice to the bankruptcy estate or debtor from

continuation of the civil action; (2) comparative hardship to the non-debtor party from maintenance of the stay; and (3) the creditor's probability of success on the merits.

35. With respect to prejudice to the estates, Movant acknowledges that the Debtors may incur litigation expenses. However, the requested relief is limited to allowing the Indiana Action to proceed to determination of liability and damages, while reserving treatment and satisfaction of any resulting judgment for further proceedings and orders of this Court.
36. With respect to comparative hardship, continued delay substantially prejudices Movant's ability to prosecute a fact-dependent employment action involving events dating to 2023. One relevant employee is already deceased, and continued passage of time threatens the availability and reliability of additional witness evidence.
37. With respect to probability of success, the documentary evidence now presented directly addresses the Debtors' contention that Movant has provided no evidence supporting the merits of her claim. ASI's own investigation determined that the intimate video was shown to an ASI employee and subsequently described in detail to another ASI employee. ASI thereafter represents that corrective action was imposed. Exhibits D and E additionally provide contemporaneous support concerning Movant's account of the events, the workplace investigation, and the emotional impact she reported during the relevant period.
38. Movant does not ask this Court to determine through the present Motion that she will ultimately prevail in the Indiana Action. The ultimate merits remain for adjudication in that action. The present evidence demonstrates, however, that the Indiana Action is supported by concrete evidence and presents genuine factual and legal issues appropriate for adjudication rather than a merely speculative claim.
39. Under these circumstances, the balance of the relevant considerations supports granting limited relief from the automatic stay so that the Indiana Action may proceed while this Court retains authority over the treatment and satisfaction of any resulting judgment.

# CONCLUSION

WHEREFORE, Movant Jamyla Noble respectfully requests that the Court overrule the Debtors' Objection and grant her Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1), permitting *Noble v. American Signature, Inc.*, Case No. 1:26-cv-00841-JPH-KMB, to proceed in the United States District Court for the Southern District of Indiana for determination of liability and damages, while reserving the treatment and satisfaction of any resulting judgment for further proceedings and orders of this Court, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted

**Jamyla Noble**
Pro Se Movant
5709 Ivy Knoll Ct Apt C
Indianapolis, IN 4625
jamylanoble@gmail.com
Dated: August 27th 2026

# EXHIBIT A

American Signature, Inc.
EEOC Position Statement
October 7, 2024

Relevant Pages 1-4

VORYS

52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

614.464.6400 | vorys.com

Founded 1909

Jacklyn J. Ford
Direct Dial (614) 464-8230
Direct Fax (614) 464-8230
Email jjford@vorys.com

October 7, 2024

Frederick Brubaker
EEOC Investigator
U.S. Equal Employment Opportunity Commission
Indianapolis District Office
115 W. Washington Street, South Tower, Suite 600
Indianapolis, IN 43204

Re: *Jamyla Noble v American Signature Inc.*
EEOC Charge No. 470-2024-05020

Dear Investigator Brubaker:

Our firm represents Respondent American Signature, Inc. (hereinafter "ASI" or the "Company") in the above-referenced charge of discrimination (the "Charge") filed by Jamyla Noble ("Complainant"). Accordingly, please direct future communications related to this matter to my attention. Please also accept this correspondence and the attached exhibits as ASI's position statement in response to the Charge.[1]

Contrary to the allegations in her Charge, Complainant has not been the subject of any type of harassment or discrimination, and her complaints regarding her coworkers have been fully and appropriately addressed. Accordingly, ASI requests that this Charge be dismissed with a finding of no probable cause.

## I. The Company

ASI operates retail furniture stores under the names American Signature Furniture and Value City Furniture. ASI typically refers to its employees as "Associates" or "Team Members." Within each store, hourly associates (office, warehouse, sales, and, in some stores, delivery drivers) report to a management team, which typically includes a Store Manager (sometimes referred to as the General Manager), one or more Assistant Managers (such as a Sales Manager), and, in some stores, a Warehouse Manager. Members of the sales team are referred to as Home Furnishings Consultants ("HFCs") and are paid on an hourly draw-plus-commission basis.

[1] This position statement, and the supporting documents, are based upon ASI's investigation and understanding of the facts to date and are submitted solely in the interest of cooperating with your office in an effort to achieve administrative resolution of the Charge. This position statement is not an affidavit and is not intended to be used in any future proceeding. ASI in no way waives the right to modify, change, or amend this position statement as further investigation or facts may warrant.

VORYS



Pursuant to that compensation arrangement, HFC's are required to satisfy certain minimum sales expectations each month. Failure to do so for four months out of any rolling 12 months results in automatic termination. (See Sales Expectations Policy, attached as Exhibit 1.)

ASI is an equal opportunity employer committed to inclusion and non-discrimination for its associates and applicants. (*See* EEO Policy, attached as Exhibit 2.) The Company prohibits all forms of unlawful discrimination and harassment. The Company also provides its Team Members with a toll-free hotline for reporting any form of discrimination or other workplace concern. Complainant acknowledged receipt and review of these policies. (*See* Handbook Acknowledgment, attached as Exhibit 3.)

ASI does not tolerate any form of discrimination or harassment, maintains well-publicized policies prohibiting such conduct, and takes appropriate disciplinary measures, up to and including termination, against any offender who violates these policies.

## II. Complainant's Employment at ASI

In April, 2022, Complainant was hired by ASI as a Visual Merchandiser at ASI's Castleton store in Indianapolis, Indiana. At her request, she subsequently became a Home Furnishings Consultant ("HFC"), and remains in that role today. Complainant's employment at ASI has been largely uneventful. However, she has consistently struggled to meet the requirements of the Minimum Sales Expectations Policy required for all HFCs. In April, May, and July of this year she received Corrective Actions for failing to meet the minimum requirements. (See Complainant's Corrective Action Reports attached as Exhibit 4.) As a result, she is currently on a Final Warning, and will be automatically terminated if she fails to meet the policy's minimum requirements in any other month between now and April, 2025.

Complainant now alleges that certain conversations she had in the Castleton store a year ago constituted some form of illegal discrimination or sexual harassment. This is not the case. As background, on or around October 13, 2023, Complainant (who is African American) and a co-worker, Wendi Roddy (who is Caucasian), got into a casual discussion about various musical and cultural subjects. In the course of that conversation, Complainant commented that she did not approve of interracial marriages. Ms. Roddy was offended by Complainant's comment, particularly because her own daughter was in an interracial relationship. The conversation then became more heated, at which point Ms. Roddy alleged that Complainant had previously made a sex tape with another co-worker and was therefore in no position to be judgmental about other people's romantic relationships.[2] Shortly thereafter, the conversation ended.

Store Manager Jason Budzinski learned of the incident the following day. He discussed it with those involved, and concluded that while both individuals had engaged in conversation that

---

[2] Although Complainant's Charge appear to concede the existence of a "sex tape," ASI has no knowledge of the details of any such recording. The other alleged participant in the tape is no longer employed by ASI.

VORYS



was inappropriate for the workplace, Ms. Roddy's behavior was more severe because her words were intentionally hurtful toward Complainant, while Complainant's were only unintentionally so. Accordingly, Ms. Roddy received a "first and final" warning, indicating that any additional instances of such conduct would result in her termination. (See Corrective Action Report, attached as Exhibit 5.) Complainant was not reprimanded for her own insensitive remarks.

Perhaps not surprisingly, word of the heated argument – and of Complainant's sex tape – soon spread among the store's employees, as did rumors that some of Complainant's co-workers had actually seen the tape. ASI's Human Resources Partner for the Castleton store, Aerica Jennings, subsequently investigated Complainant's concerns about co-workers learning of and discussing her sex tape. Ms. Jennings determined that a former employee had shown the tape to HFC Will Bridgeforth, who had then described it in detail to Ms. Roddy. For his role in showing the sensitive material to others in the store, Mr. Bridgeforth was issued a written warning.

In addition to the incident concerning Complainant's sex tape, Complainant has also complained about what she considered to be inappropriate videos of other co-workers. In July, 2024, Complainant sent a text message to Mr. Budzinski alleging that she had seen HFC Lucy Bruns watching a video of herself and her boyfriend "topless and kissing." (See text message attached as Exhibit 6.) Mr. Budzinski agreed that such content was inappropriate for the workplace, and he and Sales Manager Tony Hill spoke to Ms. Bruns about it. Ms. Bruns indicated that the video was far less racy than what Complainant had described, and in fact had been posted by Ms. Bruns on her social media account. With the understanding that Ms. Bruns would not watch either that video or similar ones at work in the future, the issue was resolved.

Other than the sex tape issue and the kissing video, ASI is not aware of any other concerns Complainant may have regarding any type of alleged workplace misconduct.

As noted in the EEOC's Guidance on Harassment in the Workplace, "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."[3] This is because the relevant statutes "do not impose a general civility code that covers run-of-the-mill boorish, juvenile, or annoying behavior." [4] Applying those standards, nothing Complainant has alleged rises to the level of "sexual harassment."

## III. Conclusion

Even if the behavior Complainant complained about did constitute harassment – which it did not – ASI's response to those complaints fully satisfied its obligation to investigate and take reasonable remedial action. Action is considered appropriately remedial if it is reasonably calculated to keep the misconduct from recurring.[5] Because ASI's actions - issuing a "final

---

[3] https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace

[4] Id.

[5] "If an employer takes reasonable steps to discover and rectify the harassment of its employees, however, it has discharged its legal duty." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996), cited in

VORYS



warning" to Ms. Roddy, and reminding Ms. Bruns that not all social media content is appropriate for viewing in the workplace – fall well within the definition of "appropriately remedial," it has met, and even exceeded, its legal duty. Accordingly, ASI respectfully request that the Charge be dismissed with a finding of no probable cause.

Sincerely,

Jacklyn J. Ford

JJF/wlh

---

*Marshall v. State*, 2020 U.S. Dist. LEXIS 99498, *33 (N.D. Ind. 2020).

UNITED STATES BANKRUPTCY COURT - DISTRICT OF DELAWARE
In re: American Signature, Inc., et al.
Chapter 11 - Case No. 25-12105 (JKS) - Jointly Administered

# EXHIBIT B

Wendi Roddy
Corrective Action Report

AMERICAN SIGNATURE, INC.

## CORRECTIVE ACTION REPORT

NAME: Wendi Roddy POSITION: HFC DOH: ____________

☐ **Verbal Counseling** ☐ **Written** ☐ **Final** ☐ **Termination** ☒ **First & Final**

1. Describe the specific performance and/or behavior problem(s), including the dates of and previous discussions about this matter.

On 10/13/23 Wendi got into a verbal altercation with another team member (Jamyla Noble). Wendi and Jamyla were discussing inappropriate topics to be discussing at work (Cultural appropriation and Interracial marriage) and Wendi became offended at Jamyla's opinions of the topics. During the conversation Wendi made a reference to a video that was sexual in nature of Jamyla and a former team member with ASI. Wendi stated that she had seen the sexual video, and that Jamyla was a hypocrite on her opinions because of her relationship with former team member. These comments were made to intentionally hurt Jamyla's feelings. Comments like this are unacceptable and does not align with the company's values. Wendi's behavior violated ASI policies on professional conduct with other team members because of the detrimental effect negative comments like this can have on the relationships with other team members in the store.

2. Describe the corrective action the associate must take in order to improve performance and/or correct behavior problem(s).

Going forward Wendi need to conduct herself in a professional manner and abide by all ASI policies regarding professionalism with other team members. Wendi should refrain from making negative comments to other team members and not engage in gossip that would negatively impact other team members in the store. Any further incidents will result in further corrective action up to and including termination of employment.

**Date Issued:** 11/10/23 **Date Expires:** N/A

**I have read this Corrective Action Report and understand that if I do not correct this matter, it will lead to further corrective action up to and including termination.**

Wendi Roddy (signature) Wendi Roddy

**(Associate Signature)** **(Print Name)** **(Date)**

ASSOCIATE COMMENTS:

MANAGER: (signature) DATE: 11/10/23

**Form Revised 10/28/09**

UNITED STATES BANKRUPTCY COURT - DISTRICT OF DELAWARE
In re: American Signature, Inc., et al.
Chapter 11 - Case No. 25-12105 (JKS) - Jointly Administered

# EXHIBIT C

American Signature, Inc.
Team Member Handbook

Relevant Pages 7, 13-15, and 61-64

# Table of Contents

Receipt and Acknowledgement of Team Member Handbook................ 3

Welcome to American Signature, Inc..................................................... 5

**Our Company**........................................................................... 11
Growing With American Signature..........................................12
Our History...............................................................................12
The American Signature Philosophy........................................12
Vision and Values.....................................................................13
Employment-At-Will................................................................ 13
Equal Employment Opportunity.............................................. 13
Non-Harassment....................................................................... 14
Sexual Harassment.................................................................. 14
American Signature's Response to Harassment...................... 15
Retaliation.................................................................................15
False Complaints..................................................................... 15
Americans with Disabilities Act.............................................. 16
Solicitation and Distribution....................................................16
Company Policy Concerning Union Representation............... 16
Open Door Policy.....................................................................16
AlertLine..................................................................................17
Customer Relations...................................................................17

## VISION AND VALUES

At American Signature, we believe that every customer has the right to a well furnished life. We're here to make it easy for customers to get the style they want at a price they'll love. That philosophy lies within everything we do, and it all starts with our Team Members.

Our Team Members are our most valuable assets, and our culture is built on respect, integrity and innovation. We believe that everyone has the opportunity to do great work. Three key values that guide our business and brand come from that belief:

1. We are truthful and transparent.

2. We are trusted Team Members.

3. We are accountable as individuals.

## EMPLOYMENT-AT-WILL

It is the policy of ASI that all Team Members who do not have a written, individual employment contract with ASI for a specific, fixed term of employment are employed "at will," where either party may end the relationship at any time for any reason not otherwise prohibited by law. Nothing in this Handbook guarantees employment to any Team Member, guarantees the terms and conditions of any Team Member's employment, or restricts in any way the right of ASI or the Team Member to terminate the employment relationship at any time. No one other than the Chairman of the Board or President of ASI has the authority to enter into any type of employment contract with an individual Team Member on behalf of ASI. In such cases, the terms of employment will be acknowledged in a written agreement signed by both the Team Member and the President or Chairman.

## EQUAL EMPLOYMENT OPPORTUNITY

It is the policy of ASI to provide equal opportunity in employment to all Team Members and applicants for employment. No person is to be discriminated against in employment because of race, religion, color, sex, sexual orientation, gender identity, age, national origin, disability, genetic information, veteran status, military status or any other classification prohibited under federal, state, or local laws or ordinances.

This policy applies to all terms, conditions, and privileges of employment, including but not limited to: recruitment, hiring, firing, learning periods, training, orientation, placement, Team Member development, promotion, transfer, compensation, and benefits.

It is the duty and responsibility of every Team Member to create and maintain an environment free of discriminatory acts or behavior. Any Team Member who has observed or experienced any workplace discrimination should immediately report the issue to either: (1) their supervisor or manager; (2) Human Resources; or (3) the AlertLine at **1-800-921-5754**.

**NON-HARASSMENT**

ASI will not tolerate any form of harassment of or by our Team Members, customers, vendors or suppliers. The term "harassment" includes slurs and any other offensive remarks or jokes and other unwelcome verbal, graphic or physical conduct. Any form of harassment related to an individual's race, religion, color, sex, sexual orientation, gender identity, age, disability, veteran status, military status, or national origin is a violation of this policy and will result in disciplinary action, up to and including termination. This policy applies to all Team Members.

If harassment occurs or you believe that it has occurred, you may want to initially discuss the matter with the individual whose behavior is bothering you and ask that person to stop. If you are not comfortable talking to that person or if you're not satisfied with the outcome of the discussion, you may talk to your manager or department supervisor.

You are not limited to these individuals, however. You also can discuss the issue with Human Resources or report the issue by calling the AlertLine at **1-800-921-5754**.

**SEXUAL HARASSMENT**

Sometimes people use the word "harassment" to describe conduct far beyond what is covered under this or any other ASI policy, such as personality conflicts or general disagreements. However, "harassment" – and, in particular, the term "sexual harassment" – has a specific meaning, and is not intended to describe all workplace conflicts or disagreements. Sexual harassment involves a specific type of unacceptable conduct, therefore ASI's anti-harassment policy includes the following additional explanation of sexual harassment.

"Sexual harassment" is a specific form of harassment. For purposes of this policy, sexual harassment is defined as unwelcome conduct of a sexual nature, whether verbal or physical, when: (1) submission to or rejection of the conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct is used as the basis for employment decisions regarding that individual; or (3) the conduct substantially interferes with an individual's employment or creates an intimidating, hostile or offensive work environment.

Examples of sexual harassment may include, but are not limited to: unwanted sexual demands; demands for sexual favors in exchange for favorable treatment or continued employment; severe and pervasive sexual jokes, advances or propositions, including those communicated by email, text message, or other electronic methods; and other similar types of unwelcome behavior of a sexual nature.

In addition to the above listed conduct, "sexual harassment" can also include the following examples of unacceptable behavior:

- Unwanted/unwelcome sexual advances.
- Offering employment benefits in exchange for sexual favors.
- Making or threatening reprisals after a negative response to sexual advances.
- Visual conduct - leering, making sexual gestures, displaying sexually suggestive objects or pictures, cartoons or posters.
- Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, and suggestive or obscene letters, notes or invitations, including those communicated by text message, email or other electronic media.
- Unwelcome physical touching.

DO NOT ASSUME THAT THE COMPANY KNOWS ABOUT YOUR SITUATION. REPORT ALL INCIDENTS OF HARASSMENT. CONTACT EITHER (1) YOUR SUPERVISOR/MANAGER; (2) HUMAN RESOURCES OR (3) THE ALERTLINE AT **1-800-921-5754**.

**AMERICAN SIGNATURE'S RESPONSE TO HARASSMENT**

ASI investigates all harassment complaints as thoroughly and promptly as possible. ASI also strives to keep the information gathered in the complaint and investigation process as confidential as possible. However, complaining parties should be aware that ASI's obligation to investigate may require interviews with the alleged offender(s) and/or other witnesses to the alleged misconduct.

If an investigation shows unlawful harassment has happened, ASI will take prompt and appropriate action, up to and including immediate termination.

**RETALIATION**

ASI prohibits retaliation against anyone who has, in good faith, reported harassment or discrimination, or assisted in investigating such issues. If you feel that you have experienced retaliation, follow the Open Door Policy to report your concerns. If retaliation has occurred, or if ASI's investigation is otherwise interfered with, it may result in corrective action, up to and including discharge of the individual retaliating or otherwise interfering with the investigation.

**FALSE COMPLAINTS**

If a Team Member purposefully lodges a knowingly false harassment claim or deliberately gives untrue information about a complaint of harassment or about any other violation of ASI policy, ASI may take corrective action, up to and including termination, against that Team Member.

**Category Two Policy Violations:**

***Violations that May Result in First and Final Warning or Immediate Termination:***

- Smoking or tobacco use anywhere on ASI premises, except in those areas where smoking is specifically authorized or permitted.
- Unsafe work practices, regardless of whether they result in personal injury or significant property damage.
- A Team Member ringing his/her own transaction.
- Personal conduct which substantially impairs the discipline and order of the work environment such as offensive or degrading remarks, profanity, abusive language or aggressive physical or verbal conduct or the threat of such conduct toward Team Members or customers; horseplay, etc.
- Sleeping on the job.
- Severe incident of poor work performance or neglect of duties. The failure of a Team Member to use ordinary and reasonable care in the performance of his or her work-related duties such as: violating stated safety rules; engaging in conduct that results in, or risks resulting in, injury to anyone, significant damage to property or financial loss to ASI; failure to report an accident or loss to ASI; violation of Loss Prevention policies.
- Misuse of the Team Member discount.
- Filing a false report, claim, or complaint.
- Failure to make ASI whole when repayment is requested due to a dishonored check or delinquent ASI-related credit account.
- Intentionally withholding information or providing false information during an investigation.

***Violations that Will Result in Immediate Termination:***

It is hoped that your termination will never be needed. Unfortunately, there may be instances when immediate termination may occur without any prior Corrective Action taking place. Examples of such violations include, but may not be limited to:

- Theft (actual or attempted) or dishonesty.

- Fraud, which includes but is not limited to: falsification of company documents (including timesheets and employment applications), intentional price manipulation in order to purchase merchandise at something other than the current retail price, unauthorized use of company credit cards, etc.

- The misuse of any Team Member discount for personal gain or profit or receiving full retail for returned merchandise that was purchased at a discount.

- Clocking in or out on another Team Member's I.D. or on behalf of another Team Member, or permitting or asking another Team Member to clock in or out on your behalf.

- Two (2) consecutive days of No Call/No Show or two (2) nonconsecutive days of No Call/No Show within a rolling 12 month period.

- Job abandonment.

- Entering or attempting to enter unauthorized work areas.

- The willful refusal to follow a direct instruction from a manager/supervisor.

- Impermissible possession of a weapon on ASI property or while on ASI-related business.

- Possession, use or sale of illegal drugs and/or alcohol on company premises or while on ASI-related business.

- Violation of the ASI's non-discrimination or non-harassment policies.

- Fighting, unprovoked physical assault, attempted assault or offensive, aggressive and/or threatening verbal or physical conduct.

- Vandalism of company, Team Member, or customer property or willful attempt to cause harm, damage, or injury to another person, to the property of that person, or to the property of ASI.

- Reckless use of equipment.

- Reporting to work when under the influence of alcohol or illegal drugs. (Refer to the Substance Abuse Policy.)

- Personal conduct which substantially impairs the Team Member's ability to function effectively as a Team Member by reason of its detrimental effect either on the Team Member's relationship with other Team Members or on the business or reputation of ASI, whether or not it occurs on company premises.

- Disclosing confidential information or proprietary information without specific authorization (Refer to Confidential Information section).
- Engaging in or being employed by a business which is considered to be in competition with ASI.
- Unauthorized tape-recording, videotaping, or other visual or audio recording of meetings or conversations of customers or fellow Team Members in the workplace or elsewhere, in accordance with applicable law.

**Job Performance Issues**

We will strive to provide every Team Member with clear direction to be successful. That may include guidance for improving performance that falls below acceptable standards.

Although we will provide appropriate guidance to Team Members who need it, each Team Member is, in the end, responsible for their own job performance.

**Type and Details of Counseling**

When progressive corrective action is issued, it may involve the following steps: (1) verbal counseling; (2) written warning; (3) final warning; and (4) termination. Though Category 1 violations and general job performance issues will typically result in progressive corrective action, ASI reserves the right to bypass any of these steps, including issuing a Final Warning for Multiple Violations, a First and Final Warning, or immediate termination. Prior occurrences will be identified and considered in determining the appropriate corrective action step.

In appropriate cases, performance issues or behavior problems and the policies violated will be identified, and the actions needed to improve the performance or behavior problems will be described. The Team Member will be given a maximum time allowed for improvement, which will generally be 30, 60, or 90 days. Shorter or longer time periods for improvement may also be set. The Team Member's manager will also identify the steps, if any, that will be taken to monitor progress, coach, or counsel the Team Member regarding the issue.

**Duration of Corrective Actions**

Generally, a Corrective Action that is more than 12 months old will not be used in considering whether to move to the next level of discipline. However, it is appropriate to consider the prior Corrective Action if no more than 12 months has passed between it and the next Corrective Action in a series of misconduct.

> Example: If a corrective action occurs on 2/1/14 and a second one occurs on 10/1/14, both can be considered if a third occurrence arises on 6/1/15.

ASI reserves the right to extend the duration of a Corrective Action in circumstances where the seriousness of the conduct warrants it.

The 12-month time limit does not apply to any Corrective Action taken for egregious offenses, such as theft, violation of non-discrimination or non-harassment policies or other types of harassment prohibited by law, false complaint, workplace violence, foul and abusive language, misappropriation of company property, misuse of Team Member discount, gross insubordination, and other similar egregious offenses.

Some ASI policies may follow a different duration schedule (e.g., Attendance & Punctuality Policy, Sales Expectations Policy, etc.). Team Members should refer to those individual policies or consult with their manager or Human Resources.

UNITED STATES BANKRUPTCY COURT - DISTRICT OF DELAWARE
In re: American Signature, Inc., et al.
Chapter 11 - Case No. 25-12105 (JKS) - Jointly Administered

# EXHIBIT D

Statement of Phyllis J. Bonds, MS, NCC, LMHC
Board Certified Professional Counselor
August 26, 2026

**BONDS COUNSELING SOLUTIONS**
8520 ALLISON POINTE BLVD., STE. 220
INDIANAPOLIS, IN 46250
*317-437-2095 (P) 317-399-6365 (F)*

August 26, 2026

TO WHOM IT MAY CONCERN:

RE; JAMYLA NOBLE

This letter is being sent at the request of Ms. Jamyla Noble. As my client, we met on an intermittent basis from January 18, 2022 through April 22, 2024. During our final session Ms. Noble revealed that the last six months had been very difficult for her. There was an incident at work that significantly affected her mentally, physically, emotionally and financially.

She had started what was supposed to be a very casual physical relationship with a co-worker. After a short time, she began to develop feelings for him. However, she then discovered that he was seeing other women, including another one at work. At some point they made a video that was supposed to be just between them. Unbeknown to her, he started telling their co-workers about their relationship and shared the video with them. She found out these had been shared through conversations with other co-workers. Ms. Noble stated that she felt humiliated and it was very difficult to be at work. He strenuously denied doing either of these acts for a very long time.

The above led to a very deep depression. On some days she would wake up crying. She stated that she cried and slept for six months. She says she couldn't understand why he did it and why he wouldn't admit what he had done. Ms. Noble stated that her very depressed state led to her neglecting her son and herself to the point that she was evicted in March.

If you have questions, comments or concerns about this letter, please do not hesitate to contact me at 317-437-2095.

Sincerely,

*Phyllis J. Bonds, MS, NCC, LMHC*

Phyllis J. Bonds, MS, NCC, LMHC
Board Certified Professional Counselor

*P.S.: These statements were condensed and arrived at during a review of actual session notes.*

UNITED STATES BANKRUPTCY COURT - DISTRICT OF DELAWARE
In re: American Signature, Inc., et al.
Chapter 11 - Case No. 25-12105 (JKS) - Jointly Administered

# EXHIBIT E

October 17, 2023
Messenger Conversation


7:39
Facebook
5G+
Johnea Goodman
Johnea Goodman
OCT 17, 2023 AT 5:39 PM
So, I'm sure you know by now the people we work with don't mind their business and talk too much but I don't think you know everything that was said about you by Aaron cause you're still really nice to him and I know I couldn't be.
The stuff he's told people is really fucked up to the point that I don't even feel right repeating it but I would definitely ask him.
What was sa
You blocked Johnea
You can't message or call them in this chat, and you won't receive their messages or calls.
Unblock
Report

7:39
◄ Facebook

5G+

**Johnea Goodman**

I just really don't think he deserves your kindness.

Why not what was said ?

He told people you were easy to be with cause he started messing with you as soon as you started working there.

He told at least one person about an intimate odor and then they told someone else.

Damn that's tough

I just don't have any room in my body for negativity or hatred.

You blocked Johnea
You can't message or call them in this chat, and you won't receive their messages or calls.

**Unblock**

**Report**


7:39
◂ Facebook
5G+
Johnea Goodman
I feel it. He got me fucked up though. I never consented to him showing my body to nobody especially that old ass pervert Will. He said he showed you the video of us too and that you asked to see it. Is that true?
No he just always showed me stuff and i told him idc
Showed you to prove what, tf is wrong with him?
I'm exhausted by this whole situation but unfortunately it's not over. Just so you know one of the witnesses of Wer outburst went to HR so an investigation
You blocked Johnea
You can't message or call them in this chat, and you won't receive their messages or calls.
Unblock
Report

7:40
◀ Facebook
5G+

**Johnea Goodman**

Showed you to prove what, tf is wrong with him?

I'm exhausted by this whole situation but unfortunately it's not over. Just so you know one of the witnesses of Wendi's outburst went to HR so now an investigation has to take place.

Eric wouldn't tell me who it was but I'm not even mad about it cause Will, Wendi and Aaron are all triflin and whatever happens to them behind this investigation is on them.

I yeah it's too much going on i really don't [illegible] t no parts just continue [illegible] more

You blocked Johnea
You can't message or call them in this chat, and you won't receive their messages or calls.

**Unblock**

**Report**


7:40
◂ Facebook
5G+
Johnea Goodman
I yeah it's too much going on i really don't want no parts just continue to more forward and protect my peace
I feel you on the no negativity but Aaron was foul and he knows it. He didn't tell me about you when he started messing with me, he didn't tell me about his girlfriend for a long long time and I forgave him after a while and went back to being cool but finding this out......that nice shit is out the window.
I'm giving you a heads up about HR cause Eric said everybody is getting
You blocked Johnea
You can't message or call them in this chat, and you won't receive their messages or calls.
Unblock
Report


7:40
◂ Facebook
5G+
Johnea Goodman
long long time and I forgave him after a while and went back to being cool but finding this out......that nice shit is out the window.
I'm giving you a heads up about HR cause Eric said everybody is getting interviewed. Some stuff may come out that neither one of us know. Just letting you know.
I didn't know about anybody else honestly don't know how he had the time. I just won't get caught up again. Thanks for letting me know I'll just deal with it as it comes it is what it is.
You blocked Johnea
You can't message or call them in this chat, and you won't receive their messages or calls.
Unblock
Report

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

**In re:**
AMERICAN SIGNATURE, INC., et al.,
Debtors.

Chapter 11
Case No. 25-12105 (JKS)
(Jointly Administered)

# CERTIFICATE OF SERVICE

I, Jamyla Noble, appearing pro se, hereby certify that on August 27th 2026, I caused a true and correct copy of **Movant Jamyla Noble's Reply in Support of Motion for Relief from the Automatic Stay and in Response to Debtors' Objection, together with Exhibits A through E**, to be served by United States First-Class Mail, postage prepaid, upon the following counsel for the Debtors:

**Laura Davis Jones, Esq.**
**David M. Bertenthal, Esq.**
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

I further certify that the foregoing documents were served electronically by email upon counsel for the Debtors at:

**ljones@pszjlaw.com**
**dbertenthal@pszjlaw.com**

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 27th 2026

Respectfully submitted,

**Jamyla Noble**
Pro Se Movant
5709 Ivy Knoll Ct Apt C
Indianapolis, IN 46250
317-345-6488
jamylanoble@gmail.com